**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**

JAMES W. DAWSON JR. and EDMOND                    CASE NO.:
C. HILL, JR*., individually and on behalf of*
*all others similarly situated*,

     *Plaintiffs,*

v.                                                 **DEMAND FOR JURY TRIAL**

GENERAC POWER SYSTEMS, INC.,
a Delaware Corporation, and GENERAC
HOLDINGS, INC., a Delaware Corporation.

     *Defendants.*

_____/

## CLASS ACTION COMPLAINT

Plaintiffs, James W. Dawson Jr. and Edmond C. Hill, Jr., individually and on behalf of all others similarly situated, through their undersigned counsel, file this Class Action Complaint against Defendants, Generac Power Class Generators, Inc., and Generac Holdings, Inc. (collectively "Generac"). Plaintiffs allege the following based on personal knowledge as to themselves, and upon information and belief and the investigation of counsel as to all other matters.

## INTRODUCTION

1.      This is a class action suit brought on behalf of Plaintiffs, and similarly situated owners and purchasers of Generac generators that provide consumers with automatic backup power to their homes, including, but not limited to, the 22kW and 24kW models in Generac's Standby Generator product series, that were manufactured, designed, marketed, warranted, and/or sold to consumers from 2021 to 2024 (the "Class Generators").

2.      Generac designs, manufactures, and sells a wide range of power supply products, including portable, residential, commercial and industrial generators. As one of the largest

1

generator companies in the United States, Generac touts its generators as reliable and affordable backup power solutions for consumers. While promoting the robust quality and reliability of its power products, Generac sold or distributed thousands of defective standby generators that suffer from a latent defect that results in the malfunction and failure of the generators' ability to power a home or business during a power outage.

3.     The Class Generators were delivered to consumers by Generac or its authorized dealers and installers with an identical and inherent defect in the Class Generators' design or manufacturing process.

4.     Unbeknownst to consumers at the time of purchase and/or installation, the Class Generators contain a latent defect that accelerates the wear and deterioration of critical parts associated with the alternator, including the slip rings and carbon brushes, and creates increased friction and resistance between components. This results in issues such as poor contact between the carbon brushes and slip rings, further damage, and premature wear or failure of the surrounding components (the "Defect").[1]

5.     Not only does the Defect degrade the slip rings and carbon brushes; in doing so, it disrupts the continuous transfer of electrical power and signals between a generator's stationary and rotating parts, which in turn causes the Class Generators to malfunction and/or stop powering consumers' homes during an outage.

6.     Often, the Defect leaves consumers without a power source during a hurricane or other severe weather until power is restored by their utility provider. In addition, the Defect presents a potentially life-threatening risk to consumers and/or their loved ones with medical needs that necessitate uninterrupted power to their homes.

---

[1] Plaintiffs reserve the right to amend their definition of Class Generators to include additional Generac generators with the same inherent defect.

7. At the time of sale or distribution of the Class Generators, Generac knew or should have known of information pertaining to the Defect, which was material to Plaintiffs and putative class members. Thus, Generac has a duty to disclose the latent Defect at the point of sale or installation of the Class Generators.

8. Despite possessing exclusive knowledge of the Defect and resulting failures of the Class Generators, Generac repeatedly concealed or failed to disclose the latent Defect to Plaintiffs and the putative class members, even though the issues arising from the Defect were likely to occur while the Class Generators were still under warranty. Instead, Generac actively concealed the Defect and failed to warn consumers of the common consequences they would likely experience as a result of the Defect.

9. Generac expressly and impliedly warrants, via user manuals, advertisements, pamphlets, brochures, circulars, samples, and/or models, that the Class Generators are fit for the ordinary purpose for which they are sold.

10. The Class Generators are covered by a Generac Power System Five Year 5M Limited Warranty for Residential and Commercial Standby Generators (hereinafter the "Limited Warranty"). Exhibit 1.

11. Consumers purchase the Class Generators through Generac's authorized retailers, however, Generac's manifest intent that its warranties apply to Plaintiffs and putative Class Members as third-party beneficiaries is apparent from the language used in its literature concerning the Class Generators. For example, the Limited Warranty states the "Warranty is transferable between ownership of original install site." Thus, the Limited Warranty intends that whoever owns the Class Generator retains the rights under the warranty, which includes Plaintiffs and putative Class Members.

12.     To date, Generac has failed to offer a permanent and reliable remedy for the Defect. Furthermore, there is no indication that Generac will replace its defective products and reimburse consumers who have paid for repairs or replaced their generators affected by the Defect.

13.     Generac has only authorized its certified technicians to employ temporary fixes, such as performing maintenance on the generators or replacing the degraded and worn brushes and/or slip rings, actions which Generac was aware did not remedy the underlying Defect, nor make the Class Generators reliable for consumers. Despite being aware of the widespread nature of the Defect, Generac has failed to recall the Class Generators, and there is no indication that Generac will replace its defective products and reimburse consumers who have paid for repairs or replaced their generators affected by the Defect.

14.     As a result of the Defect, and as discussed in more detail herein, owners and purchasers of Class Generators have reported incurring additional and repeated expenses for repair visits when their Class Generator stops working during a power outage due to a hurricane or inclement weather because the Defect has caused premature wear and/or the rapid deterioration of components needed for the transmittal of power.

15.     Generac markets the Class Generators to Plaintiffs and other consumers who deal with power outages caused by hurricanes and other natural disasters, as a reliable standby energy source in the event of a power outage during a storm. Yet, because of this Defect, Plaintiffs and the putative class members are left without power for prolonged periods of time. Further, the Defect substantially decreases the value of the Class Generators and renders them virtually useless as there is no permanent or reliable solution that renders the Class Generators a reliable and highest quality power solution as advertised by Generac.

4

16.     As a direct and proximate result of Generac's concealment of, and failure to disclose the Defect, Plaintiffs and putative class members: (1) overpaid for the Class Generators because the Defect significantly diminishes the value of the standby generators; (2) have Generators that suffer component wear and degradation; (3) have paid hundreds of dollars for repairs that do not provide a permanent or reliable solution to the Defect; and (4) are unable to have their Generators adequately repaired.

17.     As a result of Generac's conduct, Class Generator owners and purchasers have been deprived of the benefit of their bargain. Plaintiffs and putative class members have purchased Class Generators that they would not otherwise have bought, or would have paid less for, had they known of the Defect at the point of sale. Plaintiffs and class members have consequently suffered ascertainable losses and actual damages as a result of Generac's unlawful conduct. Accordingly, Plaintiffs and class members seek actual and/or compensatory damages, including equitable relief seeking, *inter alia*, an order that the Class Generators are defective and injunctive relief preventing Generac from continuing its wrongful conduct, as alleged herein.

## PARTIES

18.     Plaintiff, James W. Dawson Jr., is an individual over the age of 18 residing in Sarasota, Florida. Mr. Dawson purchased a 24-kW model of the Class Generator on or around March 8, 2022, from Generac's authorized retailer, Generx. Mr. Dawson's Class Generator is covered by a Five-Year Limited Warranty. When shopping for his Class Generator, Mr. Dawson researched and considered the reliability and quality of the brand, workmanship, warranty, and reliability of the generator's model and manufacturer. Prior to purchasing the Class Generator, Mr. Dawson heard, viewed, and/or read Generac's and/or its authorized retailers' marketing and advertising materials, including brochures, internet advertisements, commercials, as well as offers from Generac that touted the quality, reliability, and functionality of Generac generators.

19.     Mr. Dawson relied on the information regarding the quality, reliability, and functionality of the Class Generator conveyed in those marketing materials and advertisements when deciding to purchase his Generator. Generac failed to disclose the Defect to Mr. Dawson before he purchased his Class Generator, despite Generac's knowledge of the Defect, and Mr. Dawson, therefore, purchased his Generator on the reasonable, but mistaken, belief that it would be a high quality and reliable backup power source for his home. Mr. Dawson would not have purchased the Class Generator, or would not have paid as much for it, had he known the generator had a Defect that could degrade the major parts and components, and leave him without electricity in his home during a power outage.

20.     After the Generator was purchased and installed in Mr. Dawson's home, Hurricane Ian was forecasted to strike Florida. A few days before the hurricane, Mr. Dawson contacted Generac to confirm that his newly purchased and installed Class Generator would work in the event of an outage. Generac reassured Mr. Dawson that his Class Generator was reliable and was ready to automatically power his home in the event of a power outage.

21.     Hurricane Ian struck Florida on September 28, 2022, causing Mr. Dawson and the other residents in his community to lose electrical power in their homes. When the power went out, Mr. Dawson's Class Generator turned on, but it only ran for approximately thirty (30) minutes before it stopped working completely. Mr. Dawson promptly notified and contacted Generac, and its authorized retailer and installer, Generx that his Generator failed during the storm. Meanwhile, Mr. Dawson was left without electricity at his home until October 4, 2022, when the power was restored by Florida Power & Light.

22.     On or about October 5, 2022, Generx sent a certified technician to address the issue with his Generator. After performing a diagnostic test, the technician informed Mr. Dawson

that his Class Generator's failure during the hurricane was caused by a malfunction associated with the carbon brushes. However, the technician was unable to repair the Generator that day.

23.     Generx's certified technicians(s) followed up with Mr. Dawson to perform additional repairs and/or maintenance of his Generator, but the technician refused to address the Defect or issues associated with the slip rings and related components. The technician explained that he could not perform repairs on the slip rings at the time because Generac advised that there were no issues with those components. Afterward, Generx refused to provide further warranty service to correct the Defect until Generac provided guidance for a corrective action.

24.     Plaintiff, Edmond C. Hill, Jr., is an individual over the age of 18 residing in Sarasota, Florida. On or around March 2021, Mr. Hill purchased a 22-kW model of the Class Generator affected by the Defect. Mr. Hill's Class Generator is covered by a Five-Year Limited Warranty.

25.     When shopping for his Class Generator, Mr. Hill researched and considered the reliability and quality of the brand, workmanship, warranty, and reliability of the generator's model and manufacturer. Prior to purchasing the Class Generator, Mr. Hill heard, viewed, and/or read Generac's and/or its authorized retailers' marketing and advertising materials, including brochures, internet advertisements, commercials, as well as offers from Generac that touted the quality, reliability, and functionality of Generac generators.

26.     Mr. Hill relied on the information regarding the quality, reliability, and functionality of the Class Generator conveyed in those marketing materials and advertisements when deciding to purchase his Generator. Generac failed to disclose the Defect to Mr. Hill before he purchased his Class Generator, despite Generac's knowledge of the Defect, and Mr. Hill, therefore, purchased his Generator on the reasonable, but mistaken, belief that it would be a high

quality and reliable backup power source for his home. Mr. Hill would not have purchased the Class Generator, or would not have paid as much for it, had he known the generator had a Defect that could degrade the major parts and components, and leave him without electricity in his home during a power outage.

27. After his generator was purchased and subsequently installed in his home, Mr. Hill experienced the same issue with his Class Generator as Mr. Dawson. During Hurricane Ian, Mr. Hill's Generator powered his home briefly before it malfunctioned and stopped providing power.

28. On or around October 6, 2022, a technician who was part of Generac's Hurricane Ian response team came to the Plaintiffs' community in Sarasota to repair Mr. Hill and Mr. Dawson's Class Generators. The technician replaced the carbon brushes on both Mr. Dawson's and Mr. Hill's Generators because, despite the units being practically new with little to no use, the original brushes had become worn and damaged. However, even after Generac installed the new brushes, Plaintiffs' Class Generators were still not operational.

29. Defendant, Generac Power Class Generators, Inc., is a Delaware corporation, headquartered in Waukesha, Wisconsin that operates as an energy management and solutions company that designs, manufactures, markets, distributes, and sells a wide array of primary and backup power systems, including the Class Generators at issue, nationwide.

30. Defendant, Generac Holdings, Inc. is the parent company of Generac Power Class Generators, Inc. and is also headquartered in Waukesha, Wisconsin.

31. The decisions regarding the manufacturing, engineering, design, marketing, and sale of the Class Generators, the development of internal technical service bulletins relating to

the Defect in the Class Generators, and decisions regarding the disclosure or concealment of the Defect were made, in whole or in substantial part, by Generac in its Wisconsin headquarters.

## JURISDICTION AND VENUE

32.     This Court has original jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d) because there are 100 or more putative class members, the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and members of the putative class are citizens of states different from Generac. Further, greater than two-thirds of the putative class members reside in states other than the state in which Generac is a citizen.

33.     This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367, as well as the claims brought pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*

34.     This Court has personal jurisdiction over Generac because the Company conducts substantial and systemic business activities in Florida, including the sale and distribution of the Class Generators to consumers in this district and throughout the State, and has substantial aggregate contacts with this district, including engaging in conduct that has a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons in Florida and throughout the United States, and purposely availed itself of the laws of the United States and the State of Florida.

35.     This Court also has personal jurisdiction over Generac because all, or a substantial part, of the acts and omissions at issue originated or occurred in Florida and throughout the United States; and Generac has intentionally and purposefully placed its generators into the stream of commerce in this district and nationwide.

36.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the conduct, events, or omissions giving rise to Plaintiffs' claims occurred in this district, and Generac has intentionally and purposefully availed itself of the laws and markets within this District by placing its products, including the subject Class Generators, into the stream of commerce in this district and nationwide.

## COMMON FACTUAL ALLEGATIONS

37.     Generac is a power product manufacturer that was founded in 1959 and presently describes itself as "the #1 manufacturer of home backup generators."[2] The Company designs and manufactures a wide array of power products that include "portable, residential, commercial and industrial generators."[3]

38.     When a consumer purchases a Generac standby generator, the system is "installed, serviced and supported by one of 10,000 Authorized Generac Dealers" local to the consumer's area."[4]

39.     The purchase and installation of Mr. Dawson's 24kW Class Generator cost over $18,000. Upon information and belief, other putative Class Members have paid at least $2,500 for a Class Generator from Generac and/or its authorized retailers.

40.     Generac reported $4.02 billion in net sales in 2023, and $4.56 billion in net sales in 2022. Total sales for Generac's domestic segment increased 1% to $891 million in 2023, from $880.6 million in the prior year. According to Generac's investor reports, "the slight increase in domestic sales was driven primarily by higher home standby generator shipments."

---

[2] *About*, Generac, https://www.generac.com/about/, (last accessed on September 7, 2024).

[3] *Id*.

[4] *Largest Dealer Network*, Generac, https://www.generac.com/home-standby-generators/, (last accessed on September 7, 2024).

**Generac Marketed the Class Generators as Reliable**

41.     Generac uniformly marketed the Class Generators to consumers throughout the United States, as "the largest and most reliable source for home, business, and recreational backup generators."[5]

42.     Generac's marketing brochure for the Class Generators, claims that Generac "developed robust engine solutions to ensure their Generators provide the reliability necessary to power through even the most demanding situations." Generac also touts the Class Generators' engines as "capable of handling the rigors of generator use, resulting in power that's more reliable and requires less routine maintenance than any competitive engine."[6]

43.     On its website, Generac tells consumers when utility power is lost, "your Generac home standby system kicks into action, and continues to power your home until utility power returns."[7] Additionally, Generac warrants that its "Guardian Series generators provide the automatic backup power you need to protect your home and family during a power outage."

44.     Generac also claims that its generators have "tough, durable, corrosion-resistant aluminum enclosures perfect for all weather conditions."[8]

45.     In its present marketing for its power products, which include the Class Generators, Generac uses tag lines and phrases such as:

---

[5]   *Generac Product Categories*, Generx, https://generxgenerators.com/generac-product-categories/, (last accessed on September 7, 2024).

[6]   *Home Class Generators*, Generac, https://www.generac.com/globalassets/products/residential/standby-generators/brochure/10-26kw_hsb_brochure.pdf, p. 2 (last accessed on September 7, 2024).

[7]   *How Home Class Generators Work*, Generac, https://www.generac.com/home-standby-generators/, (last accessed on September 7, 2024).

[8]   *Id.*

(a) "It kicks in within seconds of sensing power loss—automatically—and runs for as long as necessary until utility power returns."

(b) "Generac's G-Force Engine is a purpose-built, pressure-lubricated engine capable of handling the rigors of generator use, resulting in power that's more reliable and requires less routine maintenance than any competitive engine."

(c) "TruePower technology delivers best-in-class power quality with less than 5% total harmonic distortion for clean, smooth operation of sensitive electronics and appliances."

(d) "The Generac Promise means that our Guardian® Series home backup generators will give you peace of mind and the power to live."

(e) "Consumers choose Generac automatic generators not only for their proven reliability, but for the innovative features, engineered with home and business owners in mind."

(f) "Whenever there's an outage, you don't have to worry — because the power stays on at all times throughout your entire home."

(g) "We have developed robust engine solutions to ensure our generators provide the reliability necessary to power through even the most demanding situations."

(h) "Reliable. Dependable. We promise."

(i) "24/7 power protection"

(j) "Quality, affordable power solutions."

(k) "Our RhinoCoat powder-coated finish helps make corrosion-resistant aluminum perfect for all weather conditions."

(l) Generac provides "tough, durable, corrosion-resistant aluminum enclosures perfect for all weather conditions."

(m) "Generac's commitment to continuous improvement, innovation, and technology is giving us the ability to bring more power to you."[9]

46.    Generac developed, created, and controlled all the advertising, marketing, and point-of-sale materials for their respective Class Generators.

---

[9] *How Home Class Generators Work*, Generac, https://www.generac.com/home-standby-generators/, (last accessed on September 7, 2024).

47.     Generac made these representations to Plaintiffs before purchase and at the time of purchase via its website, sales brochures, and marketing materials discussed herein. Plaintiffs and the putative Class Members relied upon these representations, which became a basis of the bargain when Plaintiffs and the putative Class Members purchased the Class Generators.

**Generac's Knowledge of the Defect**

48.     Upon information and belief, Generac was aware of the Defect and its effects on the Class Generators purchased or owned by consumers, through but not limited to: (a) consumer complaints posted on the internet; (b) warranty and post-warranty claims; (c) consumer complaints made directly to Generac and/or its authorized retailers, or certified technicians; and (d) authorized retailer and installer repair records and replacement parts sales data.

49.     Online discussions between consumers and authorized Generac retailers and technicians demonstrate that Generac has known about the Defect for years. For instance, in a 2022 post seeking advice on the purchase of a whole home generator, a Generac service dealer responded:

- Generac service Dealer Here- please do more real research on your product choice. Generac 22/24 Kws have known issues in the industry that are not being recalled. I've been selling [G]enerac for years and my company has suffered tremendous losses due to major failures on these products.[10]

50.     There are thousands of online threads and comments on forums filled with consumers telling their versions of the same story: During a storm or inclement weather, their well-maintained and/or new Generac standby generator stopped working, and was found to have worn out and/or degraded brushes and slip rings.

---

[10]     *Newbie    generator    question*[], Reddit, June 5, 2022, https://www.reddit.com/r/Generator/comments/v5f7zl/newby_generator_question_want_whole_home_ng/.

51.    For example, Reddit has numerous threads dedicated to consumer complaints describing the same issues Plaintiffs experienced as a result of the Defect:

- Generac Generator was an expensive failure!! My elderly parents are without power OR a generator now. Like many, my elderly parents have been out of electricity since the hurricane. My mother is a diabetic and my father is recovering from sepsis out in a rural area that is on the list for Sunday repairs at the earliest. They bought a Generac unit which was supposed to power their home for 9 days and it JUST got inspected two weeks ago by a Generac technician, and yet when they need it most it's failed them. It keeps running its battery down, and even with over the phone tech support nothing is fixed. My parents are using a borrowed gas generator to run fans and the fridge for mom's insulin.[11]

- My father's 26kw Generac generator failed within hours of it starting on Monday. It's less than a year old, and was used only once before, for two days in May. Father does regular maintenance and oil on it.[12]

- Brand new unit (7 months old) never ran apart from test. Came on for like 2 hours Monday then shut off showing error code 1902. Tech from the supplier came last night [and] said I need to replace rotor and brushes. Apparently they have had over 20 calls with the same problem.[13]

- You're definitely not alone. The internet's blowing up with 1902 complaints right now. Years ago they had a brush alignment issue brushes would hang partially off the slip rings and cause uneven wear. But I've never seen a graphite brush damage a rotors slip rings. If I had to guess the slip rings are probably coming apart and damaging the brushes. Worked for Generac dealer for years. When they have major defects like this they try to keep it hush hush rather than admitting they sold millions of defective units.[14]

---

[11] *Generac Generator was an expensive failure!! My elderly parents are without power OR a generator now*, Reddit, July 13, 2024, https://www.reddit.com/r/houston/comments/1e2aip0/generac_generator_was_an_expensive_failure_my/.

[12] *Brushes worn out on a 1 year old Generac generator used only once*, Reddit, July 10, 2024, https://www.reddit.com/r/Generator/comments/1e03y1z/brushes_worn_out_on_a_1_year_old_generac/.

[13] *Id.*

[14] *Id.*

- Same here in New Orleans! Hurricane Francine just blew through last night. After annual maintenance, checkups, weekly "exercise" schedule we put our trust (and fridge full of food) in Generac's hands and we only got TWO HOURS of run time! It's the first actual desperately needed emergency usage post-storm run. It's a 22 kW Generac running only a TV small air conditioning unit and a few LED lights. Our certified installer shows up today saying that "the rotors and brushes are worn out and pitted and need to be replaced AGAIN after he just replaced them last September. We've only had this generator installed September 2021.[15]

52.    Similarly, the Troubleshooting/Repair/Installation forum on Gentekpower.com

also contains numerous consumer complaints discussing damaged brushes and slip rings:

- Called the local dealer for the 1902 Low Voltage error. Generac told them to look for damaged brushes. Brushes were damaged, and one of the two slip rings was shattered. This generator is in year 4 of a 5 year warranty, but dealer said Generac refused to cover this under the year 4 engine and alternator defect warranty. The generator has 40 hours on it with normal maintenance. How can this be my fault and deny the warranty claim?[16]

- So I have a 24 kw Generac whole house generator. Model # G0072101 Serial #3011307403 Class Generator is under voltage without a load. I am only getting approx 96 volts from each phase to N. About a month and a half ago I replaced the brushes because they blew up.[17]

53.    On Gentekpower.com, a thread regarding corroded slip rings on a Generac

generator that is less than a year old contained the following consumer complaints:

- . . . [b]een getting these alot lately. It seems like they are all brush or rotor related. Generac insist[s] we do our FB1 test, FB2 etc testing, but evidence is apparent. I think what's happening these things corrode and cause friction causing major wear and tear or uneven wear on brushes.[18]

- The slip rings on my 24kw unit look just like that. It's a year old and located in Lake Jackson, Tx Which is about 45 miles south of Houston and

---

[15] *Id.*

[16] *11kw 1902 error, brushes and slip ring broken*, Gentek Power, September 15, 2022, https://gentekpower.com/forums/viewtopic.php?t=3357.

[17] *Generac 24kw under voltage*, Gentek Power, June 30, 2023, https://gentekpower.com/forums/viewtopic.php?t=4352.

[18] *Slip rings.*, Gentek Power, May 24, 2024, https://gentekpower.com/forums/viewtopic.php?t=5255.

about 15 miles from the Gulf of Mexico. The unit made electricity for about 4 hours.[19]

54. A Facebook Group called "Generac Residential Generator help" also has hundreds of consumers reporting their standby generators failed this hurricane season:

- My 22kw [G]enerac continues to throw the 1902 failure code. The unit is 3yrs old with 50hrs run time. Manufacture date of 6/30/21. It first failed a couple of months ago when the [D]erecho hit Houston. Service tech diagnostic was to replace brushes, rotor and slip rings. They replaced them 3 weeks later which was 1 week before hurricane Beryl. The unit failed again with the same code. A week later finally got a tech out and the diagnosis was to replace the entire alternator."[20]

- . . . a lot of others are reporting the same issue I had with my generator during Hurricane Beryl. My generator (24kw) was installed December of 2022. It has done a weekly test with no issues. It was purchased from Generator Supercenter and I do pay the $40 fee for the cellular monitoring. It had its yearly maintenance check December of 2023. Here comes Hurricane Beryl and my generator didn't even run 2 hours before it threw up the error code 1902. No power until Friday when it was restored by CP. Generator Supercenter showed up Saturday morning at 3 AM and replaced the brush and said it will need a rotor. From what I have gathered so far, this is an issue with the 24kw units that were manufactured 2020-2022. I wonder how many with this particular model had issues and what was the issue. Curious how many units have to have issues that maybe Generac would ever do a recall on the 24kw's.[21]

55. The Better Business Bureau's website also contains consumer complaints of standby generators failing during a storm:

- Purchased and Installed 24K Generator. IT broke during the latest storm. Getting somebody to take a look has taken weeks. When somebody finally checked he said it's a Generac known issue with Generators build during the pandemic parts inside were defective and break error code 1902.Have

---

[19] *Id.*

[20] *Generac Residential Generator help group*, Facebook, July 28, 2024, https://www.facebook.com/share/p/jmkgBajhKuKbNwYi/.

[21] *Generac Residential Generator help group*, Facebook, August 1, 2024, https://www.facebook.com/share/p/KbUGkX6Z1RTCfbZG/.

not been able to get any approved Generac company to come deal with it.[22]

- I bought my generator because we live in [] the first time I had to use it was for the ice storm it worked for a few hours and went off with code 1902 the belryl came and it only worked for a few hours with code 1902 again. I bought the generator because my son has seizures, epilepsy and cerebal palsy. I can't ever get Generac [sic] on the phone or by email to resolve this issue so I can use my generator when needed.[23]

56.     The consumer complaints quoted above represent only a small fraction of the thousands of complaints about the Class Generators. Likewise, this is only a fraction of the consumer who contacted Generac directly to notify them of the Defect.

57.     Upon information and belief, Generac was made aware of the Defect affecting the Class Generators prior to Plaintiffs purchasing their Generators by other consumers who contacted Generac directly to notify them that their Generators had issues with premature deterioration and rapid wear of components such as the slip rings and the carbon brushes, which caused consumers' Class Generators to experience a reduction or interruption in power output and/or failure.

58.     In 2022, the same year Plaintiffs' Class Generators failed for the first time, Generac reported spending $77 million in warranty claims.[24] Upon information and belief, a portion of those warranty costs stemmed from claims and repairs associated with issues consumers were having with the Class Generators malfunctioning or failing due to the Defect.

59.     Upon information and belief, Generac's warranty department reviews and analyzes warranty data submitted by its authorized retailers and installers in order to identify

---

[22] *Complaints, Generac Power Class Generators Inc.*, Better Business Bureau, September 17, 2024, https://www.bbb.org/us/wi/waukesha/profile/electric-generator/generac-power-systems-inc-0694-15012025/complaints?page=1&type=serviceorrepair

[23] *Id*. at 2.

[24] *U.S. Power Equipment Warranty Report*, Warranty Week, June 8, 2023, https://www.warrantyweek.com/archive/ww20230621.

track repairs, maintenance, and defects in its generators. When a repair is made under warranty (or warranty coverage is requested), Generac is provided with detailed documentation of the problem.

60.     Despite its knowledge about the Defect, Generac did not remedy or eliminate the Defect or remove the Class Generators from the stream of commerce. Nor did Generac contact consumers to inform them of the Defect. Instead, Generac delayed or denied warranty claims and refused to acknowledge the existence of the underlying latent Defect, and in doing so, failed to adequately address the Defect.

61.     Generac has a duty to disclose the Defect and not to omit or to conceal the Defect from Plaintiffs and putative Class Members. Generac's failure to disclose, or active concealment of, this material Defect places Plaintiffs, putative Class Members, and other consumers at risk of injury and/or property damage.

62.     Moreover, Generac continues to falsely represent through written representations and warranties that the Class Generators are reliable backup power sources that are free from Defect, of merchantable quality, and will perform dependably for years.

63.     Generac has wrongfully shifted the burden, expense, and difficulty involved in discovering and addressing the Defect affecting the Class Generators to Plaintiffs and putative Class Members. Meanwhile, Generac continues to market, sell, and distribute the Class Generators, while concealing the Defect, failing to notify consumers of the Defect, and failing to issue a recall.

**Generac's Warranty Practices**

64.     Generac's Limited Warranty states that the "Generator and/or transfer switch system will be free from defects in material and workmanship" for a period of "five (5) years" from activation "or two thousand (2,000) hours, whichever occurs first." Ex. 1.

65.     The durational limits on this warranty are unconscionable and unenforceable. Generac knew or should have known that the Class Generators would develop the subject Defect leading to reduced generator output and/or failure.

66.     In its capacity as a warrantor, Generac had knowledge of the true quality and character of the Class Generators so that any effort to limit its warranties in a manner that would exclude coverage of the affected generators is unconscionable.

67.     Generac's warranty limitations are procedurally unconscionable. There was unequal bargaining power between Generac and Plaintiffs and the other putative Class Members, as Plaintiffs and the other Class members had no meaningful ability to negotiate the warranty terms.

68.     The limitations on the warranties are substantively unconscionable. As the manufacturer of the Class Generators, Generac knew or should have known that the Class Generators would develop a material defect leading to reduced generator output and/or failure. As such, Generac's enforcement of the durational limitations on those warranties is harsh and shocks the conscience.

## **TOLLING AND ESTOPPEL OF STATUTE OF LIMITATIONS**

69.     Generac had actual awareness for years that the Class Generators contain a Defect that causes the Class Generators to malfunction and/or fail (generally referred to – along with the

risks and infirmities associated with and caused by such failure, including safety, operational, and functional unreliability risks, and consequences – as the "Defect").

70.     Although Generac was aware of the Defect, it took no steps to warn Plaintiffs or putative Class Members of such Defect and the dangers it poses. Generac was and is under a continuous duty to disclose to Plaintiffs and putative Class Members the true quality and reliability of the Class Generators, and the consequences posed by the Defect. However, Generac knowingly, affirmatively, and actively concealed or recklessly disregarded the true nature, quality, and character of the Defect.

71.     Generac had received reports of Class Generators failing due to the Defect by at least by 2021, if not before.

72.     Generac had reportedly attempted to address the Defect on a case-by-case basis, without notifying consumers of the Defect or the associated risks, by requiring consumers to repeatedly undergo maintenance and repair requests during which the parts affected by the Defect, such as the Class Generators' carbon brushes, are replaced.

73.     To date, Generac has not issued a recall, warned consumers, or taken any other affirmative steps to adequately correct the Defect. Nor has Generac taken steps to alert consumers about the Defect.

74.     Despite its knowledge, Generac has fraudulently concealed the fact that the Class Generators were and are defective, even though it has a duty to disclose the Defect. Generac made affirmative misrepresentations to consumers during the design, manufacture, supply, distribution, and/or sale of the Class Generators, including that the Class Generators were free from defects.

75.     Generac made affirmative representations to Plaintiffs and putative Class Members during warranty claims and other correspondence with consumers lodging complaints, including that their problems with the Class Generators have been resolved. Such representations were made in an effort to persuade consumers to accept replacement parts, including replacement carbon brushes, as supposed remedies.

76.     At all times, Generac concealed that the Class Generators and any remedial measures taken were defective.

77.     Generac's concealment was material to Plaintiffs and putative Class Members' decisions to purchase the Class Generators. Generac's concealment was known, and Generac intended to mislead Plaintiffs and putative Class Members into relying upon it. Accordingly, Plaintiffs and the putative Class Members relied upon Generac's concealment of these material facts and suffered injury as a proximate result of that justifiable reliance.

78.     The uniform Defect in the design and/or manufacture in the Class Generators was not detectible to Plaintiffs or putative Class Members.

79.     Generac actively and intentionally concealed the existence of the Defect and failed to inform Plaintiffs or putative Class Members of the existence of the Defect at all times, including when they contacted Generac about problems with their Class Generators. Accordingly, Plaintiffs and putative Class Members' lack of awareness was not attributable to a lack of diligence on their part.

80.     Generac's statements, words, and acts were made for the purpose of suppressing the truth that the Class Generators and replacements were defective.

81.     Generac concealed the Defect for the purpose of delaying Plaintiffs and putative Class Members from bringing a lawsuit to recover their damages.

82.     The claims alleged herein accrued upon discovery of the defective nature of the Class Generators. Because the alleged Defect is hidden or latent, and Generac took steps to conceal and/or failed to disclose the true quality, reliability, and nature of the Class Generators, Plaintiffs and members of the putative Classes could not have discovered the Defect through the exercise of reasonable diligence.

83.     As a result of Generac's active omission, concealment of the Defect, and/or failure to inform Plaintiffs and putative Class Members of the Defect, any statutes of limitations applicable to the allegations herein have been tolled. In light of Generac's active concealment of the Defect and/or failure to inform Plaintiffs and the putative Class Members of the Defect, Generac is estopped from relying on any applicable statutes of limitations as a defense. Additionally, Generac is equitably estopped from relying on laches as a defense due to its own unclean hands as alleged herein.

84.     Moreover, the causes of action alleged herein did not occur until Plaintiffs and putative Class Members discovered that their Class Generators were defective. Plaintiffs and putative Class Members could not reasonably have discovered the Defect until their Class Generators malfunctioned and stopped working during an outage. Nevertheless, Plaintiffs and putative Class Members had no reason to discover their causes of action because of Generac's active concealment of the true nature of the Defect.

85.     At all relevant times, and continuing to this day, Generac knowingly, affirmatively, and actively misrepresented and concealed the true quality and reliability of the Class Generators. Plaintiffs and the putative Class Members reasonably relied on Generac's affirmative and/or ongoing concealment or nondisclosure. For these reasons, Generac is estopped from prevailing on any statute of limitations defense in this action.

## CLASS ACTION ALLEGATIONS

86.     Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and 23(b)(3) behalf of themselves and all others similarly situated as members of the proposed Classes (collectively the "Class Members"), as defined below. Plaintiffs reserve the right to amend or supplement the Class descriptions with greater specificity or further division into subclasses or limitations to certain issues after conducting discovery in this matter.

**Nationwide Class:**

> All persons within the United States who purchased or acquired a Class Generator manufactured or sold from 2021 to 2024, or during the fullest period allowed by law.

**Florida Class:**

> All persons who reside within Florida and purchased or acquired a Class Generator and all persons who purchased or acquired a Class Generator within Florida from 2021 to 2024, or during the fullest period allowed by law.

87.     Excluded from the Class are employees, officers, directors, legal representatives, heirs, successors, and wholly or partly owned subsidiaries or affiliates of Generac; Generac's retailers and/or installers; Class Counsel and their employees; the judicial officers and their immediate family members and associated court staff assigned to this case; all persons within the third degree of relationship to any such persons; and all persons who properly execute and file a timely request for exclusion from the Class.

88.     **Numerosity:** The members of the Class satisfy the numerosity requirement under Rule 23(a)(1) in that the Class is so numerous and geographically dispersed that individual joinder of all Class Members is impracticable. While Plaintiffs are informed and believe that the number of Class Members likely consists of at least thousands of people collectively in Florida and throughout the United States, the exact number of Class Members is presently unknown. The number of putative Class Members may be ascertained from Generac's sales data, and its

financial records. The Classes are also identifiable from information and records in the possession of Generac.

89.     **Commonality and Predominance:** In accordance with Rule 23(a)(2) and Rule 23(b)(3), this action involves common questions of law and fact, which predominate over any questions affecting individual Class Members, including, but not limited to:

(a) whether the Class Generators are defective;

(b) whether the Class Generators are defectively designed and/or manufactured;

(c) whether the Class Generators have not or will not perform in accordance with the reasonable expectations of ordinary consumers;

(d) whether Generac knew or should have known about the Defect;

(e) whether Generac failed to disclose and/or concealed the Defect to Plaintiffs and putative Class Members;

(f) whether Generac breached the implied warranty of merchantability;

(g) whether Generac breached express warranties relating to the Class Generators;

(h) Whether Generac's Limited Warranty is unconscionable;

(i) whether Plaintiffs and the putative Class Members overpaid for their Class Generators and/or did not receive the benefit of the bargain;

(j) whether Generac has been unjustly enriched by its sales of the Class Generators under applicable state laws;

(k) whether Generac misrepresented the reliability and quality of the Class Generators;

(l) Whether Generac engaged in unfair, unconscionable, or deceptive trade practices relating to quality, standards, use, and reliability, in connection with the sale of its Class Generators;

(m) whether Generac should be ordered to disgorge all or part of the ill-gotten profits it received from the sale of the defective Class Generators;

(n) whether Plaintiffs and putative Class Members are entitled to replacement of their defective standby Generators;

(o) whether Plaintiffs and the putative Class Members are entitled to damages and other monetary relief and, if so, in what amount; and

(p) whether Plaintiffs and the putative Class Members are entitled to declaratory, injunctive, or other equitable relief.

90.    **Typicality:** The representative Plaintiffs' claims are typical of the claims of the putative Class Members in accordance with Rule 23(a)(3). Plaintiffs, like all putative Class Members, were impacted by the Defect. Plaintiffs and the putative Class Members purchased or own the Class Generators with the Defect. All such claims arise out of Generac's conduct in designing, manufacturing, marketing, advertising and selling the defective Class Generators, Generac's conduct in concealing the Defects in the Class Generators to the consuming public, and Plaintiffs' and Class Members' ownership of the Class Generators. Accordingly, Generac's misconduct is common to all putative Class Members, and results in the same injury to all Class Members.

91.    **Adequacy of Representation:** Plaintiffs will fairly and adequately protect the interests of the putative Class Members and have retained counsel who are experienced and competent trial lawyers in consumer class action litigation, thus satisfying Rule 23(a)(4). There are no material conflicts between the claims of the representative Plaintiffs and the putative Class Members that would make class certification inappropriate. Counsel for the putative Class Members will assert the claims of all Class Members in this action vigorously.

92. **Declaratory Relief**: In accordance with the elements set forth in Rule 23(b)(2), Generac has acted or refused to act on with respect to the Defect and the Class Generators on grounds generally applicable to Plaintiffs and the putative Class Members, thereby making declaratory relief appropriate, with respect to each Class as a whole.

93. **Superiority**: Pursuant to Rule 23(b)(3), this class action is superior to all other available means of fair and efficient adjudication of the claims in this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the putative Class Members are relatively small in comparison to the burden and expense that would be required to individually litigate their claims against Generac. In addition, the expense of individually litigating the claims for the putative Class Members would be so cost prohibitive it would deny Class Members a viable remedy. Hence, it would be impracticable for the Class Members to individually seek redress for the wrongs done to them by Generac. Even if the members of the Class could afford such individual litigation, serial adjudication in numerous venues is not efficient, timely, or proper, and will result in the unnecessary expenditure of judicial resources. Likewise, joinder on an individual basis of hundreds or thousands of claimants in one suit would be similarly impractical or impossible. Generac has acted or refused to act on grounds generally applicable to the putative Class Members, thereby making appropriate final declaratory relief with respect to the Class Members as a whole. Therefore, Certification under Rule 23(b)(3) is appropriate because a class action is superior to the other available methods for the fair and efficient adjudication of this action, and Plaintiffs envision no unusual difficulty in the management of this action as a class action.

94.     Class certification is also proper under Rule 23(b) because individualized rulings and judgments would likely result in inconsistent or contradictory results for similarly situated Plaintiffs. In addition, the adjudication of separate actions by individual Class Members would create a risk of adjudications with respect to them that would either be dispositive of the interests of other Class Members not parties to the other cases, or substantially impair or impede their ability to protect their interests.

95.     The claims asserted herein are applicable to all consumers throughout the State of Florida and in the United States, who purchased the Class Generators. Adequate notice may be given to putative Class Members directly using information maintained in Generac's or its authorized retailers' records, or through notice by publication.

96.     Plaintiffs reallege and incorporate by reference the allegations contained in all of the proceeding paragraphs and allegations of this Class Action Complaint, including the factual allegations, tolling allegations, and class action allegations, as though fully set forth in each of the following claims for relief asserted on behalf of the Class Members.

## CAUSES OF ACTION

### COUNT I
### BREACH OF EXPRESS WARRANTY
### (On behalf of Plaintiffs and the Class Members)

97.     Plaintiffs and the putative Class Members incorporate by reference all factual allegations of this Complaint as though fully set forth herein.

98.     Plaintiffs bring this claim for breach of express warranty on behalf of themselves, and members of the Florida and Nationwide Classes, pursuant to Uniform Commercial Code ("UCC") § 2-313, which has been adopted by and is materially the same under the laws of each state.

99.     In addition, Plaintiffs bring this count pursuant to the analogous express warranty laws for the states in which the Class Members reside, including Florida Fla. Stat. § 672.313, 680.21 and 680.1031.

100.     At all times material hereto, Generac is and was at all relevant times a "merchant" as defined by UCC § 2-104. The Class Generators are and were at all relevant times "goods" as defined by UCC § 2-105.

101.     UCC § 2-313 states that a merchant creates an express warranty by making to the buyer "[a]ny affirmation of fact or promise … which relates to the goods and becomes part of the basis of the bargain" and "any description of the goods which is made part of the basis of the bargain.

102.     Plaintiffs and members of the Florida Class, and the Nationwide Class, purchased the Class Generators designed, manufactured, and marketed by Generac by and through Generac's authorized sellers for retail sale to consumers, or were otherwise expected to be the third-party beneficiaries of Generac's contracts with authorized sellers, or eventual purchasers when bought from a third party. At all relevant times, Generac was the manufacturer, marketer, warrantor, and/or seller of the Class Generators.

103.     In connection with the purchase of all Class Generators, and as detailed above, Generac provided Plaintiffs and the putative Class Members with the express warranties described above in paragraphs 41 through 46, and the statements made in the Limited Warranty.

104.     Generac, as the designer, manufacturer, marketer, distributor, or seller, expressly warranted that the Class Generators were safe and reliable products designed to generate power and manage electricity for Plaintiffs' and the putative Class Members' homes.

105.    The express written warranties covering the Class Generators were a material part of the bargain between Generac and consumers. At the time it made these express warranties, Generac knew reasonable consumers, including the named Plaintiffs and the putative Class Members, were purchasing the Class Generators because they believed the Class Generator to be as represented and marketed.

106.    Each of the Class Generators has an identical or substantially identical product representation(s) as Generac represents that all its Class Generators safely and reliably generate power and manage electricity and are a dependable source of power in the event of an outage.

107.    Generac breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing Plaintiffs and the putative Class Members with Class Generators containing a Defect that was never disclosed to Plaintiffs and the putative Class Members; (b) failing to adequately repair the Defect or replace the Class Generators with units that are actually as represented; and (c) supplying products and materials that failed to conform to the representations made by Generac.

108.    Plaintiffs and the putative Class Members have given Generac a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Generac can neither cure the defect in the Class Generators nor resolve the incidental and consequential damages flowing therefrom.

109.    Thus, Generac's warranties fail in their essential purpose, and the recovery of Plaintiffs and the putative Class Members is not limited to their remedies.

110.    Accordingly, Plaintiffs and the putative Class Members assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiffs and

the putative Class Members of the purchase price of all Class Generators currently owned and leased, and for such other incidental and consequential damages as allowed.

111.    As a direct and proximate result of Generac's breaches of its express warranty, Plaintiffs and the putative Class Members have been damaged in an amount to be determined at trial.

## COUNT II
## BREACH OF IMPLIED WARRANTY
### (On behalf of Plaintiffs and the Class Members)

112.    Plaintiffs and the putative Class Members incorporate by reference all factual allegations of this Complaint as though fully set forth herein.

113.    Generac impliedly warranted to Plaintiffs and the putative Class Members that its generators, including the Class Generators, were free of defects, merchantable, of good quality, reliable, and fit for the ordinary purpose of standby generator.

114.    Generac breached these representations and implied warranties. Generac made and/or allowed these misrepresentations to be made with the intent of inducing members of the Class to purchase Class Generators. If Plaintiffs and members of the Class had known the true facts regarding the defective condition of the Class Generators, they would not have purchased Class Generators or paid as much money for the Class Generators.

115.    The Class Generators were unfit for ordinary use and were not of merchantable quality as warranted by Generac.

116.    Before purchase, Plaintiffs and the putative Class Members could not have readily discovered that the generators were not merchantable, were not of the same quality as those generally acceptable in the trade, and did not conform to the quality previously represented.

117.    Generac has failed to provide adequate remedies under its limited warranties, which have caused those warranties to fail in their essential purpose, by failing to adequately repair this known issue free of charge.

118.    Plaintiffs gave Generac actual or constructive notice of the breaches of these warranties, and Generac has failed to cure these breaches. Moreover, by virtue of its knowledge of the defect and of the experience of purchasers and/or owner of the Class Generators who complained thereof, Generac has received notice of the breaches of the warranties.

119.    The element of privity, if applicable, exists between Generac and members of the Class because, *inter alia*, (i) Generac has had direct written communications with members of the Class with regard to the Class Generators in the form of standardized warranty forms; (ii) Generac has had direct communications with members of the Class with regard to the Class Generators through internet, and magazine advertisements; (iii) the retailers that have sold Class Generators to and communicated with members of the Class are agents, in law or in fact, of Generac and are authorized to sell Generac products on Generac's behalf; (iv) Generac has entered into contracts with members of the Class in connection with the assurance of warranties; and (v) Plaintiffs and members of the Class are third-party beneficiaries of warranties that ran from Generac to its agents, the retailers and installers of Generac products.

120.    The damages suffered by Plaintiffs and the Class were directly and proximately caused by the defective Class Generators.

121.    Generac's course of conduct, as alleged herein, is likely to mislead - and has misled – consumers acting reasonably under the circumstances, to the consumers' detriment.

122.    Moreover, upon information and belief, Generac acted and continues to act in an identical or substantially similar manner with respect to the entire putative Class by continuing to

manufacture, warrant, and sell defective Class Generators and by providing wholly inadequate remedies to consumer complaints.

123.    As a direct and proximate result of Generac's breaches of these implied warranties, Plaintiffs and the Class have suffered damages, injury in fact and ascertainable loss in an amount to be determined at trial, including repair and replacement costs and damages.

**COUNT III**
**VIOLATION OF MAGNUSON-MOSS WARRANTY ACT**
**(On behalf of Plaintiffs and the Class Members)**

124.    Plaintiffs and the putative Class Members incorporate by reference all factual allegations of this Complaint as though fully set forth herein.

125.    Plaintiffs bring this Count on behalf of themselves and all putative Class Members. This Court has jurisdiction to decide claims brought under the Magnuson-Moss Warranty Act (for the purpose of this Count, the "Act") by virtue of 28 U.S.C. § 1332(a)-(d).

126.    The Class Generators are "consumer products" within the meaning of the Act. 15 U.S.C. § 2301(1).

127.    Generac is a "supplier" and "warrantor" within the meaning of 15 U.S.C. § 2301(4) and (5). Plaintiffs and the other class members are "consumers" who purchased "consumer products" for purposes of 15 U.S.C. § 2301(1) and (3) because they purchased the Generac Generator for personal, family, or household purposes.

128.    The Act provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty. 15 U.S.C. § 2310(d)(1).

129.    Under the Act, damaged "consumers" have a private cause of action against any warrantor that fails to comply with a written or implied warranty.

130.    The terms of written warranties and implied warranty were part of the basis of the bargain between Plaintiffs and all other Class Members when purchasing their Class Generators.

131.    Generac breached these written and implied warranties as described in detail above.

132.    The Class Generators share common manufacturing defects, which cause critical components within Class Generators to prematurely deteriorate, wear, and degrade, during normal use.

133.    Plaintiffs and the putative Class Members have had sufficient direct dealings with either Generac or its agents (including Generac authorized dealers or installers) to establish privity of contract between Generac, on the one hand, and Plaintiffs and each of the other putative Class Members, on the other hand.

134.    Alternatively, and without prejudice to the foregoing, privity is not required because Plaintiffs and each of the other putative Class Members are intended third-party beneficiaries of contracts between Generac and its authorized dealers, and specifically, of Generac's express and/or implied warranties.

135.    Generac has refused to compensate Plaintiffs' and Class Members' damages arising from the Defective Class Generators.

136.    Before filing this action, Plaintiffs notified Generac of the Defect affecting the performance of the Class Generators on or around September 2022, and on subsequent occasions after. Nonetheless, Generac failed to rectify the situation and/or disclose the Defects and safety hazards affecting the Class Generators.

137.    Moreover, affording Generac a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here. Since September 2022, and likely before, Generac knew, should have known, or was reckless in, not knowing of its misrepresentations and omissions concerning the Class Generators' performance as warranted.

Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement for Plaintiffs to resort to an informal dispute resolution procedure and/or afford Generac a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

138.    As a direct and proximate result of Generac's breaches of the written warranties and the implied warranty of merchantability, Plaintiffs and the putative Class Members have suffered damages in an amount to be determined at trial.

139.    Plaintiffs' and Class Members' individual claims meet or exceed $25.00 in value. The amount in controversy collectively on behalf of the putative Class Members meets or exceeds $50,000 in value (exclusive of interest and costs) on the basis of all claims to be determined in this suit.

140.    Plaintiffs and Class Members seek all damages permitted by law, including incidental and consequential damages, compensatory damages, court costs and attorneys' fees, and any other just and proper relief available under the Act.

**COUNT IV**
**NEGLIGENT MISREPRESENTATION**
**(On behalf of Plaintiffs and the Class Members)**

141.    Plaintiffs and the putative Class Members incorporate by reference all factual allegations of this Complaint as though fully set forth herein.

142.    Generac represented that the Class Generators would be free from defects. Generac marketed, advertised and sold Class Generators without adequate testing and without warning Plaintiffs and the Class Member that it had not adequately tested or evaluated the Class Generators to ensure reliability, workmanship, and quality, as advertised.

143.    These misrepresentations and omissions concerned material facts that influenced Plaintiffs and the putative Class Members in their decisions to purchase Class Generators.

34

144.    At all relevant times prior to Plaintiffs' and Class Members' purchase of the Class Generators, Generac made numerous misrepresentations specifically described in paragraphs 41 through 46, regarding the quality and reliability of its Generators on its website and other online and promotional sources.

145.    At the time it made these representations, Generac knew or should have known that these representations were false or were made without knowledge of their truth or falsity.

146.    Plaintiffs and the putative Class Members justifiably and detrimentally relied upon Generac's representations regarding the quality and reliability of the Class Generators, as shown through their purchase of the Class Generators and installation of such Generators at their homes and other structures.

147.    If Generac had disclosed that its Generators did not conform to the above representations, then Plaintiffs and the putative Class Members would not have purchased the Class Generators.

148.    Generac's misrepresentations and omissions misled Plaintiffs and the putative Class Members into believing that the Class Generators were durable and reliable. However, the Class Generators do not conform to Generac's representations and are inherently defective.

149.    As a direct and proximate result of Generac's misrepresentations regarding the Class Generators, Plaintiffs and the putative Class Members have and will continue to suffer damages in an amount to be proven at trial.

**COUNT V**
**FRAUDULENT CONCEALMENT OR MISREPRESENTATION**
**(On behalf of Plaintiffs and the Class Members)**

150.    Plaintiffs and the putative Class Members incorporate by reference all factual allegations of this Complaint as though fully set forth herein.

151.    At all times mentioned herein, Generac, through its experience, was in a position of superiority to Plaintiffs and the putative Class Members and, as such, had a duty and obligation to disclose to them the true facts of and their knowledge concerning Class Generators and the consequences of the Defect, and that the Class Generators purchased by Plaintiffs and the putative Class Members were otherwise not as Generac warranted and represented.

152.    Generac had exclusive knowledge of the defective nature of the Class Generators at the time of sale. The Generators' defects are latent and not something that Plaintiffs or the Class Members, in the exercise of reasonable diligence, could have discovered independently prior to their purchases.

153.    Furthermore, Generac's nondisclosure of the material facts set forth herein concerning the defective nature of its Generators was fraudulent as Plaintiffs and the putative Class Members did not have an equal opportunity to become apprised of those material facts, and despite a diligent inquiry, Plaintiffs could not and did not discover the true nature of the material facts Generac concealed and intentionally failed to disclose. Plaintiffs and the Class simply do not have access to the same information available to Generac.

154.    Rather than disclose the Defect, Generac made numerous misrepresentations specifically described in paragraphs 41 through 46, regarding the quality and reliability of the Class Generators on its website and other online and promotional sources, and through its authorized retailers.

155.    Plaintiffs and the putative Class Members directly or indirectly relied upon Generac's representations regarding the quality of the Class Generators because they purchased such Generators. However, the Class Generators do not conform to the above representations and are inherently defective.

156.    The statements and representations by Generac described in paragraphs 41 through 46, and elsewhere in their marketing materials, constitute material facts that were designed to induce purchase.

157.    Further, Generac failed to confirm that the Class Generators had been adequately tested or evaluated.

158.    Generac failed to test the Class Generators or concealed the fact that it had not adequately tested them to determine whether the subject Generators would provide durability and power that's more reliable and requires less routine maintenance than any competitive engine or whether the subject Generators were perfect for all weather conditions.

159.    Generac failed to disclose, and/or concealed the fact that, in its testing, it confirmed that the Class Generators' major components would experience reduced power output and/or premature failure, especially during inclement weather, like a hurricane.

160.    Because it was in a superior position and had knowledge regarding the inadequate testing and the results of the testing, Generac knew that the statements were false.

161.    Generac intended for the statements and omissions regarding the inadequate testing to induce reliance on the part of Plaintiffs and the putative Class Members.

162.    Generac's misrepresentations and omissions misled Plaintiffs and the putative Class Members into believing that the Class Generators were adequately tested.

163.    Plaintiffs and the putative Class Members were misled by Generac's misrepresentations and omissions because they believed that the Class Generators were adequately tested and would provide durability and power that's more reliable and requires less routine maintenance than any competitive engine.

164.    Plaintiffs and the putative Class Members were misled by Generac's misrepresentations and omissions because they believed that the Class Generators were perfect for all weather conditions.

165.    If Generac had disclosed that its Generators did not conform to the above representations, then Plaintiffs and the putative Class Members would not have purchased the Class Generators.

166.    Based upon the misrepresentations by Generac concerning the quality of the Class Generators, Plaintiffs and the putative Class Members paid a premium for the subject Generators.

167.    Generac made the affirmative representations regarding the quality and reliability their products as set forth in this Complaint to Plaintiffs, the putative Class Members, and the general public prior to the date Plaintiffs purchased the Class Generators, while at the same time concealing the material Defect described herein. All of these facts were material to the purchase decisions of consumers, including Plaintiffs and the putative Class Members.

168.    The material facts concealed or not disclosed by Generac are those which a reasonable person would have considered to be important in deciding whether or not to purchase the Class Generators.

169.    At all times material hereto, Generac intentionally, willfully, and maliciously concealed, omitted, or suppressed the facts set forth above from Plaintiffs and the putative Class Members, with the intent to defraud as herein alleged.

170.    At all times material hereto, Plaintiffs and the putative Class Members reasonably relied on Generac to disclose to them the material facts set forth above. Had Generac disclosed the above facts to Plaintiffs and the putative Class Members and had they been aware of said facts, they would have negotiated additional warranty coverage, negotiated a lower price to

reflect the risk, or simply avoided the risk altogether by purchasing different generators from one of Generac's competitors.

171.     Generac continued to conceal and omit the defective nature of its Generators even after Class Members began to report problems. Based on information and belief, Generac has received thousands of warranty claims concerning its Generators.

172.     As a result of the past and continued concealment or suppression of the facts set forth above, Plaintiffs and the putative Class Members sustained damages in an amount to be determined at trial.

**COUNT VI**
**UNJUST ENRICHMENT**
**(Pleading in the alternative, On behalf of Plaintiffs and the Class Members)**

173.     Plaintiffs and the putative Class Members incorporate by reference all factual allegations of this Complaint as though fully set forth herein.

174.     Substantial benefits have been conferred on Generac by Plaintiffs and the putative Class Members, and Generac has appreciated these benefits. For example, Mr. Dawson paid over $18,000 for his 24kW Class Generator. Upon information and belief, other putative Class Members have paid at least $2,500 for a Class Generator from Generac and/or its authorized retailers.

175.     Generac either knew or should have known that the payments rendered by Plaintiffs and the putative Class Members were given and received with the expectation that the Class Generators would perform as represented and warranted. For Generac to retain the benefit of the payments under these circumstances described herein would be inequitable.

176.     Generac's acceptance and retention of these benefits under the circumstances make it inequitable for Generac to retain the benefits without payment of the value to Plaintiffs and the putative Class Members.

177.    Generac, by the conduct complained of herein, has been unjustly enriched in a manner that warrants restitution.

178.    Plaintiffs and the putative Class Members are entitled to recover from Generac all amounts wrongfully collected and improperly retained by Generac, plus interest thereon.

179.    As a direct and proximate consequence of Generac's improper conduct, Plaintiffs and the putative Class Members have been injured. Generac has been unjustly enriched, and in equity, should not be allowed to retain this benefit.

**COUNT VII**
**NEGLIGENCE**
**(On behalf of Plaintiffs and the Class Members)**

180.    Plaintiffs and the putative Class Members incorporate by reference all factual allegations of this Complaint as though fully set forth herein.

181.    At all times material hereto, Generac designed and manufactured the Class Generators.

182.    Generac had a duty to Plaintiffs and the putative Class Members to exercise reasonable and ordinary care in the formulation, testing, design, manufacture, and marketing of the Class Generators, either through its own testing or by verifying third-party test results.

183.    Generac breached its duty by producing and selling a defective product to Plaintiffs and the putative Class Members.

184.    Generac failed to exercise ordinary and reasonable care in the design and manufacture of the Class Generators.

185.    As described herein, Generac's defective Generators have failed in numerous ways, including premature deterioration, reduced power output and/or premature failure.

186.     Generac further breached its duty by failing to notify Plaintiffs and the putative Class Members of the defects in the Class Generators they were purchasing and installing and by failing to take any remedial action once Generac was on notice that its product was defective.

187.     Generac knew or should have known that the Class Generators were defective, would fail prematurely, were not suitable for use as a backup power source product, and otherwise were not as it represented, and Generac should have foreseen that Plaintiffs and the putative Class Members would rely, to their detriment, on its marketing claims concerning the subject Generators' durability and reliability.

188.     As a direct and proximate result of Generac's negligence, Plaintiffs and the Class have suffered damages, injury in fact and ascertainable loss in an amount to be determined at trial, including repair and replacement costs and damages.

### COUNT VIII
### VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
#### (On behalf of Plaintiffs and the Florida Class)

189.     Plaintiffs and the putative Class Members incorporate by reference all factual allegations of this Complaint as though fully set forth herein.

190.     This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq*. ("FDUTPA"). The stated purpose of this Act is to "protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Id. §501.202(2).

191.     Plaintiffs and all Class Members are "consumers" and the transactions at issue in this Complaint constitute "trade or commerce" as defined by FDUTPA. See Id. § 501.203(7)-(8).

192.    FDUTPA declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." *Id.* § 501.204(1).

193.    Generac violated FDUTPA by engaging in the conduct described herein, which constitutes unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.

194.    In violation of FDUTPA, Generac employed fraud, deception, false promise, misrepresentation, and the knowing concealment, suppression, or omission of material facts in its sale and advertisement of the Class Generators in the State of Florida.

195.    At all relevant times prior to Plaintiffs' and the putative Class Members' purchase of the Class Generators, Generac made numerous misrepresentations regarding the quality and reliability of the subject Generators on its website and other online and promotional sources, including the statements and warranties described in paragraphs 41 through 46 herein.

196.    Plaintiffs and the putative Class Members directly or indirectly relied upon Generac's representations regarding the quality and reliability of the Class Generators because they purchased the subject Generators.

197.    Generac's misrepresentations and omissions misled Plaintiffs and the putative Class Members into believing that the Class Generators were adequately tested and reliable sources of backup power.

198.    However, the Class Generators do not conform to the above representations and are inherently defective.

199.    Further, Generac failed to confirm that the Class Generators had been adequately tested.

200.    Generac failed to test or concealed the fact that it had not adequately tested to determine whether the Class Generators would provide power that's more reliable and requires less routine maintenance than any competitive engine.

201.    Plaintiffs and the putative Class Members were misled by Generac's misrepresentations and omissions because they believed that the Class Generators were adequately tested, and would provide power that is more reliable and requires less routine maintenance than any competitive engine.

202.    Plaintiffs and the putative Class Members were misled by Generac's misrepresentations and omissions because they believed that the Class Generators were adequately tested, and would be reliable in all weather conditions, including strong storms or hurricanes.

203.    If Generac had disclosed that its Generators did not conform to the above representations, Plaintiffs and the putative Class Members would not have purchased the Class Generators.

204.    Generac engaged in concealment, suppression, or omission in violation of the FDUTPA when it sold and advertised the Class Generators knowing that the subject Generators possessed defects that would result in reduced generator power output and/or premature failure.

205.    Generac engaged in the concealment, suppression, or omission of the aforementioned material facts with the intent that others, such as Plaintiffs, Class Members, and/or the general public would rely upon the concealment, suppression, or omission of such material facts and purchase Generac Generators containing said defects and misrepresented qualities.

206.    Plaintiffs and the putative Class Members would not have purchased the Class Generators had they known or become informed of the material defects in the subject Generators.

207.    Generac intentionally concealed the aforementioned material defects to induce reliance by consumers, including Plaintiffs and the putative Class Members. This deception aimed to lull consumers beyond warranty periods, compelling them to bear out-of-pocket costs for repair or replacement when the defects were eventually discovered.

208.    Plaintiffs and the putative Class Members would not have waited beyond their warranty period in seeking repair or replacement of their Generators had they known or become informed of the material defects in the Class Generators.

209.    Generac's concealment, suppression, or omission of material facts as alleged herein, constitute unfair, deceptive and fraudulent business practices within the meaning of the FDUTPA.

210.    Generac has acted unfairly and deceptively by misrepresenting the quality of the Class Generators.

211.    Generac either knew, or should have known, that the Class Generators were defectively designed and/or manufactured and would experience reduced generator power output and/or premature failure resistance, which would result in significant damages and losses to Plaintiffs and the putative Class Members.

212.    Upon information and belief, Generac knew that the Class Generators, at the time they left its control, contained the defect described herein resulting in reduced generator power output and/or premature failure. At the time of sale, the Class Generators contained design and/or manufacturing defects. These defects reduced the Class Generators' effectiveness and

performance, rendered the Class Generators unable to perform the ordinary purposes for which they were used, and caused the damage described herein.

213.    Through the fraudulent and/or deceptive acts described above, Generac induced Plaintiffs and the putative Class Members to purchase the Class Generators.

214.    Through the fraudulent and/or deceptive acts described above, Generac induced Plaintiffs and the putative Class Members to delay their action to seek maintenance or repair of the Class Generators after the warranty period expired in hopes of forcing Plaintiffs and the putative Class Members to pay out of pocket for repair and/or maintenance once the defects were discovered.

215.    Based upon the above representations by Generac's concerning the quality of the Class Generators, Plaintiffs and the putative Class Members paid a premium for the subject Generators.

216.    As a direct and proximate cause of the FDUTPA violations described above, Plaintiffs and the putative Class Members have been injured in that they have purchased the defective Generators based on the nondisclosures of material facts alleged above. Had Plaintiffs and the putative Class Members known the defective nature of the Class Generators, they would not have purchased or would not have paid what they did for the subject Generators.

217.    Generac used unfair methods of competition and unfair or deceptive acts or practices in conducting its businesses. Generac continues in this unlawful conduct, with no indication that it will cease.

218.    Generac's actions in connection with the manufacturing and distributing of Generators as set forth herein evidences a lack of good faith, honesty in fact, and observance of

fair dealing, so as to constitute unconscionable commercial practices in violation of the FDUTPA.

219.    Generac acted willfully, knowingly, intentionally, unconscionably, and with reckless indifference when it committed these acts of consumer fraud.

220.    Said acts and practices on the part of Generac were and are illegal and unlawful pursuant to Florida Statutes § 501.204.

221.    As a direct and proximate result of Generac's FDUTPA violations, Plaintiffs and the putative Class Members have been injured and are entitled to compensatory damages, including but not limited to the difference in value between the Class Generators as delivered and as they should have been delivered, as well as equitable relief, punitive damages, costs, and reasonable attorneys' fees.

**COUNT IX**
**DECLARATORY RELIEF**
**(Pleading in the alternative)**

222.    Plaintiffs and the putative Class Members incorporate by reference all factual allegations of this Complaint as though fully set forth herein.

223.    Generac has acted or refused to act on grounds that apply generally to the Declaratory Relief Class, so that final injunctive relief or corresponding declaratory relief is appropriate within the meaning of Fed. R. Civ. P. 23.

224.    Based on the foregoing, Plaintiffs seek a ruling that: (a) the Class Generators have defects that result in premature failure; (b) Generac must notify owners of the defects; (c) Generac will reassess all prior warranty claims and pay the full costs of repairs and damages; and (d) Generac will pay the costs of inspection to determine whether any Class Member's Generator needs replacement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek that this case be certified and maintained as a class action pursuant to one or more of the proposed Classes or Classes, as they may be modified or amended, and respectfully request that this Court:

(a) Certify the Classes defined herein, naming Plaintiffs as the Class representatives, and appointing Plaintiffs' attorneys as counsel for the putative Class Members in accordance with Rule 23 of the Federal Rules of Civil Procedure;

(b) Grant appropriate injunctive and/or declaratory relief, including, but not limited to, an order requiring Generac to recall the Class Generators and/or replace them or adequately repair the Defect, and provide Plaintiffs and Class Members with appropriate curative notice regarding the existence and cause of the Defect;

(c) Declare that Generac's conduct violates the statutes referenced herein;

(d) Award Plaintiffs and Class Members actual damages sustained;

(e) Award Plaintiffs and Class Members such additional damages, including statutory, punitive, and/or exemplary damages, over and above the amount of their actual damages, authorized and warranted by law;

(f) Grant restitution to Plaintiffs and Class Members and require Generac to disgorge inequitable gains;

(g) Award Plaintiffs and all Class Members their reasonable attorneys' fees and reimbursement of all costs for the prosecution of this action; and

(h) Award such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, individually and on behalf of all members of the proposed Class, hereby demand a trial by jury of all issues so triable as a matter of right.

Respectfully Submitted,

By:  /s/ *Chanelle Artiles*
**Reginald J. Clyne, Esq.**
Florida Bar No.: 654302
**Chanelle Artiles, Esq.**
Florida Bar No.: 1006402
**Gabriel C. Sanchez, Esq.**
Florida Bar No.: 1048898
**QUINTAIROS, PRIETO, WOOD &**

**BOYER, P.A**
***Counsel for Plaintiffs***
9300 S. Dadeland Blvd., 4th Floor
Miami, FL 33156
Tel: (305) 670-1101
Fax: (305) 670-1161
rclyne.pleadings@qpwblaw.com
reginald.clyne@qpwblaw.com
chanelle.artiles@qpwblaw.com

### <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically filed with the Clerk of Court this 18th day of October 2024 by using the CM/ECF system which will send notice of electronic filing to all parties of record.

By:     /s/ *Chanelle Artiles*
Chanelle Artiles, Esq.