## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

JAMES W. DAWSON JR. and
EDMOND C. HILL, JR.*, individually and
on behalf of all others similarly situated,
et al*

     *Plaintiffs,*

     v.

GENERAC POWER SYSTEMS, INC.,
a Wisconsin Corporation, and GENERAC
HOLDINGS, INC., a Delaware Corporation.

     *Defendants.*

_____/

Case No.: 8:24-cv-02412

**Demand For Jury Trial**

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs, individually and on behalf of all others similarly situated, through their undersigned counsel, file this Class Action Complaint against Defendants, Generac Power Class Generators, Inc. ("Generac Power"), and Generac Holdings, Inc. ("Generac Holdings"). Plaintiffs allege the following based on personal knowledge as to themselves, and upon information and belief and the investigation of counsel as to all other matters.

### INTRODUCTION

1.    This is a class action suit brought on behalf of a nationwide class, and Subclasses from the states of Florida, Georgia, Kansas, Louisiana, North Carolina, and Texas, of owners and purchasers of standby generators models ranging from 18Kw to 48Kw in Generac's product series ("Class Members"),

which are supposed to provide consumers with automatic backup power to their homes, that were manufactured, designed, marketed, warranted, and/or sold to consumers from 2020 to 2024 (the "Class Generators").

2.      Defendants, Generac Power and Generac Holdings collectively design, manufacture, and sell a wide range of portable, residential, commercial and industrial generators, including the Class Generators, and other power supply products. As one of the largest generator companies in the United States, Generac touts its generators as reliable and affordable backup power solutions for consumers. While promoting the robust quality and reliability of its power products, Generac sold or distributed hundreds of thousands of defective standby generators from 2020 to present, that suffer from a latent defect that results in the malfunction and failure of the generators' ability to power a home or business during a power outage.

3.      The Class Generators were delivered to consumers by Generac or its authorized dealers and installers with an identical and inherent defect in the Class Generators' design or manufacturing process.

4.      Unbeknownst to consumers at the time of purchase and/or installation, the Class Generators contain a latent defect which accelerates the wear and deterioration of critical parts associated with the alternator, including the slip rings and carbon brushes, and creates increased friction and resistance between components. This results in issues such as poor contact between the

2

carbon brushes and slip rings, further damage, and premature wear or failure of the surrounding components (the "Defect").[1]

5.    Not only does the Defect degrade the slip rings and carbon brushes; in doing so, it disrupts the continuous transfer of electrical power and signals between a generator's stationary and rotating parts, which in turn causes the Class Generators to malfunction and/or stop powering consumers' homes during an outage.

6.    Oftentimes, the Defect leaves consumers without a power source during a hurricane or other severe weather until power is restored by their utility provider. In addition, the Defect presents a potentially life-threatening risk to consumers and/or their loved ones with medical needs that necessitate uninterrupted power to their homes.

7.    At the time of sale or distribution of the Class Generators, Generac knew or should have known of information pertaining to the Defect, which was material to Plaintiffs and putative class members. Thus, Generac had a duty to disclose the latent Defect at the point of sale or installation of the Class Generators.

8.    Despite possessing exclusive knowledge of the Defect and resulting failures of the Class Generators, Generac repeatedly concealed or failed to disclose the latent Defect to Plaintiffs and the putative class members, even

---

[1] Plaintiffs reserve the right to amend their definition of Class Generators to include additional Generac generator models with the same inherent defect.

though the issues arising from the Defect were likely to occur while the Class Generators were still under warranty. Instead, Generac actively concealed the Defect and failed to warn consumers of the common consequences they would likely experience as a result of the Defect.

9.     Generac expressly and impliedly warrants, via user manuals, advertisements, pamphlets, brochures, circulars, samples, and/or models, that the Class Generators are fit for the ordinary purpose for which they are sold.

10.     The Class Generators are covered by a Generac Power System Five Year Limited Warranty for Residential and Commercial standby generators (hereinafter the "Limited Warranty"). Exhibit 1.

11.     Consumers purchase the Class Generators through Generac's authorized dealers and retailers, however, Generac's manifest intent that its warranties apply to Plaintiffs and putative Class Members as third-party beneficiaries is apparent from the language used in its literature concerning the Class Generators. For example, the Limited Warranty states the "Warranty is transferable between ownership of original install site." Thus, the Limited Warranty intends that whoever owns the Class Generator retains the rights under the warranty, which includes Plaintiffs and putative Class Members.

12.     To date, Generac has failed to offer a permanent and reliable remedy of the Defect. Furthermore, there is no indication that Generac will replace its defective products and reimburse consumers who have paid for repairs or replaced their generators affected by the Defect.

13.    Generac has authorized its certified technicians to employ temporary fixes, such as performing maintenance on the generators, or replacing the degraded and worn brushes and/or slip rings, actions which Generac was aware did not remedy the underlying Defect, nor make the Class Generators reliable for consumers. Despite being aware of the widespread nature of the Defect, Generac has failed to recall the Class Generators, and there is no indication that Generac will replace its defective products and reimburse consumers who have paid for repairs or replaced their generators affected by the Defect.

14.    As a result of the Defect, and as discussed in more detail herein, owners and purchasers of Class Generators have reported incurring additional and repeated expenses for repair visits when their Class Generator stops working during a power outage due to a hurricane or inclement weather, because the Defect has caused premature wear and/or the rapid deterioration of components needed for the transmittal of power.

15.    Generac markets the Class Generators to Plaintiffs and other consumers who deal with power outages caused by hurricanes and other natural disasters, as a reliable standby energy source in the event of a power outage during a storm. Yet, because of this Defect, Plaintiffs and the putative class members are left without power for prolonged periods of time. Further, the Defect substantially decreases the value of the Class Generators and renders them virtually useless as there is no permanent or reliable solution that renders the

5

Class Generators a reliable and highest quality power solution as advertised by Generac.

16.    As a direct and proximate result of Generac's concealment of, and failure to disclose the Defect, Plaintiffs and putative class members: (1) overpaid for the Class Generators because the Defect significantly diminishes the value of the standby generators; (2) have Generators that suffer component wear and degradation; (3) have paid hundreds of dollars for repairs that do not provide a permanent or reliable solution to the Defect; and (4) are unable to have their Generators adequately repaired.

17.    As a result of Generac's conduct, Class Generator owners and purchasers have been deprived of the benefit of their bargain. Plaintiffs and putative class members have purchased Class Generators that they would not otherwise have bought, or would have paid less for, had they known of the Defect at the point of sale. Plaintiffs and class members have consequently suffered ascertainable losses and actual damages as a result of Generac's unlawful conduct. Accordingly, Plaintiffs and class members seek actual and/or compensatory damages, including equitable relief seeking, *inter alia*, an order that the Class Generators are defective and injunctive relief preventing Generac from continuing its wrongful conduct, as alleged herein.

**PARTIES**

18.     Plaintiff, James W. Dawson Jr., is an individual over the age of 18 residing in Sarasota, Florida.

19.     Plaintiff, Edmond C. Hill, Jr., is an individual over the age of 18 residing in Sarasota, Florida.

20.     Plaintiff, John Adams, is an individual over the age of 18 residing in Seminole, Florida.

21.     Plaintiff, Eileen Adams, is an individual over the age of 18 residing in Seminole, Florida.

22.     Plaintiff, Victor Anderson, is an individual over the age of 18 residing in Valrico, Florida.

23.     Plaintiff, Lisa Anderson, is an individual over the age of 18 residing in Valrico, Florida.

24.     Plaintiff, Monica Boney, is an individual over the age of 18 residing in Riverview, Florida.

25.     Plaintiff, Frank Breden, is an individual over the age of 18 residing in Riverview, Florida.

26.     Plaintiff, Tenadore Dean, is an individual over the age of 18 residing in Ormond Beach, Florida.

27.     Plaintiff, Sara Dean, is an individual over the age of 18 residing in Ormond Beach, Florida.

28.    Plaintiff, Carl Decatur, is an individual over the age of 18 residing in Odessa, Florida.

29.    Plaintiff, Michael Ferrone, is an individual over the age of 18 residing in Brandon, Florida.

30.    Plaintiff, Angelika Ferrone, is an individual over the age of 18 residing in Brandon, Florida.

31.    Plaintiff, Vanessa Fiorelli, is an individual over the age of 18 residing in Ormond Beach, Florida.

32.    Plaintiff, Allen Jackson, is an individual over the age of 18 residing in Ormond Beach, Florida.

33.    Plaintiff, Vanessa Fiorelli, is an individual over the age of 18 residing in Ormond Beach, Florida.

34.    Plaintiff, Robert Logan, is an individual over the age of 18 residing in Dade City, Florida.

35.    Plaintiff, Jeffrey Maiuzzo, is an individual over the age of 18 residing in Lakeland, Florida.

36.    Plaintiff, Alison Maiuzzo, is an individual over the age of 18 residing in Lakeland, Florida.

37.    Plaintiff, Albert Matheny, is an individual over the age of 18 residing in Gainesville, Florida.

38.    Plaintiff, Matthew Petkus, is an individual over the age of 18 residing in New Smyrna Beach, Florida.

39.    Plaintiff, Veronica Petkus, is an individual over the age of 18 residing in New Smyrna Beach, Florida.

40.    Plaintiff, Darrel Robinson, is an individual over the age of 18 residing in Lake City, Florida.

41.    Plaintiff, Carolyn Robinson, is an individual over the age of 18 residing in Lake City, Florida.

42.    Plaintiff, Jack Satterfield, is an individual over the age of 18 residing in Pinellas County, Florida.

43.    Plaintiff, Carla Satterfield, is an individual over the age of 18 residing in Pinellas County, Florida.

44.    Plaintiff, Jeffrey Searles, is an individual over the age of 18 residing in Alford, Florida.

45.    Plaintiff, Bonnie Searles, is an individual over the age of 18 residing in Alford, Florida.

46.    Plaintiff, Dennis Smith, is an individual over the age of 18, residing in Trinity, Florida.

47.    Plaintiff, John Stewart, is an individual over the age of 18 residing in Odessa, Florida.

48.    Plaintiff, Elizabeth Stewart, is an individual over the age of 18 residing in Odessa, Florida.

49.    Plaintiff, Kenneth Taylor, is an individual over the age of 18 residing in Riverview, Florida.

50.    Plaintiff, Robin Taylor, is an individual over the age of 18 residing in Riverview, Florida.

51.    Plaintiff, Rick Werner, is an individual over the age of 18, residing in New Smyrna Beach, Florida.

52.    Plaintiff, Dorothy Werner, is an individual over the age of 18, residing in New Smyrna Beach, Florida.

53.    Plaintiff, Tom Yeatman, is an individual over the age of 18 residing in Tallahassee, Florida.

54.    Plaintiff, Renee Yeatman is an individual over the age of 18 residing in Tallahassee, Florida.

55.    Plaintiff, Joaquim Barroso, is an individual over the age of 18, residing in Treasure Island, Florida.

56.    Plaintiff, Carrie M. Young, is an individual over the age of 18, residing in Treasure Island, Florida.

57.    Plaintiff, Mark Clemm, is an individual over the age of 18 residing in Savannah, Georgia.

58.    Plaintiff, Margaret Clemm, is an individual over the age of 18 residing in Savannah, Georgia.

59.    Plaintiff, Vernon McBee, is an individual over the age of 18, residing in Utica, Kansas.

60.    Plaintiff, Keven Lovetro, is an individual over the age of 18, residing in Metairie, Louisiana.

61.     Plaintiff, Karen Lovetro, is an individual over the age of 18, residing in Metairie, Louisiana.

62.     Plaintiff, Kevin Kingsley, is an individual over the age of 18 residing in Hendersonville, North Carolina.

63.     Plaintiff, Ernest Fuentes, is an individual over the age of 18 residing in Houston, Texas.

64.     Plaintiff, Nora Fuentes, is an individual over the age of 18 residing in Houston, Texas.

65.     Plaintiff, Arval Headrick, is an individual over the age of 18 residing in Kingwood, Texas.

66.     Plaintiff, Earnest Jackson, is an individual over the age of 18 residing in Houston, Texas.

67.     Plaintiff, Diana Jackson, is an individual over the age of 18 residing in Houston, Texas.

### *The Generac Defendants*

68.     Defendant, Generac Holdings, Inc. is a Delaware corporation headquartered in Waukesha, Wisconsin, and the parent company of Generac Power Class Generators, Inc.

69.     According to Generac Holding's financial disclosures filed with the Securities and Exchange Commission ("SEC"), "[t]he Company provides power generation equipment, energy storage systems . . . serving the residential, light commercial, and industrial markets. Generac introduced the first affordable

backup generator and later created the automatic home standby generator category."

70.    Generac Holdings relies on its subsidiaries, including Generac Power, as a "principal source of cash to repay indebtedness [and] fund operations."[2] Further, Generac Holdings Inc. and its subsidiaries are collectively referred to as "the Company" in consolidated balance sheets.[3]

71.    Defendant, Generac Power Class Generators, Inc. is a wholly owned subsidiary of Generac Holdings Inc., incorporated in Wisconsin, and also headquartered in Waukesha, Wisconsin.

72.    Generac Holdings' financial disclosures filed with the SEC demonstrate a strong unity of financial interest between Generac Holdings and Generac Power.

73.    Generac Holdings and Generac Power operate collectively as an energy management and solutions company that designs, manufactures, markets, distributes, and sells nationwide a wide array of primary and backup power systems, including the Class Generators at issue. Accordingly, both Defendant entities shall be collectively referred to herein as Generac.

74.    Generac reported $4.02 billion in net sales in 2023, and $4.56 billion in net sales in 2022. Total sales for Generac's domestic segment increased 1% to $891 million in 2023, from $880.6 million in the prior year. According to

---

[2]    *Form 10-K Annual Report*, Generac, February 21, 2024, at 31, https://investors.generac.com/sec-filings/sec-filing/10-k/0001437749-24-005040.

[3] *Id*. at p. 47.

Generac's investor reports, "the slight increase in domestic sales was driven primarily by higher home standby generator shipments."

75.    The decisions regarding the manufacturing, engineering, design, marketing and sale of the Class Generators, the development of internal technical service bulletins relating to the Defect in the Class Generators, and decisions regarding the disclosure or concealment of the Defect were made, in whole or in substantial part, by Generac in its Wisconsin headquarters.

## JURISDICTION AND VENUE

76.    This Court has original jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), because there are 100 or more putative class members, the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and members of the putative class are citizens of states different from Generac. Further, greater than two-thirds of the putative class members reside in states other than the state in which Generac is a citizen.

77.    This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

78.    This Court has personal jurisdiction over Generac because the Company conducts substantial and systemic business activities in Florida, including the sale and distribution of the Class Generators to thousands of consumers in this district and throughout the State, and have substantial aggregate contacts with this district, including engaging in conduct that has a

direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons in Florida and throughout the United States, and purposely availed itself of the laws of the United States and the State of Florida.

79.    This Court also has personal jurisdiction over Generac because all, or a substantial part, of the acts and omissions at issue originated or occurred in Florida and throughout the United States; and Generac has intentionally and purposefully placed its generators into the stream of commerce in this district and nationwide.

80.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the conduct, events, or omissions giving rise to Plaintiffs' claims occurred in this district, and Generac has intentionally and purposefully availed itself of the laws and markets within this District by placing its products, including the subject Class Generators, into the stream of commerce in this district and nationwide.

## FACTUAL ALLEGATIONS

81.    The Plaintiffs bring this action on behalf of themselves and a class of similarly situated consumers who have purchased the Class Generators containing the Defect described herein. The Defect imposes substantial risks, as well as costs and inconvenience on Generac standby generator owners who have to repeatedly repair the Class Generator. The Defect also negatively affects the value of the Class Generators as they are no longer reliable during storms or power outages.

*Florida Plaintiffs*

82.     James W. Dawson Jr. purchased a Generac 24kW standby generator on or around March 8, 2022, from Generac's authorized retailer, installer, and repair or maintenance provider, GenerX Generators ("GenerX").

83.     Mr. Dawson's Class Generator is covered by a five-year limited warranty.

84.     On or around September 28, 2022, Mr. Dawson lost electrical power in his home due to a power outage caused by Hurricane Ian making landfall in Florida. When the power went out, Mr. Dawson's Class Generator ran for approximately thirty (30) minutes before it stopped working completely.

85.     Mr. Dawson promptly notified Generac, and its authorized retailer and installer, GenerX that his Class Generator failed during the storm. Meanwhile, Mr. Dawson was left without electricity at his home until October 4, 2022, when the power was restored by the utility provider.

86.     On or about October 5, 2022, GenerX sent a Generac authorized technician to inspect Mr. Dawson's Class Generator. After performing a diagnostic test, the technician informed Mr. Dawson that his Class Generator's failure during the hurricane was caused by a malfunction associated with the carbon brushes. However, the technician was unable to repair Mr. Dawson's Class Generator that day.

87.     GenerX's technicians(s) followed up with Mr. Dawson to perform additional repairs and/or maintenance of his Class Generator, but the technician

refused to address the Defect, or issues associated with the slip rings and related components. The technician explained that he could not perform repairs on the slip rings at the time because Generac advised that there were no issues with those components and would not provide further warranty service to correct the Defect until Generac provided guidance for corrective action.

88.     On or around March 2021, Plaintiff, Edmond C. Hill Jr. purchased a Generac 22kW standby generator affected by the Defect.

89.     Mr. Hill's Class Generator is covered by a five-year limited warranty.

90.     During Hurricane Ian, Mr. Hill's Generator powered his home briefly before it malfunctioned and stopped providing power.

91.     On or around October 6, 2022, a technician who was part of Generac's Hurricane Ian response team came to Mr. Dawson and Mr. Hill's community in Sarasota to repair Mr. Hill and Mr. Dawson's Class Generators. The technician replaced the carbon brushes on both Mr. Dawson's and Mr. Hill's Generators because, despite the units being practically new with little to no use, the original brushes had become worn and damaged. However, even after Generac installed the new brushes, the Class Generators were still not operational.

92.     John and Eileen Adams (the "Adamses") purchased a Generac 22kW standby generator on or around May 19, 2022, from Generac's authorized retailer, GenerX for the purpose of having a standby power source for their home in the event of severe weather or other cause of power outage.

16

93.   The Adamses' Class Generator is covered by a five-year limited warranty.

94.   The Adamses' Class Generator was installed by an individual from the GenerX location in Oldsmar, FL.

95.   The Adamses purchased their Class Generator to provide electricity to their home during power outages, which is a common occurrence during hurricane season in Florida. However, the Adamses' Class Generator failed six and a half hours into Hurricane Milton, which made landfall in Florida on October 9, 2024.

96.   On November 4, 2024, a technician from Generator Supercenter, an authorized Generac retailer, came to the Adamses' residence to inspect their Class Generator.

97.   The technician advised the Adamses that the failure was due to a defective component within the alternator of their Class Generator and that it is a common defect known by Generac. The technician also stated that Generac has refused to issue a recall of the affected units and instead opts to provide consumers with a temporary fix through warranty claims after the Generators fail.

98.   Victor and Lisa Anderson (the "Andersons") purchased a Generac standby generator on or around August 3, 2022, from Generac's authorized retailer, Generator Supercenter of Tampa.

99.    The Andersons' Class Generator is covered by a five-year limited warranty.

100.    The Andersons' Class Generator was installed by the Generator Supercenter of Tampa on or around May 2, 2023.

101.    On October 10, 2024, in the midst of Hurricane Milton, the Andersons' Class Generator failed. The Andersons called the Generac support line for their Class Generator and were unable to reach anyone until October 12, 2024.

102.    After the Andersons notified Generac that their unit malfunctioned, an authorized Generac technician went to the Andersons' property on October 13, 2024, and diagnosed the issue with the Andersons' Class Generator.

103.    On October 23, 2024, the Andersons sent a letter to Generac customer support outlining all the issues they experienced with their Class Generator during Hurricane Milton.

104.    To date, Generac has not offered the Andersons an adequate resolution for the issues experienced as a result of the failure of their Class Generator.

105.    Monica Boney, a disabled veteran, purchased a Generac 24kW standby generator on or around October 14, 2022, from Generac's authorized retailer, DHHS Construction & Solar ("DHHS"). Ms. Boney's Class Generator was installed by Affinity Contracting, also an authorized Generac dealer, on or around December 26, 2022.

106.    Ms. Boney needs electricity to operate medical devices to treat a chronic health condition and purchased the Class Generator as a backup power source to ensure that she is able to use her medical devices in the event of a power outage.

107.    Ms. Boney's Class Generator is covered by a five-year limited warranty.

108.    In October 2024, in the midst of Hurricane Milton, Ms. Boney's Class Generator failed to power her home when the power went out during the storm.

109.    Ms. Boney's Class Generator ran for only 30 minutes prior to completely failing and/or malfunctioning during Hurricane Milton.

110.    Ms. Boney called Generac's authorized dealer, Affinity Contracting, to advise that her Class Generator was not functioning.

111.    An authorized Generac technician was sent to Ms. Boney's property, and he replaced the rotor and brushes of her Class Generator. While making the repairs, the technician stated that he had over 100 Generac generators to repair at the time of his visit to Ms. Boney's home.

112.    Frank Breden purchased a Generac 22kW standby generator on or around December 12, 2022, from Generac's authorized retailer, Canter Power Systems, LLC ("Canter") to ensure that he would have standby power for his home during power outages, especially during hurricane season.

113.   Mr. Breden's Class Generator is covered by a five-year limited warranty.

114.   Canter, an authorized Generac installer, installed Mr. Breden's Class Generator at his residence on or around December 2022.

115.   On at least two occasions, once in May 2023, and once in October 2024 during Hurricane Milton, Mr. Breden's Class Generator failed to provide power to his home.

116.   Despite promptly notifying Canter of the failure of his Class Generator, it took ten (10) weeks for Generac and/or its agent, Canter, to replace Mr. Breden's Class Generator's defective slip rings, rotor, and brushes.

117.   Tenadore and Sara Dean (the "Deans") purchased a Generac 24kW standby generator on or around July 12, 2023, from Generac's authorized retailer, Generator Supercenter of the Palm Beaches to ensure that they would have standby power for their home during power outages, especially during hurricane season.

118.   The Deans' Class Generator is covered by a five-year limited warranty.

119.   The Deans' Class Generator was installed by Generac's authorized retailer, Generator Supercenter of the Palm Beaches on or around January 12, 2024.

120.   On October 10, 2024, in the midst of Hurricane Milton, the Deans' Class Generator failed to provide power to their home. The Deans promptly

notified Generac and/or its authorized retailer of the issues they experienced with their Class Generator.

121.    On October 14, 2024, an authorized Generac technician came to the Deans' home and installed new brushes in their Class Generator. However, the Deans' Class Generator still failed to operate.

122.    Plaintiff, Carl Decator, purchased a Generac standby generator on or around August 29, 2022, from GenerX in Tampa, Florida for the purpose of having a backup power source to his residence.

123.    Mr. Decator's Class Generator started malfunctioning shortly after the power went out during Hurricane Milton.

124.    On or around October 12, 2024, Mr. Decator's Class Generator stopped working altogether, leaving Mr. Decator without any power after the storm. After promptly notifying GenerX that his Class Generator had stopped working, Mr. Decator was notified that his unit malfunctioned due to extreme damage to the brushes and rotor.

125.    Plaintiffs, Michael and Angelika Ferrone ("the Ferrones") purchased a Generac standby generator on or around May 20, 2024, from Generac's authorized retailer, Generator Supercenter of Tampa to ensure that they would have standby power to their whole home during power outages and hurricanes.

126.    The Ferrones' Class Generator is covered by a five-year limited warranty.

127.    The Ferrones' Class Generator was installed by the Generator Supercenter of Tampa on or around June 25, 2024.

128.    On or around October 10, 2024, during Hurricane Milton, the Ferrones' Class Generator malfunctioned and failed to provide power to their home. The Ferrones notified Generac's authorized retailer, Generac Supercenter of Tampa of the Defect.

129.    Mr. Jackson and Mrs. Fiorelli purchased a Generac standby generator on or around September 28, 2021, from Generac's authorized retailer, Cunningham Gas Company ("Cunningham"), for hurricane and tropical storm backup to ensure that they did not lose power to their home during outages.

130.    Mr. Jackson and Mrs. Fiorelli's Class Generator is covered by a five-year limited warranty.

131.    Mr. Jackson and Mrs. Fiorelli's Class Generator was installed by Cunningham on or around January 21, 2022.

132.    On or around October 10, 2024, during Hurricane Milton, Mr. Jackson and Mrs. Fiorelli's Class Generator failed to provide power to their home only three hours after they lost power during the storm. Mr. Jackson and Mrs. Fiorelli promptly notified Generator Maintenance of Florida, an authorized Generac maintenance provider, that their Class Generator was not working.

133.    On October 11, 2024, an authorized Generac technician examined Mr. Jackson and Mrs. Fiorelli's Class Generator and advised that the brushes and rotor needed to be replaced.

134.  Notably, the Generac authorized technician indicated that the problem with Mr. Jackson and Mrs. Fiorelli's Class Generator was due to the fact that the brushes and rotors in the Class Generators were poorly made and well known to stop working prematurely.

135.  On or around April 5, 2022, Plaintiff, Robert Logan, a disabled veteran, purchased a 24kW standby generator from Generac's authorized retailer, Off the Grid Power Services, LLC ("Off the Grid").

136.  Mr. Logan's Class Generator is covered by a ten-year additional warranty.

137.  Mr. Logan's Generac Generator was installed on or around May 9, 2022, by Off the Grid Power.

138.  Since installation, Mr. Logan's Class Generator failed during a power outage on or around October 9, 2024, and stopped producing power altogether. Mr. Logan promptly notified Off the Grid Power that his Class Generator was not producing power.

139.  A Generac authorized service technician inspected Mr. Logan's Class Generator on or around October 10, 2024. Upon inspection, the technician explained that the slip rings and the brushes were the problem causing the failure. The technician also stated that Mr. Logan's unit was the tenth generator in his service area that day experiencing the same problem.

140.  When the Generac servicer contacted Generac regarding the issue, the Generac representative recognized the issue causing the malfunction

immediately and stated that Generac would take 10-14 business days to ship the parts to complete the repair.

141.    Plaintiffs, Jeffrey and Alison Maiuzzo ("the Maiuzzos") purchased a Generac 24kW standby generator, on or around April 2022 from GenerX, an authorized Generac retailer.

142.    GenerX installed the Class Generator at the Maiuzzos' residence on or around June 20, 2022.

143.    During Hurricane Milton, the Maiuzzos' Class Generator malfunctioned and stopped powering their home altogether.

144.    Mr. Maiuzzo promptly contacted Generac directly to notify them that his Class Generator failed. To date, the Maiuzzos have not received a definitive repair date for their Class Generator. Generac provided no assistance and instead gave him the runaround through an unhelpful support email thread.

145.    On or around August 7, 2020, Plaintiff, Albert Matheny purchased a Generac standby generator from a Generac authorized retailer, S.E. Williams Electrical Contractor ("S.E. Williams") as a source of standby power in the event of an outage during a hurricane or due to other utility power failure.

146.    Mr. Matheny has a MedTronic medical device implant that monitors his heart rhythms and uses the Wi-Fi network in Mr. Matheny's home to provide automatic updates to his cardiologist if Mr. Matheny suffers from any episodes of arrythmia or cardiac arrest. Like virtually all Wi-Fi networks, Mr. Matheny's home Wi-Fi network requires electricity to function.

147.    Mr. Maheny's Class Generator was installed at his home by S.E. Williams on or around May 2021.

148.    On or around September 26, 2024, Mr. Matheny's Class Generator failed during Hurricane Helene - just after four hours of operation due to a failure in the unit's alternator system. Mr. Matheny remained without power until the municipal power was restored.

149.    Shortly after his unit failed, Mr. Matheny contacted Generac's authorized dealer, Trademark Electric in Ocala, FL, and informed them of his Class Generator's malfunction and requested repair.

150.    Despite updating firmware and running diagnostics, Trademark Electric was unable to repair Mr. Matheny's Class Generator.

151.    On or around January 16, 2024, Mathew and Veronica Petkus ("the Petkuses") purchased a Generac 22kW standby generator from Canter Power Systems, an authorized Generac dealer, for whole-home backup power, particularly for hurricane-related outages.

152.    Canter installed the Petkuses' Class Generator at their residence in February 2024.

153.    On October 9, 2024, during Hurricane Milton, the Petkuses' Class Generator failed after only five hours of operation, despite being less than nine months old. Mr. Petkus immediately contacted Canter after the unit's failure and was told he was placed on a list for technical assistance.

154. On October 11, 2024, an authorized Generac technician inspected the Petkuses' Class Generator and determined that the rotor component within the alternator had failed. However, the technician could not provide a timeline for repairs due to indefinite delays in obtaining replacement parts from Generac.

155. Despite repeated follow-ups, there was no attempt to repair the Petkuses' Class Generator until December 23, 2024.

156. After his own unit failed, Mr. Petkus discovered that at least three other Generac whole-home standby generators in his neighborhood also failed during Hurricane Milton.

157. Plaintiffs, Darrel and Carolyn Robinson ("the Robinsons") purchased a Generac 22kW standby generator on or around June 21, 2023, from Generac's authorized retailer, Mathews Electric, LLC ("Mathews Electric"), for hurricane and tropical storm backup, to ensure that they did not lose power to their home during outages.

158. The Robinsons' Class Generator is covered by a five-year limited warranty.

159. On or around October 10, 2024, during Hurricane Milton, the Robinsons' Class Generator failed to provide power to their home.

160. The Robinsons promptly called Security Safe, an authorized Generac retailer and/or servicer, to submit a request for a Generac technician to fix their generator. However, the Robinsons were left without main power for a whole week and had to use a backup generator.

26

161.   On or around August 16, 2022, Plaintiffs, Jack and Carla Satterfield ("the Satterfields") purchased a Generac 24kW standby generator, from Jack Joyner Heating & Air Conditioning Company ("Joyner Heating & A/C"), an authorized Generac retailer.

162.   The Satterfields' Class Generator was installed at their residence in October 2022 by Joyner Heating & A/C.

163.   The Satterfield's Class Generator failed repeatedly during multiple hurricanes, despite being maintained and covered under warranty.

164.   On or around September 2024, the Satterfields' Class Generator failed during Hurricane Helene after running for only a few hours, leaving them without power for several days.

165.   On October 7, 2024, a Generac authorized technician performed routine maintenance on the Satterfields' Generator but failed to address the underlying issue causing the unit to malfunction.

166.   On October 11, 2024, a second Generac authorized technician inspected the Satterfields' Generator and determined that the stator component within the alternator was burned out. The technician stated that Generac had issued an internal service bulletin to its authorized dealers and service technicians regarding the issues being experienced by consumers due to the Defect. Yet, no authorized Generac dealer or technician had ever notified the Satterfields of this bulletin or the Defect prior to their Generator failing during a major hurricane.

27

167.    On or around September 2021, Plaintiffs, Jeffrey and Bonnie Searles ("the Searles") purchased a Generac 24kW standby generator, from Lowe's, an authorized Generac retailer, to automatically restore power to their home during major storms or other cause of utility power failure.

168.    However, the Searles' Generac generator has been plagued by repeated and catastrophic failures, rendering it completely unreliable during every major weather event in the past year.

169.    On or around January 11, 2024, during a tornado storm, the Searles' Class Generator failed after functioning for only 2.5 hours before shutting down entirely. Mr. Searles promptly notified Generac and/or its authorized agent and a technician was sent to repair the unit.

170.    In March 2024, the Searles's Class Generator failed once again. The Searles notified Generac and/or its authorized agents of the failure and an authorized Generac technician from Anderson Power was dispatched to inspect the Generator. The authorized Generac technician notified the Searles that the rotor, stator, and other parts within their Class Generator's alternator were completely degraded.

171.    In July 2024, the Searles' Generator completely lost power again. An authorized Generac technician inspected the Searles' Generator, and a warranty claim was submitted to Generac.

172.   After the Searles' Generator was purportedly repaired in July 2024, the unit failed once again in December 2024 and their warranty claim remains open.

173.   Plaintiff, Dennis Smith, purchased a Generac 24kW standby generator from authorized Generac retailer, GenerX, on or around September 18, 2023, as a standby power source and to provide a backup power for his wife, who required oxygen 24 hours a day.

174.   Mr. Smith purchased a 10-year extended warranty covering parts, labor and trip costs.

175.   Mr. Smith first discovered issues with the Class Generator when the power went out during Hurricane Milton, and the unit only worked for 30 minutes before failing altogether.

176.   Following the failure, Mr. Smith repeatedly called and emailed GenerX, explaining that his wife was on oxygen and that this was a life-threatening emergency. Despite the urgent nature of the issue, GenerX did not send a technician until 39 days later.

177.   Plaintiffs, John Stewart and Elizabeth Stewart ("the Stewarts") purchased a Generac 24kW standby generator, on or around January 2024. The Stewarts purchased their Generac generator specifically for hurricane backup purposes.

178.   Their Generac generator is covered by an additional 10-year extended warranty.

179.   The Stewarts' Class Generator was installed on February 7, 2024, by authorized Generac retailer, GenerX, located in Oldsmar, Florida.

180.   However, in October 2024, the Stewarts' Class Generator failed just twenty minutes after they lost power due to Hurricane Milton and left them without power for several days. The Stewarts promptly notified GenerX that their Class Generator failed.

181.   On October 14, 2024, GenerX inspected the Stewarts' Class Generator and determined that the stator had shorted out, despite the generator having only four hours of total runtime at the time of failure.

182.   The Stewarts were informed that Generac needed to send replacement parts associated with the alternator, including the stator and brushes.

183.   GenerX has ordered the necessary parts from Generac, but the Stewarts have been given no timeframe for when they will arrive or when the Class Generator will be repaired.

184.   On or around March 2021, Plaintiffs, Kenneth and Robin Taylor ("the Taylors") purchased a Generac standby generator from Lowe's. The generator was installed on March 30, 2021, by Generac's authorized retailer, DHHS, to provide a reliable backup power source due to the frequent hurricanes in the area.

185.   The Taylors became aware of issues with their Class Generator when Hurricane Milton struck Florida. Their Class Generator operated for

30

approximately 30 minutes before failing and displaying error code 1902. As a result, the Taylors were left without power for several days after the hurricane, despite having invested in the generator specifically for hurricane preparedness.

186.    The Taylors' standby generator is covered by a five-year warranty.

187.    After their Class Generator failed, the Taylors contacted Generac authorized retailer and servicer, Affinity Contracting, to perform repairs on their unit. An authorized Generac technician inspected the Taylors' Class Generator and determined that the stator, rotor, and brushes needed to be replaced.

188.    On or around June 17, 2022, Plaintiffs, Rick and Dorothy Werner purchased a Generac 24kW standby generator. The Werners purchased the Class Generator primarily to provide power during outages caused by hurricanes.

189.    The Werners' Class Generator was installed on August 16, 2022, by authorized Generac retailer, Canter.

190.    The Werners first became aware of their Class Generator contained a defect when it failed during Hurricane Ian on September 29, 2022. The Werners notified Canter and an authorized Generac technician was dispatched to repair the unit.

191.    The Taylors' Class Generator failed again on or around October 10, 2024, during Hurricane Milton. After the Taylors notified Canter of the failure, an authorized Generac technician was sent to repair the Taylors' Class Generator yet again.

192.   Plaintiffs, Tom Yeatman and Renee Yeatman ("the Yeatmans") purchased a Generac 22kW standby generator from AP Electric in November 2023 to provide power during outages, particularly to keep insulin cold, as Mrs. Yeatman is diabetic.

193.   The Yeatmans' Class Generator was installed by authorized Generac retailer and installer, Kerry Rodgers Electric.

194.   On September 26, 2024, the Yeatmans' Class Generator malfunctioned during Hurricane Helene, when their unit ran for less than an hour before failing to power their home altogether, leaving them without power for the remainder of the storm. After their Class Generator malfunctioned, the Yeatmans promptly notified their Generac authorized servicer of the failure.

195.   Plaintiffs, Joaquim Barroso and Carrie M. Young purchased a Generac 22kW standby generator in May 2024 from authorized Generac retailer, Lowe's, as a backup power supply for their new home in Florida's treasure coast.

196.   On or around October 9, 2024, Mr. Barroso and Mrs. Young's Class Generator failed during Hurricane Milton after running for only three hours during the storm, leaving them without power for several days.

197.   Mr. Barroso and Mrs. Young promptly notified Generac and/or its authorized retailer of the unit failing during the hurricane. Afterwards, they were informed that the brushes for their Standby Generator needed to be replaced even though the unit was less than six months old when it failed.

*Georgia Plaintiffs*

198.  Plaintiffs Margaret and Mark Clemm ("the Clemms") purchased a Generac 22kW standby generator on or around January 6, 2021, from Anderson Power Services ("APS"), a Generac authorized retailer as a backup power source for his home since there are frequent in the area where he lives.

199.  The Clemms' Class Generator is covered by a five-year limited warranty.

200.  On at least ten occasions since 2023, Mr. Clemm's Class Generator has malfunctioned and failed to provide power to his home during an outage. As a result, Mr. Clemm lost work productivity on all 10 of those days as he did not have access to internet connection.

201.  The Clemms have notified Generac and/or its authorized retailer each time their Class Generator has failed, however, no adequate repairs to prevent the issue from reoccurring have been made.

*Kansas Plaintiffs*

202.  Plaintiff, Vernon McBee, purchased a Generac standby generator from Bosselman Energy on or around February 21, 2020. Mr. McBee purchased his Class Generator because he lives on a remote farm five miles from town and, at 79 years old, needs a reliable backup power source during outages.

203.  On or around January 2024, Mr. McBee's Class Generator malfunctioned and failed to operate during a snowstorm which caused a power

outage. Generac was promptly notified that Mr. McBee's Class Generator failed to power his home but provided no adequate resolution.

204.  Since he purchased it, Mr. McBee's Class Generator has failed to operate during two major storms which took place on or around January 6-9, 2024, and January 8-10, 2025.

### *Louisiana Plaintiffs*

205.  On or around April 2021, Keven and Karen Lovetro ("the Lovetros") purchased a 22kW Generac standby generator from Craig's Electrical and Generator, an authorized Generac retailer, as a backup power source for their home since they are an elderly couple living in a hurricane zone that is prone to power outages.

206.  The Lovetros' Class Generator first malfunctioned on or around August 29, 2021, when the unit failed to power their home shortly after turning on when Hurricane Ida struck Louisiana. On or around September 12, 2024, the Lovetros' Class Generator failed again when Hurricane Francine struck.

207.  In the two instances that the Lovestros needed a backup power source because of a major hurricane, their Class Generator malfunctioned and left them without any power.

208.  The Lovetros immediately contacted Generac and/or their authorized Generac dealer, Craigs Electrical and Generator, to report the issue and request repairs after both failures.

34

209.    Each time, an authorized Generac technician inspected the Lovetros' Class Generator after it malfunctioned and stated that the brushes and/or slip rings on the unit were worn down and damaged. Accordingly, a warranty claim was submitted to Generac for new parts and components, including a new rotor and brushes, and repair.

### *North Carolina Plaintiffs*

210.    On or around September 2019, Plaintiff, Kevin Kingsley purchased a Generac standby generator from authorized Generac retailer, Stuller Power Solutions ("Stuller Power"), in Hendersonville, North Carolina.

211.    On or around October 2, 2024, following the power outage caused by Hurricane Helene, Mr. Kingsley's Class Generator suddenly stopped supplying power to his home, leaving him without any electricity during the storm. When Mr. Kingsley's Class Generator failed, it only had approximately 14 hours of run time.

212.    Mr. Kingsley promptly notified Generac of the Class Generator's failure, and an authorized technician was sent to inspect the unit on or around November 7, 2024. The technician stated that the cause of Mr. Kingsley's Class Generator's failure was due to broken carbon brushes and slip rings in the unit which required that the rotor and brush set be replaced.

*Texas Plaintiffs*

213.    On or around April 2022, Plaintiffs, Ernest and Nora Fuentes ("the Fuentes") purchased a 22kW Generac standby generator from authorized retailer, Home Depot.

214.    The Fuentes' Class Generator failed in December 2024 and suffered from decreased power output before failing to power their home altogether. Subsequently, the Fuentes notified Generac directly and were referred to a Generac authorized repair center who could not repair the unit until January 2025.

215.    In 2021 and 2023, Plaintiff, Arval Headrick, purchased two Generac standby generators for his properties in Texas to ensure that his homes have power during city wide power outages.

216.    Mr. Headrick purchased his first Class Generator on or around June 3, 2021, from Lowe's in Kingwood, Texas. Mr. Headrick purchased his second Class Generator from Lowe's in Brownsville, Texas on or around May 15, 2023.

217.    Both of Mr. Headrick's Class Generators are covered by a five-year limited warranty.

218.    Mr. Headrick's Class Generator purchased in Kingwood, Texas was installed by Air Pro Air Conditioning ("Air Pro"), an authorized Generac dealer. Mr. Headrick's Class Generator purchased in Brownsville, Texas was installed by Advanced Contractors ("Advanced"), an authorized Generac dealer.

36

219.  On or around July 8, 2024, during Hurricane Beryl, the Class Generator Mr. Headrick purchased in 2021 malfunctioned and suddenly stopped providing power to his home during an extended power outage resulting from the hurricane. An authorized Generac technician who inspected Mr. Headrick's Class Generator indicated that the Class Generator suffered an alternator malfunction.

220.  On or around May 28, 2024, and May 31, 2024, the Class Generator Mr. Headrick purchased in 2023 also malfunctioned and suddenly stopped providing power to his property. According to the authorized Generac technician who inspected Mr. Headrick's Class Generator, the brush kit was worn down and needed to be replaced. To date, Mr. Headrick's Class Generator has not been repaired.

221.  On or around December 14, 2021, Plaintiffs, Earnest and Diana Jackson ("the Jacksons") purchased a Generac 22kW standby generator from Generac's authorized retailer, Norwall Power Systems ("NPS").

222.  The Jacksons' Class Generator is covered by a five-year limited warranty.

223.  The Jacksons' Class Generator was installed by authorized Generac installer, Luis Electric Company, on or around January 6, 2022.

224.  The Jacksons purchased their Class Generator to ensure that they would have standby power to his whole home during power outages and hurricanes.

225.   However, on January 8, 2024, the Jacksons' Class Generator failed to provide power to their home. On the same day, The Jacksons contacted a representative at Generac who dispatched a local authorized repair company to service their unit.

226.   All of the Plaintiffs listed herein researched and considered the reliability and quality of the brand, workmanship, warranty, and reliability of the Generac generators they were purchasing. Prior to purchasing the Class Generators, Plaintiffs heard, viewed, and/or read Generac's and/or its authorized retailers' marketing and advertising materials, including brochures, internet advertisements, commercials, as well as offers from Generac that touted the quality, reliability, and functionality of Generac generators.

227.   Plaintiffs relied on the information regarding the quality, reliability, and functionality of the Class Generators conveyed in Generac's marketing materials and advertisements in deciding to purchase their standby generators. Generac failed to disclose the Defect to Plaintiffs before they purchased their Class Generator, despite Generac's knowledge of the Defect. As a result, Plaintiffs purchased their Class Generator on the reasonable, but mistaken, belief that it would be a high quality and reliable backup power source for their home. Plaintiffs would not have purchased the Class Generator, or would not have paid as much for it, had they known the subject generator had a Defect that could degrade the major parts and components, and leave them without electricity during a major storm or utility power outage.

228. Generac is a power product manufacturer that was founded in 1959 and presently describes itself as "the #1 manufacturer of home backup generators."[4] The Company designs and manufactures a wide array of power products that include "portable, residential, commercial and industrial generators."[5]

229. When a consumer purchases a Generac standby generator, the system is "installed, serviced and supported by one of 10,000 Authorized Generac Dealers" local to the consumer's area."[6]

### *Generac and its Agents Marketed the Class Generators as Reliable*

230. Generac uniformly marketed the Class Generators to Plaintiffs and other consumers throughout the United States, as "the largest and most reliable source for home, business, and recreational backup generators."[7]

231. Plaintiffs and the putative class members relied on Generac's marketing brochure for the Class Generators, which claims that Generac "developed robust engine solutions to ensure their Generators provide the reliability necessary to power through even the most demanding situations." Generac also touts the Class Generators' engines as "capable of handling the

---

[4] Generac, *About*, https://www.generac.com/about/, (last accessed on September 7, 2024).

[5] *Id.*

[6] *Largest Dealer Network*, Generac, https://www.generac.com/home-standby-generators/, (last accessed on September 7, 2024).

[7] *Generac Product Categories*, GenerX, https://generxgenerators.com/generac-product-categories/, (last accessed on September 7, 2024).

rigors of generator use, resulting in power that's more reliable and requires less routine maintenance than any competitive engine."[8]

232.   On its website, Generac tells consumers when utility power is lost, "your Generac home standby system kicks into action, and continues to power your home until utility power returns."[9] Additionally, Generac warrants that its "Guardian Series generators provide the automatic backup power you need to protect your home and family during a power outage."[10]

233.   Generac also claims that its generators have "tough, durable, corrosion-resistant aluminum enclosures perfect for all weather conditions."[11]

234.   In its marketing materials for its power supply products, which include the Class Generators, Generac makes numerous warranties such as:

(a) "It kicks in within seconds of sensing power loss—automatically—and runs for as long as necessary until utility power returns."

(b) "Generac's G-Force Engine is a purpose-built, pressure-lubricated engine capable of handling the rigors of generator use, resulting in power that's more reliable and requires less routine maintenance than any competitive engine."

(c) "TruePower technology delivers best-in-class power quality with less than 5% total harmonic distortion for clean, smooth operation of sensitive electronics and appliances."

---

[8]   *Home      Class      Generators*,      Generac, https://www.generac.com/globalassets/products/residential/standby-generators/brochure/10-26kW_hsb_brochure.pdf, p. 2 (last accessed on September 7, 2024).

[9] *How Home Class Generators Work*, Generac, https://www.generac.com/home-standby-generators/, (last accessed on September 7, 2024).

[10] *Id.*

[11] *Id.*

(d) "The Generac Promise means that our Guardian® Series home backup generators will give you peace of mind and the power to live."

(e) "Consumers choose Generac automatic generators not only for their proven reliability, but for the innovative features, engineered with home and business owners in mind."

(f) "Whenever there's an outage, you don't have to worry — because the power stays on at all times throughout your entire home."

(g) "We have developed robust engine solutions to ensure our generators provide the reliability necessary to power through even the most demanding situations."

(h) "Reliable. Dependable. We promise."

(i) "24/7 power protection"

(j) "Quality, affordable power solutions."

(k) "Our RhinoCoat powder-coated finish helps make corrosion-resistant aluminum perfect for all weather conditions."

(l) Generac provides "tough, durable, corrosion-resistant aluminum enclosures perfect for all weather conditions."

(m) "Generac's commitment to continuous improvement, innovation and technology is giving us the ability to bring more power to you."[12]

235.  Generac developed, created, and controlled all the advertising, marketing, and point-of-sale materials for their respective Class Generators.

236.  Generac made these representations to Plaintiffs before purchase and at the time of purchase via its website, sales brochures, and marketing materials discussed herein. Plaintiffs and the putative Class Members relied upon

---

[12] *How Home Class Generators Work*, Generac, https://www.generac.com/home-standby-generators/, (last accessed on September 7, 2024).

these representations, which became a basis of the bargain when Plaintiffs and the putative Class Members purchased the Class Generators.

237.   All Generac authorized retailers, distributors, dealers, technicians, and installers alleged herein operate as agents of Generac. Upon information and belief, employees of Generac authorized retailers, distributors, dealers, technicians, and installers receive training and materials from Generac; technicians follow instructions published and disseminated by Generac when diagnosing and repairing generator issues; servicers and dealers report to Generac each time an error or malfunction is detected in a generator that a consumer requests to be serviced or repaired; and Generac approves or denies payment for services and repairs provided under warranty.

### Generac's Knowledge of the Defect

238.   Upon information and belief, Generac was aware of the Defect and its effects on the Class Generators purchased or owned by consumers, through but not limited to: (a) consumer complaints posted on the internet; (b) warranty and post-warranty claims; (c) consumer complaints made directly to Generac and/or its authorized retailers, or certified technicians; and (d) authorized retailer and installer repair records and replacement parts sales data.

239.   Online discussions between consumers and authorized Generac retailers and technicians demonstrate that Generac has known about the Defect for years. For instance, in a 2022 post seeking advice on the purchase of a whole home generator, a Generac service dealer responded:

42

- Generac service Dealer Here- please do more real research on your product choice. Generac 22/24 Kws have known issues in the industry that are not being recalled. I've been selling [G]enerac for years and my company has suffered tremendous losses due to major failures on these products.[13]

240.   There are thousands of online threads and comments on forums filled with consumers telling their versions of the same story: During a storm or inclement weather, their well-maintained and/or new Generac standby generator stopped working, and was found to have worn out and/or degraded brushes and slip rings.

241.   For example, Reddit has numerous threads dedicated to consumer complaints describing the same issues Plaintiffs experienced as a result of the Defect:

- Generac Generator was an expensive failure!! My elderly parents are without power OR a generator now. Like many, my elderly parents have been out of electricity since the hurricane. My mother is a diabetic and my father is recovering from sepsis out in a rural area that is on the list for Sunday repairs at the earliest. They bought a Generac unit which was supposed to power their home for 9 days and it JUST got inspected two weeks ago by a Generac technician, and yet when they need it most it's failed them. It keeps running its battery down, and even with over the phone tech support nothing is fixed. My parents are using a borrowed gas generator to run fans and the fridge for mom's insulin.[14]

---

[13]   *Newbie generator question*[], Reddit, June 5, 2022, https://www.reddit.com/r/Generator/comments/v5f7zl/newby_generator_question_want_whole_home_ng/.

[14] *Generac Generator was an expensive failure!! My elderly parents are without power OR a generator now*, Reddit, July 13, 2024, https://www.reddit.com/r/houston/comments/1e2aip0/generac_generator_was_an_expensive_failure_my/.

- My father's 26kW Generac generator failed within hours of it starting on Monday. It's less than a year old, and was used only once before, for two days in May. Father does regular maintenance and oil on it.[15]

- Brand new unit (7 months old) never ran apart from test. Came on for like 2 hours Monday then shut off showing error code 1902. Tech from the supplier came last night [and] said I need to replace rotor and brushes. Apparently they have had over 20 calls with the same problem.[16]

- You're definitely not alone. The internet's blowing up with 1902 complaints right now. Years ago they had a brush alignment issue brushes would hang partially off the slip rings and cause uneven wear. But I've never seen a graphite brush damage a rotors slip rings. If I had to guess the slip rings are probably coming apart and damaging the brushes. Worked for Generac dealer for years. When they have major defects like this they try to keep it hush hush rather than admitting they sold millions of defective units.[17]

- Same here in New Orleans! Hurricane Francine just blew through last night. After annual maintenance, checkups, weekly "exercise" schedule we put our trust (and fridge full of food) in Generac's hands and we only got TWO HOURS of run time! It's the first actual desperately needed emergency usage post-storm run. It's a 22 kW Generac running only a TV small air conditioning unit and a few LED lights. Our certified installer shows up today saying that "the rotors and brushes are worn out and pitted and need to be replaced AGAIN after he just replaced them last September. We've only had this generator installed September 2021.[18]

---

[15] *Brushes worn out on 1 year old Generac generator used only once*, Reddit, July 10, 2024,https://www.reddit.com/r/Generator/comments/1e03y1z/brushes_worn_out_on_a_1_year_old_generac/.

[16] *Id.*

[17] *Id.*

[18] *Id.*

242. Similarly, the Troubleshooting/Repair/Installation forum on Gentekpower.com also contains numerous consumer complaints discussing damaged brushes and slip rings:

- Called the local dealer for the 1902 Low Voltage error. Generac told them to look for damaged brushes. Brushes were damaged, and one of the two slip rings was shattered. This generator is in year 4 of a 5 year warranty, but dealer said Generac refused to cover this under the year 4 engine and alternator defect warranty. The generator has 40 hours on it with normal maintenance. How can this be my fault and deny the warranty claim?[19]

- So I have a 24 kW Generac whole house generator. Model # G0072101 Serial #3011307403 Class Generator is under voltage without a load. I am only getting approx 96 volts from each phase to N. About a month and a half ago I replaced the brushes because they blew up.[20]

243. On Gentekpower.com, a thread regarding corroded slip rings on a Generac generator that is less than a year old contained the following consumer complaints:

- . . . [b]een getting these alot lately. It seems like they are all brush or rotor related. Generac insist[s] we do our FB1 test, FB2 etc testing, but evidence is apparent. I think what's happening these things corrode and cause friction causing major wear and tear or uneven wear on brushes.[21]

- The slip rings on my 24kW unit look just like that. It's a year old and located in Lake Jackson, Tx Which is about 45 miles

---

[19] *11kW 1902 error, brushes and slip ring broken*, Gentek Power, September 15, 2022, https://gentekpower.com/forums/viewtopic.php?t=3357.

[20] *Generac 24kW under voltage*, Gentek Power, June 30, 2023, https://gentekpower.com/forums/viewtopic.php?t=4352.

[21] *Slip rings.*, Gentek Power, May 24, 2024, https://gentekpower.com/forums/viewtopic.php?t=5255.

south of Houston and about 15 miles from the Gulf of Mexico. The unit made electricity for about 4 hours.[22]

244. A Facebook Group called "Generac Residential Generator help" also has hundreds of consumers reporting their standby generators failed this hurricane season:

- My 22kW [G]enerac continues to throw the 1902 failure code. The unit is 3yrs old with 50hrs run time. Manufacture date of 6/30/21. It first failed a couple of months ago when the [D]erecho hit Houston. Service tech diagnostic was to replace brushes, rotor and slip rings. They replaced them 3 weeks later which was 1 week before hurricane Beryl. The unit failed again with the same code. A week later finally got a tech out and the diagnosis was to replace the entire alternator."[23]

- . . . a lot of others are reporting the same issue I had with my generator during Hurricane Beryl. My generator (24kW) was installed December of 2022. It has done a weekly test with no issues. It was purchased from Generator Supercenter and I do pay the $40 fee for the cellular monitoring. It had its yearly maintenance check December of 2023. Here comes Hurricane Beryl and my generator didn't even run 2 hours before it threw up the error code 1902. No power until Friday when it was restored by CP. Generator Supercenter showed up Saturday morning at 3 AM and replaced the brush and said it will need a rotor. From what I have gathered so far, this is an issue with the 24kW units that were manufactured 2020-2022. I wonder how many with this particular model had issues and what was the issue. Curious how many units have to have issues that maybe Generac would ever do a recall on the 24kW's.[24]

245. The Better Business Bureau's website also contains consumer complaints of standby generators failing during a storm:

---

[22] *Id.*

[23] *Generac Residential Generator help group*, Facebook, July 28, 2024, https://www.facebook.com/share/p/jmkgBajhKuKbNwYi/.

[24] *Generac Residential Generator help group*, Facebook, August 1, 2024, https://www.facebook.com/share/p/KbUGkX6Z1RTCfbZG/.

- Purchased and Installed 24K Generator. IT broke during the latest storm. Getting somebody to take a look has taken weeks. When somebody finally checked he said it's a Generac known issue with Generators build during the pandemic parts inside were defective and break error code 1902.Have not been able to get any approved Generac company to come deal with it.[25]

- I bought my generator because we live in [] the first time I had to use it was for the ice storm it worked for a few hours and went off with code 1902 the belryl came and it only worked for a few hours with code 1902 again. I bought the generator because my son has seizures, epilepsy and cerebal palsy. I can't ever get Generac [sic] on the phone or by email to resolve this issue so I can use my generator when needed.[26]

246.    The consumer complaints quoted above represent only a small fraction of the thousands of complaints about the Class Generators. Likewise, this is only a fraction of the consumer who contacted Generac directly to notify them of the Defect.

247.    Upon information and belief, Generac was made aware of the Defect affecting the Class Generators prior to Plaintiffs purchasing their Generators by other consumers who contacted Generac directly to notify them that their Generators had issues with premature deterioration and rapid wear of components such as the slip rings and the carbon brushes, which caused consumers' Class Generators to experience a reduction or interruption in power output and/or failure.

---

[25] *Complaints, Generac Power Class Generators Inc.*, Better Business Bureau, September 17, 2024, https://www.bbb.org/us/wi/waukesha/profile/electric-generator/generac-power-systems-inc-0694-15012025/complaints?page=1&type=serviceorrepair.

[26] *Id.* at 2.

248.   In 2022, the same year Plaintiffs' Class Generators failed for the first time, Generac reported spending $77 million in warranty claims.27 Upon information and belief, a portion of those warranty costs stemmed from claims and repairs associated with issues consumers were having with the Class Generators malfunctioning or failing due to the Defect.

249.   Upon information and belief, Generac's warranty department reviews and analyzes warranty data submitted by its authorized retailers and installers in order to identify track repairs, maintenance, and defects in its generators. When a repair is made under warranty (or warranty coverage is requested), Generac is provided with detailed documentation of the problem.

250.   Despite its knowledge about the Defect, Generac did not remedy or eliminate the Defect or remove the Class Generators from the stream of commerce. Nor did Generac contact consumers to inform them of the Defect. Instead, Generac delayed or denied warranty claims and refused to acknowledge the existence of the underlying latent Defect, and in doing so, failed to adequately address the Defect.

251.   Generac has a duty to disclose the Defect and not to omit or to conceal the Defect from Plaintiffs and putative Class Members. Generac's failure to disclose, or active concealment of, this material Defect places Plaintiffs,

---

27 *U.S. Power Equipment Warranty Report*, Warranty Week, June 8, 2023, https://www.warrantyweek.com/archive/ww20230621.

putative Class Members, and members of the public at risk of injury and/or property damage.

252.    Moreover, Generac continues to falsely represent through written representations and warranties that the Class Generators are reliable backup power sources that are free from Defect, of merchantable quality, and will perform dependably for years.

253.    Generac has wrongfully shifted the burden, expense, and difficulty involved in discovering and addressing the Defect affecting the Class Generators to Plaintiffs and putative Class Members. Meanwhile, Generac continues to market, sell, and distribute the Class Generators, while concealing the Defect, failing to notify consumers of the Defect, and failing to issue a recall.

### Generac's Warranty Practices

254.    Generac's Limited Warranty states that the "Generator and/or transfer switch system will be free from defects in material and workmanship" for a period of "five (5) years" from activation "or two thousand (2,000) hours, whichever occurs first." Ex. 1.

255.    The durational limits on this warranty are unconscionable and unenforceable. Generac knew or should have known that the Class Generators would develop the subject Defect leading to reduced generator output and/or failure.

256.    In its capacity as a warrantor, Generac had knowledge of the true quality and character of the Class Generators so that any effort to limit its

warranties in a manner that would exclude coverage of the affected generators is unconscionable. Generac knew that the Class Generators were inherently flawed and, even if repaired, would continue to fail. Therefore, any warranty was a misrepresentation.

257.   Generac's warranty limitations are procedurally unconscionable. There was unequal bargaining power between Generac and Plaintiffs and the other putative Class Members, as Plaintiffs and the other Class members had no meaningful ability to negotiate the warranty terms.

258.   The limitations on the warranties are substantively unconscionable. As the manufacturer of the Class Generators, Generac knew or should have known that the Class Generators would develop a material defect leading to reduced generator output and/or failure. As such, Generac's enforcement of the durational limitations on those warranties is harsh and shocks the conscience.

**TOLLING AND ESTOPPEL OF STATUTE OF LIMITATIONS**

259.   Generac had actual awareness for years that the Class Generators contain a Defect that causes the Class Generators to malfunction and/or fail (generally referred to – along with the risks and infirmities associated with and caused by such failure, including safety, operational, and functional unreliability risks, and consequences – as the "Defect").

260.   Although Generac was aware of the Defect, it took no steps to warn Plaintiffs or putative Class Members of such Defect and the dangers it poses. Generac was and is under a continuous duty to disclose to Plaintiffs and putative

Class Members the true quality and reliability of the Class Generators, and the consequences posed by the Defect. However, Generac knowingly, affirmatively, and actively concealed or recklessly disregarded the true nature, quality, and character of the Defect.

261.   Generac had received reports of Class Generators failing due to the Defect by at least by 2021, if not before.

262.   Generac had reportedly attempted to address the Defect on a case-by-case basis, without notifying consumers of the Defect or the associated risks, by requiring consumers to repeatedly undergo maintenance and repair requests during which the parts affected by the Defect, such as the Class Generators' carbon brushes, are replaced.

263.   To date, Generac has not issued a recall, warned consumers, or taken any other affirmative steps to adequately correct the Defect. Nor has Generac taken steps to alert consumers about the Defect.

264.   Despite its knowledge, Generac has fraudulently concealed the fact that the Class Generators were and are defective, even though it has a duty to disclose the Defect. Generac made affirmative misrepresentations to consumers during the design, manufacture, supply, distribution, and/or sale of the Class Generators, including that the Class Generators were free from defects.

265.   Generac made affirmative representations to Plaintiffs and putative Class Members during warranty claims and other correspondence with consumers lodging complaints, including that their problems with the Class

Generators have been resolved. Such representations were made in an effort to persuade consumers to accept replacement parts, including replacement carbon brushes, as supposed remedies.

266.  At all times, Generac concealed that the Class Generators and any remedial measures taken were defective.

267.  Generac's concealment was material to Plaintiffs and putative Class Members' decisions to purchase the Class Generators. Generac's concealment was known, and Generac intended to mislead Plaintiffs and putative Class Members into relying upon it. Accordingly, Plaintiffs and the putative Class Members relied upon Generac's concealment of these material facts and suffered injury as a proximate result of that justifiable reliance.

268.  The uniform Defect in the design and/or manufacture in the Class Generators was not detectible to Plaintiffs or putative Class Members.

269.  Generac actively and intentionally concealed the existence of the Defect and failed to inform Plaintiffs or putative Class Members of the existence of the Defect at all times, including when they contacted Generac about problems with their Class Generators. Accordingly, Plaintiffs and putative Class Members' lack of awareness was not attributable to a lack of diligence on their part.

270.  Generac's statements, words, and acts were made for the purpose of suppressing the truth that the Class Generators and replacements were defective.

271.  Generac concealed the Defect for the purpose of delaying Plaintiffs and putative Class Members from bringing a lawsuit to recover their damages.

272.   The claims alleged herein accrued upon discovery of the defective nature of the Class Generators. Because the alleged Defect is hidden or latent, and Generac took steps to conceal and/or failed to disclose the true quality, reliability, and nature of the Class Generators, Plaintiffs and members of the putative Classes could not have discovered the Defect through the exercise of reasonable diligence.

273.   As a result of Generac's active omission, concealment of the Defect, and/or failure to inform Plaintiffs and putative Class Members of the Defect, any statutes of limitations applicable to the allegations herein have been tolled. In light of Generac's active concealment of the Defect and/or failure to inform Plaintiffs and the putative Class Members of the Defect, Generac is estopped from relying on any applicable statutes of limitations as a defense. Additionally, Generac is equitably estopped from relying on laches as a defense due to its own unclean hands as alleged herein.

274.   Moreover, the causes of action alleged herein did not occur until Plaintiffs and putative Class Members discovered that their Class Generators were defective. Plaintiffs and putative Class Members could not reasonably have discovered the Defect until their Class Generators malfunctioned and stopped working during an outage. Nevertheless, Plaintiffs and putative Class Members had no reason to discover their causes of action because of Generac's active concealment of the true nature of the Defect.

275.   At all relevant times, and continuing to this day, Generac knowingly, affirmatively, and actively misrepresented and concealed the true quality and reliability of the Class Generators. Plaintiffs and the putative Class Members reasonably relied on Generac's affirmative and/or ongoing concealment or nondisclosure. For these reasons, Generac is estopped from prevailing on any statute of limitations defense in this action.

## CLASS ACTION ALLEGATIONS

276.   Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and 23(b)(3) behalf of themselves and all others similarly situated as members of the proposed Classes (collectively the "Class Members"), as defined below. Plaintiffs reserve the right to amend or supplement the Class descriptions with greater specificity or further division into subclasses or limitation to certain issues after conducting discovery in this matter.

**Nationwide Class:**

> All persons within the United States who purchased or acquired a Class Generator manufactured or sold from 2020 to 2024, or during the fullest period allowed by law.

**Florida Subclass:**

> All persons who reside within Florida and purchased or acquired a Class Generator and all persons who purchased or acquired a Class Generator within Florida from 2020 to 2024, or during the fullest period allowed by law.

**Georgia Subclass:**

> All persons who reside within Georgia and purchased or acquired a Class Generator and all persons who purchased or acquired a Class

Generator within Georgia from 2020 to 2024, or during the fullest period allowed by law.

**Louisiana Subclass:**

All persons who reside within Louisiana and purchased or acquired a Class Generator and all persons who purchased or acquired a Class Generator within Louisiana from 2020 to 2024, or during the fullest period allowed by law.

**Kansas Subclass:**

All persons who reside within Kansas and purchased or acquired a Class Generator and all persons who purchased or acquired a Class Generator within Kansas from 2020 to 2024, or during the fullest period allowed by law.

**North Carolina Subclass:**

All persons who reside within North Carolina and purchased or acquired a Class Generator and all persons who purchased or acquired a Class Generator within North Carolina from 2020 to 2024, or during the fullest period allowed by law.

**Texas Subclass:**

All persons who reside within Texas and purchased or acquired a Class Generator and all persons who purchased or acquired a Class Generator within Texas from 2020 to 2024, or during the fullest period allowed by law.

277. Excluded from the Class and Subclasses are employees, officers, directors, legal representatives, heirs, successors, and wholly or partly owned subsidiaries or affiliates of Generac; Generac's retailers and/or installers; Class Counsel and their employees; the judicial officers and their immediate family members and associated court staff assigned to this case; all persons within the

third degree of relationship to any such persons; and all persons who properly execute and file a timely request for exclusion from the Class.

278. **Numerosity:** The members of the Classes satisfy the numerosity requirement under Rule 23(a)(1) in that each Class is so numerous and geographically dispersed that individual joinder of all Class Members is impracticable. While Plaintiffs are informed and believe that the number of Class Members likely consists of at least thousands of people collectively in Florida and throughout the United States, the exact number of Class Members is presently unknown. The number of putative Class Members may be ascertained from Generac's sales data, and its financial records. The Classes are also identifiable from information and records in the possession of Generac.

279. **Commonality and Predominance:** In accordance with Rule 23(a)(2) and Rule 23(b)(3), this action involves common questions of law and fact, which predominate over any questions affecting individual Class Members, including, but not limited to:

(a) whether the Class Generators are defective;

(b) whether the Class Generators are defectively designed and/or manufactured;

(c) whether the Class Generators have not or will not perform in accordance with the reasonable expectations of ordinary consumers;

(d) whether Generac knew or should have known about the Defect;

(e) whether Generac failed to disclose and/or concealed the Defect to Plaintiffs and putative Class Members;

(f) whether Generac breached the implied warranty of merchantability;

(g) whether Generac breached express warranties relating to the Class Generators;

(h) whether Generac's Limited Warranty is unconscionable;

(i) whether Plaintiffs and the putative Class Members overpaid for their Class Generators and/or did not receive the benefit of the bargain;

(j) whether Generac misrepresented the reliability and quality of the Class Generators;

(k) whether Generac engaged in unfair, unconscionable, or deceptive trade practices relating to quality, standards, use, and reliability, in connection with the sale of its Class Generators under the consumer protection laws of the states in which the class members reside in;

(l) whether Generac should be ordered to disgorge all or part of the ill-gotten profits it received from the sale of the defective Class Generators;

(m) whether Plaintiffs and putative Class Members are entitled to replacement of their defective standby Generators;

(n) whether Plaintiffs and the putative Class Members are entitled to damages and other monetary relief and, if so, in what amount; and

(o) whether Plaintiffs and the putative Class Members are entitled to declaratory, injunctive, or other equitable relief.

280.  **Typicality:** The representative Plaintiffs' claims are typical of the claims of the putative Class Members in accordance with Rule 23(a)(3). Plaintiffs, like all putative Class Members, were impacted by the Defect. Plaintiffs and the putative Class Members purchased or own the Class Generators with the Defect.

All such claims arise out of Generac's conduct in designing, manufacturing, marketing, advertising and selling defective Class Generators, Generac's conduct in concealing the Defects in the Class Generators to the consuming public, and Plaintiffs' and Class Members' ownership of the Class Generators. Accordingly, Generac's misconduct is common to all putative Class Members, and results in the same injury to all Class Members.

281. **Adequacy of Representation:** Plaintiffs will fairly and adequately protect the interests of the putative Class Members and have retained counsel who are experienced and competent trial lawyers in consumer class action litigation, thus satisfying Rule 23(a)(4). There are no material conflicts between the claims of the representative Plaintiffs and the putative Class Members that would make class certification inappropriate. Counsel for the putative Class Members will assert the claims of all Class Members in this action vigorously.

282. **Declaratory Relief**: In accordance with the elements set forth in Rule 23(b)(2), Generac has acted or refused to act on with respect to the Defect and the Class Generators on grounds generally applicable to Plaintiffs and the putative Class Members, thereby making declaratory relief appropriate, with respect to each Class as a whole.

283. **Superiority**: Pursuant to Rule 23(b)(3), this class action is superior to all other available means of fair and efficient adjudication of the claims in this controversy, and no unusual difficulties are likely to be encountered in the

management of this class action. The damages or other financial detriment suffered by Plaintiffs and the putative Class Members are relatively small in comparison to the burden and expense that would be required to individually litigate their claims against Generac. In addition, the expense of individually litigating the claims for the putative Class Members would be so cost prohibitive it would deny Class Members a viable remedy. Hence, it would be impracticable for the Class Members to individually seek redress for the wrongs done to them by Generac. Even if the members of the Class could afford such individual litigation, serial adjudication in numerous venues is not efficient, timely, or proper, and will result in the unnecessary expenditure of judicial resources. Likewise, joinder on an individual basis of hundreds or thousands of claimants in one suit would be similarly impractical or impossible. Generac has acted or refused to act on grounds generally applicable to the putative Class Members, thereby making appropriate final declaratory relief with respect to the Class Members as a whole. Therefore, Certification under Rule 23(b)(3) is appropriate because a class action is superior to the other available methods for the fair and efficient adjudication of this action, and Plaintiffs envision no unusual difficulty in the management of this action as a class action.

284. Class certification is also proper under Rule 23(b) because individualized rulings and judgments would likely result in inconsistent or contradictory results for similarly situated Plaintiffs. In addition, the adjudication of separate actions by individual Class Members would create a risk of

adjudications with respect to them that would either be dispositive of the interests of other Class Members not parties to the other cases or substantially impair or impede their ability to protect their interests.

285. The claims asserted herein are applicable to all Plaintiffs and consumers throughout the United States who purchased the Class Generators. Adequate notice may be given to putative Class Members directly using information maintained in Generac's or its authorized retailers' records, or through notice by publication.

286. Plaintiffs reallege and incorporate by reference the allegations contained in all of the proceeding paragraphs and allegations of this Class Action Complaint, including the factual allegations, tolling allegations, and class action allegations, as though fully set forth in each of the following claims for relief asserted on behalf of the Class Members.

## CAUSES OF ACTION

### COUNT I
### Breach Of Express Warranty

287. The Plaintiffs and the Subclasses bring this claim for breach of express warranty against Generac on behalf of themselves, and the Class Members of the Nationwide and the Subclasses, pursuant to Uniform Commercial Code ("UCC") § 2-313, which has been adopted by and is materially the same under the laws of each state.

288.  In addition, Plaintiffs bring this count pursuant to the analogous express warranty laws for the states in which the Class Members reside, including Fla. Stat. §§ 672.313, 680.21 and 680.1031.

289.  At all times material hereto, Generac is and was at all relevant times a "merchant" as defined by UCC § 2-104. The Class Generators are and were at all relevant times "goods" as defined by UCC § 2-105.

290.  UCC § 2-313 states that a merchant creates an express warranty by making to the buyer "[a]ny affirmation of fact or promise … which relates to the goods and becomes part of the basis of the bargain" and "any description of the goods which is made part of the basis of the bargain.

291.  Plaintiffs and members of the Florida Class, and the Nationwide Class, purchased the Class Generators designed, manufactured, and marketed by Generac by and through Generac's authorized sellers for retail sale to consumers, or were otherwise expected to be the third-party beneficiaries of Generac's contracts with authorized sellers, or eventual purchasers when bought from a third party. At all relevant times, Generac was the manufacturer, marketer, warrantor, and/or seller of the Class Generators.

292.  In connection with the purchase of all Class Generators, and as detailed above, Generac provided Plaintiffs and the putative Class Members with the express warranties described above in paragraphs 230 through 234(a)-(m), and the statements made in the Limited Warranty.

293.   Generac, as the designer, manufacturer, marketer, distributor, or seller, expressly warranted that the Class Generators were safe and reliable products designed to generate power and manage electricity for Plaintiffs' and the putative Class Members' homes.

294.   The express written warranties covering the Class Generators were a material part of the bargain between Generac and consumers. At the time it made these express warranties, Generac knew reasonable consumers, including the named Plaintiffs and the putative Class Members, were purchasing the Class Generators because they believed the Class Generator to perform as represented and marketed.

295.   Each of the Class Generators has an identical or substantially identical product representation(s) as Generac represents that all its Class Generators safely and reliably generate power and manage electricity and are a dependable source of power in the event of an outage.

296.   Generac breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing Plaintiffs and the putative Class Members with Class Generators containing a Defect that was never disclosed to Plaintiffs and the putative Class Members; (b) failing to adequately repair the Defect or replace the Class Generators with units that are actually as represented; and (c) supplying products and materials that failed to conform to the representations made by Generac.

297.   Plaintiffs and the putative Class Members have given Generac a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Generac can neither cure the defect in the Class Generators nor resolve the incidental and consequential damages flowing therefrom.

298.   Thus, Generac's warranties fail in their essential purpose, and the recovery of Plaintiffs and the putative Class Members is not limited to their remedies.

299.   Accordingly, Plaintiffs and the putative Class Members assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiffs and the putative Class Members of the purchase price of all Class Generators currently owned and leased, and for such other incidental and consequential damages as allowed.

300.   As a direct and proximate result of Generac's breaches of its express warranty, Plaintiffs and the putative Class Members have been damaged in an amount to be determined at trial.

## COUNT II
## Breach Of Implied Warranty

301.   The Plaintiffs bring this cause of action against Generac on behalf of all Class Members for breach of implied warranty and merchantability of the Class Generators. In the alternative, the Plaintiffs bring this claim under the laws

of the states where the Plaintiffs and Class Members reside and/or purchased their Class Generators.

302.   Generac is a merchant with respect to standby generators.

303.   Generac impliedly warranted to Plaintiffs and the putative Class Members that its standby generators, including the Class Generators, were free of defects, merchantable, of good quality, reliable, and fit for the ordinary purpose of a standby generator designed to power a home in the event of a power outage.

304.   Generac breached these representations and implied warranties. Generac made and/or allowed these misrepresentations to be made by its authorized agents with the intent of inducing Plaintiffs and putative Class Members to purchase Class Generators. If Plaintiffs and the Class Members had known the true facts regarding the defective condition of the Class Generators, they would not have purchased Class Generators or paid as much money for the Class Generators.

305.   The Class Generators were unfit for ordinary use and were not of merchantable quality as warranted by Generac.

306.   Before purchase, Plaintiffs and the putative Class Members could not have readily discovered that the generators were not merchantable, were not of the same quality as those generally acceptable in the trade, and did not conform to the quality previously represented.

307. Generac has failed to provide adequate remedies under its limited warranties, which have caused those warranties to fail in their essential purpose, by failing to adequately repair this known issue free of charge.

308. Plaintiffs gave Generac actual or constructive notice of the breaches of these warranties, and Generac has failed to cure these breaches. Moreover, by virtue of its knowledge of the Defect and of the experience of purchasers and/or owners of the Class Generators who complained thereof, Generac has received notice of the breaches of the warranties.

309. The element of privity, if applicable, exists between Generac and members of the Class because, inter alia, (i) Generac has had direct written communications with members of the Class with regard to the Class Generators in the form of standardized warranty forms; (ii) Generac has had direct communications with members of the Class with regard to the Class Generators through internet, and magazine advertisements; (iii) the retailers, dealers, and/or distributors that have sold Class Generators to and communicated with members of the Class are agents, in law or in fact, of Generac and are authorized to sell Generac products on Generac's behalf; (iv) Generac has entered into contracts with members of the Class in connection with the assurance of warranties; and (v) Plaintiffs and members of the Class are third-party beneficiaries of warranties that ran from Generac to its agents, the retailers, dealers, servicers, and installers of Generac products.

310.    The damages suffered by Plaintiffs and the putative Class Members were directly and proximately caused by the defective Class Generators.

311.    Generac's course of conduct, as alleged herein, is likely to mislead - and has misled – consumers acting reasonably under the circumstances, to the consumers' detriment.

312.    Moreover, upon information and belief, Generac acted and continues to act in an identical or substantially similar manner with respect to the entire putative Class by continuing to manufacture, warrant, and sell defective Class Generators and by providing wholly inadequate remedies to consumer complaints.

313.    As a direct and proximate result of Generac's breaches of these implied warranties, Plaintiffs and the Class Members have suffered damages, injury in fact and ascertainable loss in an amount to be determined at trial, including repair and replacement costs and damages.

## COUNT III
## Negligent Misrepresentation

314.    The Plaintiffs bring this cause of action against Generac on behalf of all Class Members under common law for negligent misrepresentation regarding Generac's conduct and acts associated with the sale and marketing of the Class Generators. In the alternative, the Plaintiffs bring this claim under the laws of the states where the Plaintiffs and Class Members reside and/or purchased their Class Generators.

315.   On or around the dates of purchase alleged in paragraphs 81 through 225 herein, Generac represented that the Class Generators would be free from defects. Generac marketed, advertised and sold Class Generators without adequate testing and without warning Plaintiffs and the putative Class Members that it had not adequately tested or evaluated the Class Generators to ensure reliability, workmanship, and quality, as advertised.

316.   Generac continued to market and sell the Class Generators despite receiving numerous complaints and warranty claims regarding defective slip rings and carbon brushes which materially affected the units' ability to perform as advertised and left thousands of consumers without any source of standby power during major outages.

317.   Generac failed to disclose, and/or concealed the fact that, in its testing, it confirmed that the Class Generators' major alternator components would suffer from premature degradation and wear, causing the units to exhibit reduced power output and/or result in premature failure to power the consumers' homes, especially during inclement weather, like a hurricane.

318.   These misrepresentations and omissions concerned material facts that influenced Plaintiffs and the putative Class Members in their decisions to purchase Class Generators.

319.   At all relevant times prior to Plaintiffs' purchase of the Class Generators as alleged herein, Generac made numerous misrepresentations specifically described in paragraphs 230 through 234(a)-(m), regarding the

quality and reliability of its Generators on its website and other online and promotional sources.

320. At the time it made these representations, Generac knew or should have known that these representations were false or were made without knowledge of their truth or falsity.

321. Plaintiffs and the putative Class Members justifiably and detrimentally relied upon Generac's representations regarding the quality and reliability of the Class Generators, as shown through their purchase of the Class Generators and installation of such Generators at their homes and other structures.

322. If Generac had disclosed that its Class Generators did not conform to the above representations, then Plaintiffs and the putative Class Members would not have purchased the Class Generators.

323. Generac's misrepresentations and omissions misled Plaintiffs and the putative Class Members into believing that the Class Generators were durable and reliable. However, the Class Generators do not conform to Generac's representations and are inherently defective.

324. As a direct and proximate result of Generac's misrepresentations regarding the Class Generators, Plaintiffs and the putative Class Members have and will continue to suffer damages in an amount to be proven at trial.

**COUNT IV**
**Fraudulent Concealment and/or Misrepresentation**

325.   The Plaintiffs bring this cause of action against Generac on behalf of all Class Members for fraudulent concealment and/or misrepresentation regarding the acts and conduct associated with the sale and marketing of the Class Generators. In the alternative, the Plaintiffs bring this claim under the laws of the states where the Plaintiffs and Class Members reside and/or purchased their Class Generators.

326.   On or around the dates of purchase alleged in paragraphs 81 through 225 herein, Generac represented that the Class Generators would be free from defects.

327.   At all times mentioned herein, Generac, through its experience, was in a position of superiority to Plaintiffs and the putative Class Members and, as such, had a duty and obligation to disclose to them the true facts of and their knowledge concerning Class Generators and the consequences of the Defect, and that the Class Generators purchased by Plaintiffs and the putative Class Members were otherwise not as Generac warranted and represented.

328.   Generac had exclusive knowledge of the defective nature of the Class Generators at the time of sale. The Generators' defects are latent and not something that Plaintiffs or the Class Members, in the exercise of reasonable diligence, could have discovered independently prior to their purchases.

329.   Furthermore, Generac's nondisclosure of the material facts set forth herein concerning the defective nature of its Generators was fraudulent as

Plaintiffs and the putative Class Members did not have an equal opportunity to become apprised of those material facts, and despite a diligent inquiry, Plaintiffs could not and did not discover the true nature of the material facts Generac concealed and intentionally failed to disclose. Plaintiffs and the Class simply do not have access to the same information available to Generac.

330. Rather than disclose the Defect, Generac made numerous misrepresentations regarding the quality and reliability of the Class Generators from 2020 to present.

331. Plaintiffs and the putative Class Members directly or indirectly relied upon Generac's representations regarding the quality and reliability of the Class Generators because they purchased such Generators. However, the Class Generators do not conform to the above representations and are inherently defective.

332. The statements and representations by Generac described in paragraphs 230 through 234(a)-(m), and elsewhere in their marketing materials, constitute material facts that were designed to induce purchase.

333. From 2020 to present, Generac failed to test the Class Generators or concealed the fact that it had not adequately tested them to determine whether the subject Generators would provide durability and power that's more reliable and requires less routine maintenance than any competitive engine or whether the subject Generators were "perfect for all weather conditions" as advertised.

334.   From 2020 to present, Generac concealed the fact that the Class Generators had defective slip rings and carbon brushes which materially affected the units' ability to perform as advertised and left thousands of consumers without any source of standby power during major outages.

335.   Generac failed to disclose, and/or concealed the fact that, in its testing, it confirmed that the Class Generators' major alternator components would suffer from premature degradation and wear, causing the units to exhibit reduced power output and/or result in premature failure to power the consumers' homes, especially during inclement weather, like a hurricane.

336.   Because it was in a superior position and had knowledge regarding the ongoing issues experienced by consumers regarding the parts and/or components relating to the alternator, Generac knew that the statements regarding the reliability and quality of the Class Generators were false.

337.   Generac intended for the statements and omissions regarding quality and reliability of the Class Generators to induce reliance on the part of Plaintiffs and the putative Class Members.

338.   Generac's misrepresentations and omissions misled Plaintiffs and the putative Class Members into believing that the Class Generators were adequately tested and would provide a durable and reliable source of standby power that requires less routine maintenance than any competitive engine.

339.   Plaintiffs and the putative Class Members were also misled by Generac's misrepresentations and omissions because they believed that the Class

Generators would provide them "added protection" and continue to power their home "until utility power returns" during all weather conditions.

340.  If Generac had disclosed that its Generators did not conform to the above representations, then Plaintiffs and the putative Class Members would not have purchased the Class Generators.

341.  Based upon Generac's misrepresentations concerning the quality and reliability of their standby generators, Plaintiffs and the putative Class Members paid a premium for the subject Class Generators.

342.  Generac made affirmative representations regarding the quality and reliability of their standby generators as set forth in this Complaint to Plaintiffs, the putative Class Members, and the general public prior to the date Plaintiffs purchased the Class Generators, while at the same time concealing the material Defect described herein. All of these facts were material to the purchase decisions of consumers, including Plaintiffs and the putative Class Members.

343.  The material facts concealed or not disclosed by Generac are those which a reasonable person would have considered to be important in deciding whether or not to purchase the Class Generators.

344.  At all times material hereto, Generac intentionally, willfully, and maliciously concealed, omitted, or suppressed the facts set forth above from Plaintiffs and the putative Class Members, with the intent to defraud as herein alleged.

345.   At all times material hereto, Plaintiffs and the putative Class Members reasonably relied on Generac to disclose to them the material facts set forth above. Had Generac disclosed the above facts to Plaintiffs and the putative Class Members and had they been aware of said facts, they would have negotiated additional warranty coverage, negotiated a lower price to reflect the risk, or simply avoided the risk altogether by purchasing different generators from one of Generac's competitors.

346.   Generac continued to conceal and omit the defective nature of its Generators even after Class Members began to report problems. Based on information and belief, Generac has received thousands of warranty claims concerning its Generators.

347.   As a result of the past and continued concealment or suppression of the facts set forth above, the named Plaintiffs and the Subclasses sustained damages in an amount to be determined at trial.

## COUNT V
## Negligence

348.   The Plaintiffs and Subclasses for all states asserted herein bring this cause of action against Generac for negligence with regard to Generac's conduct and practices pertaining to the sale and marketing of the Class Generators.

349.   At all times material hereto, Generac designed and manufactured the Class Generators.

350.   Generac had a duty to Plaintiffs and the putative Class Members to exercise reasonable and ordinary care in the formulation, testing, design,

manufacture, and marketing of the Class Generators, either through its own testing or by verifying third-party test results.

351.  Generac breached its duty by producing and selling a defective product to Plaintiffs and the putative Class Members.

352.  Generac failed to exercise ordinary and reasonable care in the design and manufacture of the Class Generators.

353.  As described herein, Generac's defective Generators have failed in numerous ways, including premature deterioration, reduced power output and/or premature failure.

354.  Generac further breached its duty by failing to notify Plaintiffs and the putative Class Members of the defects in the Class Generators they were purchasing and installing and by failing to take any remedial action once Generac was on notice that its product was defective.

355.  Generac knew or should have known that the Class Generators were defective, would fail prematurely, were not suitable for use as a backup power source product, and otherwise were not as it represented, and Generac should have foreseen that Plaintiffs and the putative Class Members would rely, to their detriment, on its marketing claims concerning the subject Generators' durability and reliability.

356.  As a direct and proximate result of Generac's negligence, Plaintiffs and the Class have suffered damages, injury in fact and ascertainable loss in an

amount to be determined at trial, including repair and replacement costs and damages.

## COUNT VI
## Violation Of the Florida Deceptive and Unfair Trade Practices Act

357.   This claim is brought by James W. Dawson Jr., Edmond C. Hill, Jr. and the other named Florida Plaintiffs on behalf of the Florida Subclass of consumers against the Generac Defendants pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.* ("FDUTPA").

358.   The Florida Plaintiffs and all members of the Florida Subclass are "consumers" within the definition set forth under Fla. Stat. § 501.203(7).

359.   Generac is engaged in "trade or commerce" as defined by Fla. Stat. § 501.203(8).

360. FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

361.   Generac violated FDUTPA by willfully engaging in the conduct described in this Complaint, which constitutes unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.

362.   In addition, Generac violated section 501.2077 of the FDUTPA as to Plaintiffs, Robert Logan and Monica Boney, and all other Florida Subclass members who are veterans and are Florida residents who were affected by Generac's deceptive and unfair practices.

363.   In the course of their business, Generac failed to disclose and actively concealed the dangers and risks posed by the Class Generators and/or the Class Defect as described herein and otherwise engaged in activities with a tendency or capacity to deceive.

364.   Generac employed deception, false promises, misrepresentation, and intentional concealment, suppression, or omission of material facts in connection with the sale and advertisement of the Class Generators in the State of Florida.

365.   At all relevant times prior to and during the Florida Plaintiffs' and Florida Subclass members' purchases of the Class Generators, Generac made numerous misrepresentations regarding the quality and reliability of their standby generators on its website and other online and promotional sources, including the statements and warranties described in paragraphs 230 through 234(a)-(m) herein.

366.   Generac and its network of authorized dealers, retailers, and servicers have been aware of the existence of the Class Defect and its potential risks since at least 2021, if not before, by way of numerous public and private consumer complaints about the Class Generators and subsequent malfunctions.

367.   By failing to disclose and by actively concealing the Defect in the Class Generators yet marketing them as reliable and of high-quality backup power sources, and by presenting itself as a reputable manufacturer and seller that values quality and dependability, Generac engaged in unfair or deceptive business practices in violation of the FDUTPA.

368.   To ensure that consumers would purchase the Class Generators, Generac deliberately withheld information about the propensity of the Defect to cause premature wear and failure of the alternator parts and components, leading to the malfunction and failure of the Class Generators during use, instead of addressing the Defect.

369.   The Florida Plaintiffs and the Florida Subclass directly or indirectly relied upon Generac's representations regarding the quality and reliability of the Class Generators because they purchased the subject Generators.

370.   Generac's misrepresentations and omissions misled Florida Plaintiffs and the Florida Subclass into believing that the Class Generators were adequately tested and reliable sources of backup power. However, the Class Generators do not conform to the above representations and are inherently defective.

371.   Generac failed to test or concealed the fact that it had not adequately tested to determine whether the Class Generators would provide power that is more reliable and requires less routine maintenance than any competitive engine.

372.   Generac's unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including the Florida Plaintiffs, about the quality and reliability of the Class Generators.

373.   Florida Plaintiffs and the Florida Subclass were misled by Generac's misrepresentations and omissions because they believed that the Class Generators were adequately tested, would provide power that is "capable of handling the rigors of generator use, resulting in power that's more reliable and requires less routine maintenance than any competitive engine," and would be reliable in all weather conditions, including strong storms or hurricanes, as Generac and/or its agents represented to consumers.

374.   Generac engaged in concealment, suppression, or omission in violation of the FDUTPA when it sold and advertised the Class Generators knowing that the subject Generators possessed defects that would result in reduced generator power output and/or premature failure.

375.   Generac engaged in the concealment, suppression, or omission of the aforementioned material facts with the intent that others, such as Florida Plaintiffs and the Florida Subclass, and/or the general public would rely upon the concealment, suppression, or omission of such material facts and purchase Generac Class Generators containing said defects and misrepresented qualities.

376.   If Generac had disclosed that its standby generators contained materials defects and did not conform to the above representations, Florida Plaintiffs and the Florida Subclass would not have purchased the Class Generators.

377.   Generac knowingly and intentionally misrepresented material facts and concealed the aforementioned material defects regarding the Class

Generators to induce reliance by consumers, including Florida Plaintiffs and members of the Florida Subclass.

378.   Generac's concealment, suppression, or omission of material facts as alleged herein, constitute unfair, deceptive and fraudulent business practices within the meaning of the FDUTPA.

379.   Generac either knew, or should have known, that the Class Generators were defectively designed and/or manufactured and would experience reduced generator power output and/or premature failure resistance, which would result in significant damages and losses to the Florida Plaintiffs and Florida Subclass.

380.   Upon information and belief, Generac knew the Class Generators contained the defect described herein resulting in reduced generator power output and/or premature failure at the time the Class Generators left its control and entered the stream of commerce.

381.   At the time of sale, the Class Generators contained design and/or manufacturing defects. These defects reduced the Class Generators' effectiveness and performance, rendered the Class Generators unable to perform the ordinary purposes for which they were used, and caused the damage described herein.

382.   Through the fraudulent and/or deceptive acts described above, Generac induced Florida Plaintiffs and the Florida Subclass to purchase the Class Generators.

383. Through the fraudulent and/or deceptive acts described above, Generac induced Florida Plaintiffs and the Florida Subclass which have resulted in the Florida Plaintiffs and Florida Subclass to pay out of pocket for repair and/or maintenance once the defects were discovered.

384. Based upon the above representations by Generac's concerning the quality of the Class Generators, the Florida Plaintiffs and the Florida Subclass paid a premium for the subject Generators.

385. As a direct and proximate cause of the FDUTPA violations described above, the Florida Plaintiffs and the Florida Subclass have been injured in that they have purchased the defective Generators based on the nondisclosures of material facts alleged above. Had the Florida Plaintiffs and the Florida Subclass known the defective nature of the Class Generators, they would not have purchased or would not have paid what they did for the subject Generators.

386. Generac's actions in connection with the manufacturing and distribution of the Class Generators as set forth herein evidences a lack of good faith, honesty in fact, and observance of fair dealing, so as to constitute unconscionable commercial practices in violation of the FDUTPA.

387. Generac acted willfully, knowingly, intentionally, unconscionably, and with reckless indifference when it committed these acts of consumer deception.

388. Said acts and practices on the part of Generac were and are illegal and unlawful pursuant to Fla. Stat. § 501.204.

389.   Generac used, and continues to use, unfair methods of competition, and unfair or deceptive acts or practices in the advertising, soliciting, provision, or distribution the Class Generators. Generac continues in this unlawful conduct in violation of the FDUTPA, with no indication that it will cease. Accordingly, Florida Plaintiffs and Florida Subclass seek a declaratory judgment that Generac's conduct described in this Complaint are in violation of the FDUTPA and enjoining Generac from continuing to do so.

390.   As a direct and proximate result of Generac's FDUTPA violations, the Florida Plaintiffs and the Florida Subclass have been injured and are entitled to actual damages, including but not limited to the difference in value between the Class Generators as delivered and as they should have been delivered, declaratory judgment, and reasonable attorneys' fees and costs.

## COUNT VII
## Violation of the Kansas Consumer Protection Act

391.   This claim is brought by Plaintiff, Vernon McBee on behalf of the Kansas Subclass of consumers against the Generac Defendants pursuant to the Kansas Consumer Protection Act ("Kansas CPA"), K.S.A. § 50-623, *et seq*.

392.   The Kansas Plaintiffs and all members of the Kansas Subclass are "consumers" within the definition set forth under K.S.A. § 50-624(b), who purchased one or more of the Class Generators during a "consumer transaction" within the meaning of K.S.A. § 50-624(c).

393.   Generac is a "supplier" as defined by K.S.A. § 50-624(1).

394. The Kansas CPA provides "[n]o supplier shall engage in any deceptive act or practice in connection with a consumer transaction," K.S.A. § 50-626(a), and that deceptive acts or practices include: (1) knowingly making representations or with reason to know that "(A) Property or services have sponsorship, approval, accessories, characteristics, ingredients, uses, benefits or quantities that they do not have;" and "(B) property or services are of particular standard, quality, grade, style or model, if they are of another which differs materially from the representation;" "(2) the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact;" and "(3) the willful failure to state a material fact, or the willful concealment, suppression, or omission of a material fact."

395. The Kansas CPA also provides that "[n]o supplier shall engage in any unconscionable act or practice in connection with a consumer transaction." K.S.A. § 50-627(a)

396. In the course of its business, Generac violated the Kansas CPA by failing to disclose and willfully concealing the Defect affecting the Class Generators as described in this Complaint. Generac knowingly marketed its standby generators as being a reliable backup power source for consumers, when in reality the Class Generators are prone to premature failure during power outages.

397. Accordingly, Generac engaged in conduct which constitutes unfair methods of competition, unconscionable acts or practices, and unfair or

deceptive acts or practices, including representing that the Class Generators have characteristics, uses, benefits, and qualities which they do not have; representing that the Class Generators are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

398.   In the course of its business, Generac failed to disclose and actively concealed the dangers and risks posed by the Class Generators and/or the Class Defect as described herein and otherwise engaged in activities with a tendency or capacity to deceive.

399.   In purchasing the Class Generators, Mr. McBee and the other Kansas Subclass Members were deceived by Generac's failure to disclose that certain parts within the major components of the Class Generators, such as the slip rings and carbon brushes, were defective and prone to premature degradation, which would lead to malfunction and failure to power their homes during an outage.

400.   Generac's actions as set forth above occurred in the conduct of trade or commerce.

401.  Generac's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

402.  Generac intentionally and knowingly misrepresented material facts regarding the Class Generators with intent to mislead Mr. McBee and the Kansas Subclass.

403.  Generac knew or should have known that its conduct violated the Kansas CPA.

404.  Generac owed Mr. McBee and the Kansas Subclass a duty to disclose the truth about its Class Generators because Generac possessed exclusive knowledge regarding the high number of warranty claims due to the increased failure rate of the Class Generators during major storms involving the same parts and components, and Generac intentionally concealed the foregoing from Mr. McBee and the Kansas Subclass, while also refusing to acknowledge that this was a widespread defect affecting thousands of units.

405.  Generac employed deception, false promises, misrepresentation, and intentional concealment, suppression, or omission of material facts in connection with the sale and advertisement of the Class Generators in the State of Kansas.

406.  At all relevant times prior to and during the Mr. McBee and Kansas Subclass' purchases of the Class Generators, Generac made numerous misrepresentations regarding the quality and reliability of their standby generators on its website and other online and promotional sources, including

the statements and warranties described in paragraphs 230 through 234(a)-(m) herein.

407. Generac and its network of authorized dealers, retailers, and servicers have been aware of the existence of the Class Defect and its potential risks since at least 2021, if not before, by way of numerous public and private consumer complaints about the Class Generators and subsequent malfunctions.

408. Generac had a duty to disclose that the Class Generators suffered from the subject Defect causing them to exhibit reduced power output or fail altogether during a major storm and have a higher rate of failure during a power outage than would be expected by a reasonable consumer.

409. By failing to disclose and by actively concealing the Defect in the Class Generators yet marketing them as reliable and of high-quality backup power sources, and by presenting itself as a reputable manufacturer and seller that values quality and dependability, Generac engaged in unfair or deceptive business practices in violation of the Kansas CPA.

410. To ensure that consumers would purchase the Class Generators, Generac deliberately withheld information about the propensity of the Defect to cause premature wear and failure of the alternator parts and components, leading to the malfunction and failure of the Class Generators during use, instead of addressing the Defect.

411.   Mr. McBee and the Kansas Subclass directly or indirectly relied upon Generac's representations regarding the quality and reliability of the Class Generators because they purchased the subject Generators.

412.   Generac's misrepresentations and omissions misled Mr. McBee and the Kansas Subclass into believing that the Class Generators were adequately tested and were reliable sources of backup power for their homes. Mr. McBee and the Kansas Subclass were misled by Generac's misrepresentations and omissions because they believed that the Class Generators were adequately tested, would provide power that is "capable of handling the rigors of generator use, resulting in power that's more reliable and requires less routine maintenance than any competitive engine," and would be reliable in all weather conditions, including strong storms or hurricanes, as Generac and/or its agents represented to consumers.

413.   However, the Class Generators do not conform to the above representations and are inherently defective.

414.   Mr. McBee and the other Kansas Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Generac's conduct in that they overpaid for their Class Generators and did not receive the benefit of their bargain, their Class Generators have suffered a diminution in value, and they have no way of assuring that their Class Generators will function during the next storm.

415.    These injuries are the direct and natural consequence of Generac's misrepresentations and omissions.

416.    Generac's violations present a continuing risk to Plaintiffs as well as to the general public. Generac's unlawful acts and practices complained of herein affect the public interest.

417.    Pursuant to K.S.A. § 50-634, Mr. McBee and the Kansas Subclass seek monetary relief against Generac measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $10,000 for Mr. McBee and each Kansas Subclass member. Mr. McBee and the Kansas Subclass also seek an order enjoining Generac's unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under K.S.A. § 50-623, *et seq*.

## COUNT VIII
## Violation of the Louisiana Consumer Protection Act

418.    This claim is brought by Plaintiffs Keven and Karen Lovetro on behalf of the Louisiana Subclass of consumers against the Generac Defendants pursuant to the Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL"), L.S.A. § 51-1401, *et seq*.

419.    The Lovetros and all members of the Louisiana Subclass are "consumers" within the definition set forth under L.S.A. § 51-1402(2).

420.    Generac is engaged in "trade or commerce" as defined by L.S.A. § 51-1402(9).

421.   The Louisiana CPL prohibits "deceptive acts or practices in the conduct of any trade or commerce." L.S.A. § 51:1405(A).

422.   In the course of its business, Generac violated the Louisiana CPL by failing to disclose and willfully concealing the Defect affecting the Class Generators as described in this Complaint. Generac knowingly marketed its standby generators as being a reliable backup power source for consumers, when in reality the Class Generators are prone to premature failure during power outages.

423.   Accordingly, Generac engaged in conduct which constitutes unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Class Generators have characteristics, uses, benefits, and qualities which they do not have; representing that the Class Generators are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

424.   In the course of its business, Generac failed to disclose and actively concealed the dangers and risks posed by the Class Generators and/or the Class

Defect as described herein and otherwise engaged in activities with a tendency or capacity to deceive.

425.   In purchasing the Class Generators, the Lovetros and the other Louisiana Subclass Members were deceived by Generac's failure to disclose that parts within the major components of the Class Generators, such as the slip rings and carbon brushes, were defective and prone to premature degradation, which would lead to malfunction and failure to power their homes during an outage.

426.   Generac's actions as set forth above occurred in the conduct of trade or commerce.

427.   Generac's unfair or deceptive acts or practices were likely to and did, in fact, deceive reasonable consumers.

428.   Generac intentionally and knowingly misrepresented material facts regarding the Class Generators with intent to mislead the Lovetros and the Louisiana Subclass.

429.   Generac knew or should have known that its conduct violated the Louisiana CPL

430.   Generac owed the Lovetros and the Louisiana Subclass a duty to disclose the truth about its Class Generators because Generac possessed exclusive knowledge regarding the high number of warranty claims due to the increased failure rate of the Class Generators during major storms involving the same parts and components, and Generac intentionally concealed the foregoing from the

Lovetros and the Louisiana Subclass, while also refusing to acknowledge that this was a widespread defect affecting thousands of units.

431.   Generac employed deception, false promises, misrepresentation, and intentional concealment, suppression, or omission of material facts in connection with the sale and advertisement of the Class Generators in the State of Louisiana.

432.   At all relevant times prior to and during the Lovetros and Louisiana Subclass' purchases of the Class Generators, Generac made numerous misrepresentations regarding the quality and reliability of their standby generators on its website and other online and promotional sources, including the statements and warranties described in paragraphs 230 through 234(a)-(m) herein.

433.   Generac and its network of authorized dealers, retailers, and servicers have been aware of the existence of the Class Defect and its potential risks since at least 2021, if not before, by way of numerous public and private consumer complaints about the Class Generators and subsequent malfunctions.

434.   Generac had a duty to disclose that the Class Generators suffered from the subject Defect causing them to exhibit reduced power output or fail altogether during a major storm and have a higher rate of failure during a power outage than would be expected by a reasonable consumer.

435.   By failing to disclose and by actively concealing the Defect in the Class Generators, yet marketing them as reliable and of high-quality backup power sources, and by presenting itself as a reputable manufacturer and seller

90

that values quality and dependability, Generac engaged in unfair or deceptive business practices in violation of the Louisiana CPL.

436. To ensure that consumers would purchase the Class Generators, Generac deliberately withheld information about the propensity of the Defect to cause premature wear and failure of the alternator parts and components, leading to the malfunction and failure of the Class Generators during use, instead of addressing the Defect.

437. The Lovetros and the Louisiana Subclass directly or indirectly relied upon Generac's representations regarding the quality and reliability of the Class Generators because they purchased the subject Generators.

438. Generac's misrepresentations and omissions misled the Lovetros and the Louisiana Subclass into believing that the Class Generators were adequately tested and were reliable sources of backup power for their homes. The Lovetros and the Louisiana Subclass were misled by Generac's misrepresentations and omissions because they believed that the Class Generators were adequately tested, would provide power that is "capable of handling the rigors of generator use, resulting in power that's more reliable and requires less routine maintenance than any competitive engine," and would be reliable in all weather conditions, including strong storms or hurricanes, as Generac and/or its agents represented to consumers.

439. However, the Class Generators do not conform to the above representations and are inherently defective.

440.    The Lovetros and the other Louisiana Subclass members were injured and suffered injury in fact, and/or actual damages as a proximate result of Generac's conduct.

441.    Generac's violations present a continuing risk to Plaintiffs as well as to the general public. Generac's unlawful acts and practices complained of herein affect the public interest.

442.    Pursuant to L.S.A. § 51:1409, the Lovetros and the Louisiana Subclass seek to recover actual damages in an amount to be determined at trial; treble damages for Generac's knowing violations of the Louisiana CPL; an order enjoining Generac's unfair, unlawful, and/or deceptive practices; declaratory relief; attorneys' fees; and any other just and proper relief available under L.S.A. § 51:1409.

## COUNT IX
## Violation of the North Carolina Unfair and Deceptive Practices Act

443.    This claim is brought by Plaintiff, Kevin Kingsley on behalf of the North Carolina Subclass of consumers against the Generac Defendants pursuant to the North Carolina Unfair and Deceptive Practices Act ("NC UDPA"), N.C. Gen. Stat. § 75-1.1, *et seq*.

444.    Generac is engaged in "commerce" within the meaning of N.C. Gen. Stat. § 75-1.1(b).

445.    The NC UDPA prohibits "unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75-1.1(a).

446. In the course of its business, Generac violated the NC UDPA by failing to disclose and willfully concealing the Defect affecting the Class Generators as described in this Complaint. Generac knowingly marketed its standby generators as being a reliable backup power source for consumers when, in reality, the Class Generators are prone to premature failure during power outages.

447. Accordingly, Generac engaged in conduct which constitutes unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Class Generators have characteristics, uses, benefits, and qualities which they do not have; representing that the Class Generators are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

448. In the course of its business, Generac failed to disclose and actively concealed the dangers and risks posed by the Class Generators and/or the Class Defect as described herein and otherwise engaged in activities with a tendency or capacity to deceive.

449. In purchasing the Class Generators, Plaintiff Kingsley and the other North Carolina Subclass Members were deceived by Generac's failure to disclose that parts within the major components of the Class Generators, such as the slip rings and carbon brushes, were defective and prone to premature degradations, which would lead to malfunction and failure to power their homes during an outage.

450. Generac's actions as set forth above occurred in the conduct of trade or commerce.

451. Generac's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

452. Generac intentionally and knowingly misrepresented material facts regarding the Class Generators with intent to mislead Plaintiff Kingsley and the North Carolina Subclass.

453. Generac knew or should have known that its conduct violated the NC UDPA.

454. Generac owed Plaintiff Kingsley and the North Carolina Subclass a duty to disclose the truth about its Class Generators because Generac possessed exclusive knowledge regarding the high number of warranty claims due to the increased failure rate of the Class Generators during major storms involving the same parts and components, and Generac intentionally concealed the foregoing from Mr. Kingsley and the North Carolina Subclass, while also refusing to acknowledge that this was a widespread defect affecting thousands of units.

455.   Generac employed deception, false promises, misrepresentation, and intentional concealment, suppression, or omission of material facts in connection with the sale and advertisement of the Class Generators in the State of North Carolina.

456.   At all relevant times prior to and during Mr. Kingsley's and Louisiana Subclass' purchases of the Class Generators, Generac made numerous misrepresentations regarding the quality and reliability of their standby generators on its website and other online and promotional sources, including the statements and warranties described in paragraphs 230 through 234(a)-(m) herein.

457.   Generac and its network of authorized dealers, retailers, and servicers have been aware of the existence of the Class Defect and its potential risks since at least 2021, if not before, by way of numerous public and private consumer complaints about the Class Generators and subsequent malfunctions.

458.   Generac had a duty to disclose that the Class Generators suffered from the subject Defect causing them to exhibit reduced power output or fail altogether during a major storm and have a higher failure rate during a power outage than would be expected by a reasonable consumer.

459.   By failing to disclose and by actively concealing the Defect in the Class Generators, yet marketing them as reliable and of high-quality backup power sources, and by presenting itself as a reputable manufacturer and seller

that values quality and dependability, Generac engaged in unfair or deceptive business practices in violation of the NC UDPA.

460. To ensure that consumers would purchase the Class Generators, Generac deliberately withheld information about the propensity of the Defect to cause premature wear and failure of the alternator parts and components, leading to the malfunction and failure of the Class Generators during use, instead of addressing the Defect.

461. Mr. Kingsley and the North Carolina Subclass directly or indirectly relied upon Generac's representations regarding the quality and reliability of the Class Generators because they purchased the subject Generators.

462. Generac's misrepresentations and omissions misled Mr. Kingsley and the North Carolina Subclass into believing that the Class Generators were adequately tested and were reliable sources of backup power for their homes.

463. Mr. Kingsley and the North Carolina Subclass were misled by Generac's misrepresentations and omissions because they believed that the Class Generators were adequately tested, would provide power that is "capable of handling the rigors of generator use, resulting in power that's more reliable and requires less routine maintenance than any competitive engine," and would be reliable in all weather conditions, including strong storms or hurricanes, as Generac and/or its agents represented to consumers.

464. However, the Class Generators do not conform to the above representations and are inherently defective.

465.   Mr. Kingsley and the other North Carolina Subclass members were injured and suffered injury in fact, ascertainable loss, and/or actual damages as a proximate result of Generac's conduct.

466.   Generac's violations present a continuing risk to Plaintiffs as well as to the general public. Generac's unlawful acts and practices complained of herein affect the public interest.

467.   Mr. Kingsley and the North Carolina Subclass seek to recover actual damages in an amount to be determined at trial; treble damages for Generac's knowing violations of the NC UDPA; attorneys' fees; court costs; and any other just and proper relief available under the North Carolina Act, N.C. Gen. Stat. § 75-16, and other applicable North Carolina law.

468.   Mr. Kingsley and the North Carolina Subclass also seeks punitive damages against Generac because Generac's conduct was willful, reckless, wanton, fraudulent and in bad faith.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek that this case be certified and maintained as a class action pursuant to one or more of the proposed Nationwide Class and Subclasses, as they may be modified or amended, and respectfully request that this Court:

(a) Certify the Class and Subclasses defined herein, naming Plaintiffs as the Class representatives, and appointing Plaintiffs' attorneys as counsel for the putative Class Members in accordance with Rule 23 of the Federal Rules of Civil Procedure;

(b) Grant appropriate injunctive and/or declaratory relief, including, but not limited to, an order requiring Generac to recall the Class Generators and/or replace them or adequately repair the Defect, and provide Plaintiffs and Class Members with appropriate curative notice regarding the existence and cause of the Defect;

(c) Declare that Generac's conduct violates the statutes referenced herein;

(d) Award Plaintiffs and Class Members actual damages sustained;

(e) Award Plaintiffs and Class Members such additional damages, including statutory, punitive, and/or exemplary damages, over and above the amount of their actual damages, authorized and warranted by law;

(f) Grant restitution to Plaintiffs and Class Members and require Generac to disgorge inequitable gains;

(g) Award Plaintiffs and all Class Members their reasonable attorneys' fees and reimbursement of all costs for the prosecution of this action; and

(h) Award such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs, individually and on behalf of all members of the proposed Classes and Subclasses, hereby demand a trial by jury of all issues so triable as a matter of right.

Respectfully Submitted,

By:    /s/ *Chanelle Artiles*
**Reginald J. Clyne, Esq.**
Florida Bar No.: 654302
**Kimare Dyer, Esq.**
Florida Bar No.: 469920
**Chanelle Artiles, Esq.**
Florida Bar No.: 1006402

**QUINTAIROS, PRIETO, WOOD**
**& BOYER, P.A**
***Counsel for Plaintiffs***
9300 S. Dadeland Blvd., 4th Floor
Miami, FL 33156
Tel: (305) 670-1101
Fax: (305) 670-1161
rclyne.pleadings@qpwblaw.com
reginald.clyne@qpwblaw.com
chanelle.artiles@qpwblaw.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been

electronically filed with the Clerk of Court this 18th day of February 2025 via the

CM/ECF system which will send notice of electronic filing to all parties of record.

By:    /s/ *Chanelle Artiles*
Chanelle Artiles, Esq.