# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

JAMES W. DAWSON, JR., and
EDMOND C. HILL, JR., individually and
on behalf of all others similarly situated,

     Plaintiffs,

v.                            Case No. 8:24-cv-2412-KKM-LSG

GENERAC POWER SYSTEMS, INC.,
and GENERAC HOLDINGS, INC.,

     Defendants.

_____

# <u>ORDER</u>

Plaintiffs bring this putative class action against Generac Power Systems, Inc., and Generac Holdings, Inc., alleging that defendants marketed and sold them defective generators. Am. Compl. (Doc. 27). Seeking to certify a nationwide class and subclasses in Florida, Georgia, Louisiana, Kansas, North Carolina, and Texas, the plaintiffs' complaint asserts claims for breach of warranty, negligence, and fraud, as well as violations of state consumer protection laws. *Id.* ¶¶ 276, 287–468. The defendants move to dismiss for lack of personal jurisdiction, lack of standing, and for failure to state a claim. Mot. to Dismiss (MTD) (Doc. 34). The plaintiffs oppose. Resp. (Doc. 35). For the

reasons explained below, I grant in part and deny in part the defendants' motion to dismiss.

## I.  BACKGROUND

Defendant Generac Power is a Wisconsin-based corporation that designs, manufactures, markets, and sells commercial and residential generators and power supply products through authorized dealers and retailers throughout the United States. Am. Compl. ¶¶ 2, 11, 68, 71. Generac Power is a wholly owned subsidiary of Generac Holdings, a Delaware corporation with headquarters in Wisconsin that relies on its subsidiaries as a "principal source of cash to repay indebtedness [and] fund operations." *Id.* ¶¶ 68, 70–71 (internal citation omitted).

Generac's generators come with a limited warranty providing that the "Generator and/or transfer switch system will be free from defects in material and workmanship" for up to five years or 2,000 hours, and further guaranteeing that "Generac will, at its discretion, repair or replace any part(s) which, upon evaluation, inspection and testing by Generac or an Independent Authorized Service Dealer, is found to be defective." Limited Warranty (Doc. 27-1). The Limited Warranty "supersedes all other warranties, expressed or implied" and explains that "Generac makes no other warranties as to the merchantability or fitness for a particular purpose." *Id.* (boldface omitted).

2

Named plaintiffs are residents of Florida, Georgia, Kansas, Louisiana, North Carolina, and Texas, who purchased 22kW and 24kW Generac generators between 2021 and 2024. *See, e.g.*, Am. Compl. ¶¶ 18–67, 88, 92, 117, 177. The plaintiffs claim to have "relied on . . . information regarding the quality, reliability, and functionality of the Class Generators conveyed in Generac's [and its authorized retailer's] marketing materials and advertisements in deciding to purchase their standby generators." *Id.* ¶ 227. The plaintiffs allege, though, that "[u]nbeknownst to consumers at the time of purchase and/or installation, the Class Generators contain a latent defect which accelerates the wear and deterioration of critical parts associated with the alternator, including the slip rings and carbon brushes, and creates increased friction and resistance between components." *Id.* ¶ 4. That defect causes "poor contact between the carbon brushes and slip rings, further damage, and premature wear or failure of the surrounding components," and "disrupts the continuous transfer of electrical power and signals between a generator's stationary and rotating parts, which in turn causes the Class Generators to malfunction and/or stop powering consumers' homes during an outage." *Id.* ¶¶ 4–5. Each of the named plaintiffs claims that his or her Generac generator suffers from a defect which caused it to fail during use and now renders it "no longer reliable during storms or power outages." *See id.* ¶ 81.

The plaintiffs also allege that Generac Power and Generac Holdings "knew or should have known of information pertaining to the Defect," *id.* ¶ 7, based on "(a) consumer complaints posted on the internet; (b) warranty and post-warranty claims; (c) consumer complaints made directly to Generac and/or its authorized retailers, or certified technicians; and (d) authorized retailer and installer repair records and replacement parts sales data," *id.* ¶ 238. And, according to the plaintiffs, Generac Power and Generac Holdings "continue[] to falsely represent through written representations and warranties that the Class Generators are reliable backup power sources that are free from Defect, of merchantable quality, and will perform dependably for years." *Id.* ¶ 252.

The plaintiffs filed this putative class action based on the alleged defects in Generac's generators and, under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d), seek to certify both a nationwide class and individual state subclasses "of owners and purchasers of standby generators models ranging from 18Kw to 48Kw in Generac's product series ('Class Members'), which are supposed to provide consumers with automatic backup power to their homes, that were manufactured, designed, marketed, warranted, and/or sold to consumers from 2020 to 2024 (the 'Class Generators')." *Id.* ¶¶ 1, 76. The named plaintiffs, on behalf of themselves and unnamed nationwide class members, assert claims for breach of express warranty (Count I), breach of implied

4

warranty (Count II), negligent misrepresentation (Count III), fraudulent concealment or misrepresentation (Count IV), and negligence (Count V). *Id.* ¶¶ 287–356. The named plaintiffs also bring—on behalf of the relevant state subclasses—claims for violations of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) (Count VI), the Kansas Consumer Protection Act (Count VII), the Louisiana Consumer Protection Act (Count VIII), and the North Carolina Unfair and Deceptive Practices Act (Count IX). *Id.* ¶¶ 357–468. The defendants move to dismiss under Federal Rules of Civil Procedure 12(b)(1), (2), and (6).

## II.    LEGAL STANDARDS

A claim for relief must include "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8. This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Nor do "naked assertion[s]" devoid of "further factual enhancement" suffice. *Twombly*, 550 U.S. at 557.

### A. Federal Rule of Civil Procedure 12(b)(1)

A defendant may move to dismiss a complaint for lack of standing. FED. R. CIV. P. 12(b)(1). To establish standing, a plaintiff must show "(1) an injury in fact; (2) a causal connection between the injury and the alleged misconduct; and (3) a likelihood that the injury will be redressed by a favorable decision." *L.M.P. on behalf of E.P. v. Sch. Bd. of Broward Cty.*, 879 F.3d 1274, 1281 (11th Cir. 2018) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). At the pleading stage, a plaintiff must clearly allege facts demonstrating each element for each claim. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Standing requirements apply no less in class actions, where "named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Id.* at n.6 (citation modified).

### B. Federal Rule of Civil Procedure 12(b)(2)

A defendant may move to dismiss a claim for relief under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. A plaintiff attempting to exert personal jurisdiction over a nonresident defendant "bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). If a defendant submits an affidavit disputing the plaintiff's allegations, "the burden shifts back to the plaintiff to produce

6

evidence supporting personal jurisdiction, unless the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Stubbs v. Wyndham Nassau Resort and Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006). Where factual conflicts exist, "the district court must construe all reasonable inferences in favor of the plaintiff." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).

### C. Federal Rule of Civil Procedure 12(b)(6)

"To survive a motion to dismiss" for failure to state a claim, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on its face when a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court must accept the complaint's factual allegations as true and construe them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Courts should limit their "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004), *abrogated on other grounds by Twombly*, 550 U.S. 544.

## III.    ANALYSIS

Defendants Generac Power and Generac Holdings move to dismiss under Federal Rules of Civil Procedure 12(b)(1), (2), and (6). I address each in turn.

### A. Article III Standing

Moving under Rule 12(b)(1), the Generac defendants contend that the plaintiffs fail to allege a cognizable injury and thus lack standing. MTD at 21–22. I disagree, at least insofar as plaintiffs allege economic harms related to generators that they purchased.

Only the injury prong of the standing inquiry is seriously in dispute here. An injury must be concrete and particularized to satisfy Article III's requirements. *Spokeo*, 578 U.S. at 339. "Certainly, an economic injury qualifies as a concrete injury." *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1084 (11th Cir. 2019) (citing *Clinton v. New York*, 524 U.S. 417, 432–33 (1998); *MSPA Claims 1, LLC v. Tenet Fla., Inc.*, 918 F.3d 1312, 1318 (11th Cir. 2019) (explaining that an economic injury is the "epitome" of a concrete injury)). For example, the Eleventh Circuit has held that "[a] person experiences an economic injury when, as a result of a deceptive act or an unfair practice, he is deprived of the benefit of his bargain" by "acquir[ing] a worthless product." *Debernardis*, 942 F.3d at 1084 (11th Cir. 2019); *see Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 986–87 (11th Cir. 2016) (holding that class members bringing FDUTPA claims were denied the benefit of their bargain when they

8

purchased vehicles represented as having three perfect safety ratings but had no safety ratings); *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 132 (2014) ("A consumer who is hoodwinked into purchasing a disappointing product may well have an injury-in-fact cognizable under Article III."). "The benefit-of-the-bargain theory thus recognizes that a purchaser who acquires a product with significant defects may effectively receive nothing of value." *Debernardis*, 942 F.3d at 1084.

Here, the plaintiffs fairly allege two cognizable economic injuries flowing from the purchase of defective generators. First, because of Generac Power's purported concealment of a known defect, the plaintiffs say they "overpaid" for generators that do not work as advertised and fail during use. Am. Compl. ¶ 16; *see id.* ¶ 15 (describing Generac's generators as "virtually useless."). Each of the named Florida plaintiffs level this brand of factual allegation. *Id.* ¶¶ 81–229. In other words, the plaintiffs were "deprived of the benefit of their bargain" in purchasing defective products. *Id.* ¶ 17. That alone suffices for the plaintiffs' standing to pursue products liability claims. *See*, *e.g.*, *Debernardis*, 942 F.3d at 1084. Second, the plaintiffs also collectively represent that they "have paid hundreds of dollars for repairs that do not provide a permanent or reliable solution to the Defect." *Id.* ¶ 16. That allegation, too, provides enough to satisfy the concrete injury requirement.

Generac makes three arguments in response, some of which drift into the merits or otherwise would not cause the plaintiffs to flunk constitutional standing requirements. Generac's final argument, however, restricts the plaintiffs' standing to pursue claims related only to a subset of the "Class Generators."

First, Generac avers that the plaintiffs "do not plausibly allege a cognizable injury by general reference to out-of-pocket expenses or other consequential damages" because "no named Plaintiff alleges that they paid out-of-pocket expenses resulting from the damage or malfunction of their generator." MTD at 22. And even if they did, Generac says that the Limited Warranty prohibits consequential damages. *See* MTD at 23 (citing § 672.719(1)(a), Fla. Stat.). While I mostly agree with Generac's reading of the allegations, the amended complaint's failure to plead out-of-pocket repair expenses on a plaintiff-by-plaintiff basis is not fatal in the light of the allegation, imputed to all plaintiffs whose claims fall within the Court's jurisdiction,[1] that "the Florida Plaintiffs and Florida Subclass [paid] out of pocket for repair and/or maintenance once the defects were discovered." Am. Compl. ¶ 383. And individual plaintiffs claim that attempted repairs did not fix their problems. *See, e.g., id.* ¶¶ 87, 150. Additionally, the Limited

---

[1] As explained below, *infra,* at Section III.B, certain plaintiffs' claims fail on other jurisdictional grounds.

Warranty's limitation on consequential damages goes to the "separate question" of "[w]hether recovery for such a claim is permitted under governing law." *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 723 (5th Cir. 2007). At this stage, where "a plaintiff seeks damages," I only "consider whether an alleged past harm occurred to satisfy the injury requirement." *WBY, Inc. v. City of Chamblee*, 155 F.4th 1242, 1259 (11th Cir. 2025). Therefore, "it is sufficient for standing purposes that the plaintiffs seek recovery for an economic harm that they allege they have suffered" independently of whether the contract might eventually preclude recovery. *Cole*, 484 F.3d at 723.

Generac commits a similar error on the benefit-of-the-bargain theory of standing. There, Generac says that the plaintiffs only bargained "for a generator with a Limited Warranty, and not a generator that would never be damaged, never malfunction, and never need a repair." MTD at 24. But again, the plaintiffs allege that repairs have been ineffective. And Generac's arguments go squarely to the warranty's terms and the types of damages permitted, and thus the merits of the plaintiffs' breach of warranty claims. So long as the plaintiffs allege a past economic injury, I "must . . . assume that on the merits plaintiffs would be successful in their claims [for damages]." *Culverhouse v. Paulson & Co.*, 813 F.3d 991, 994 (11th Cir. 2016) (citation omitted); *see also Melton v. Century Arms, Inc.*, 243 F. Supp. 3d 1290, 1299

11

(S.D. Fla. 2017) (explaining that dismissal at the pleading stage is premature so long as benefit of the bargain damages are "theoretically available").

Finally, Generac says that the "plaintiffs do not have standing to bring claims for products that they did not purchase." MTD at 25–26. On this point, I agree. "[J]ust as a plaintiff cannot pursue an individual claim unless he proves standing, a plaintiff cannot represent a class unless he has standing to raise the claims of the class he seeks to represent." *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1288 (11th Cir. 2001). Because standing is not dispensed in gross—even for class action plaintiffs—I agree with other district courts in this Circuit that have concluded that a named plaintiff "lacks standing as to any product he did not purchase." *Blobner v. R.T.G Furniture Corp.*, No. 8:17-CV-1676-T-30SPF, 2019 WL 3808130, at *4 (M.D. Fla. July 24, 2019); *see, e.g.*, *Toback v. GNC Holdings, Inc.*, No. 13–80526–CIV, 2013 WL 5206103, at *5 (S.D. Fla. Sept. 13, 2013) ("Article III standing of a named plaintiff must be established on a claim-by-claim basis within the Eleventh Circuit, and deferring the standing determination to the class[-]certification stage will yield no different result."). And in any event, the plaintiffs do not respond to this point and have thus abandoned any contrary argument. *See Garrett-Alfred v. Facebook*, Inc., 540 F. Supp. 3d 1129, 1137 (M.D. Fla. 2021); *U.S. ex rel. Osheroff v. Tenet Healthcare Corp.*, 09-22253-CIV, 2012 WL 2871264, at *9 (S.D. Fla. July 12, 2012) ("The failure to defend a claim in

12

responding to a motion to dismiss results in the abandonment of that claim." (citing *Edmondson v. Bd. of Trs. Of Univ. of Ala.*, 258 F. App'x 250, 253 (11th Cir. 2007)).

I therefore conclude that plaintiffs have sufficiently alleged an economic injury and have standing to pursue their claims related exclusively to the generators that they purchased, namely Generac's 22kW and 24kW standby generator models. *See* Ex. A, Crespo Decl. (Doc. 34-3) (cataloging generators purchased by named plaintiffs, limited to 22kW and 24kW "Generac standby generator[s]").

### B. Personal Jurisdiction

The defendants assert that jurisdictional flaws require dismissal of all claims brought against Generac Holdings, a nonresident defendant, and all claims brought by nonresident plaintiffs. *See* MTD at 16–21; *see also* FED. R. CIV. P. 12(b)(2). First, the defendants argue that all claims against Generac Holdings must be dismissed because, as a nonresident entity, Generac Holdings "is not subject to personal jurisdiction in Florida." MTD at 16. Second, defendants urge that all claims brought by non-Florida plaintiffs must be dismissed because they "cannot sue non-resident defendants . . . in a foreign forum without an 'adequate link between the [foreign forum] and the nonresidents' claims.'" *Id.* at 19 (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of California*, 582 U.S. 255, 264 (2017)). I agree on both points.

13

### 1. This Court lacks specific personal jurisdiction over nonresident Generac Holdings

The defendants first contend that this Court lacks personal jurisdiction over Generac Holdings, a Delaware corporation headquartered in Wisconsin with insufficient Florida contacts. MTD at 16. The plaintiffs resist that conclusion, asserting that Generac Holdings "conduct[s] substantial and systemic business activities in Florida through the sale and service of generators" in deliberate collaboration with its subsidiary, Generac Power. Resp. at 9; *see, e.g.,* Am. Compl. ¶ 2 (alleging that Generac Holdings and Generac Power "*collectively* design, manufacture, and sell" generators (emphasis added)). Because the plaintiffs' accusations fail to overcome the defendants' contrary declaration, I dismiss the claims against Generac Holdings for lack of personal jurisdiction.

Federal courts use a two-step inquiry to determine whether personal jurisdiction exists over a nonresident defendant. *See Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1166 (11th Cir. 2005). Looking to state law, the court must first "determine whether the exercise of jurisdiction is appropriate under the forum state's long-arm statute." *Mut. Serv. Ins. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004). Second, a court must ensure that exercising jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. *See Horizon Aggressive Growth*, 421

F.3d at 1166. Under the Due Process Clause, a court may exercise specific jurisdiction over a nonresident entity based on its "commission of some single or occasional acts" in the forum so long as the claim itself "aris[es] out of or relate[s] to [those] contacts with the forum." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945), and *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, n.8 (1984)); *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 927 (2011) ("Flow of a manufacturer's products into the forum . . . may bolster an affiliation germane to *specific* jurisdiction."). For specific jurisdiction to attach, a defendant must " 'purposefully avail[]' itself of the privilege of conducting activities—that is, purposefully establish[] contacts—in the forum state and there must be a sufficient nexus between those contacts and the litigation." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010).

Starting with step one, "[u]nder Florida's long-arm statute, a defendant is subject to either specific jurisdiction, which applies if the claim arises out of or is related to defendant's contacts with Florida, or general jurisdiction, which applies regardless of whether the claims involve the defendant's activities in Florida if the defendant engages in substantial and not isolated activity in Florida." *Garrett-Alfred*, 540 F. Supp. 3d at 1136; *see SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1223 (11th Cir. 2023) (explaining that Florida's long-

arm statute reaches "anyone who personally or through an agent engages in any of nine enumerated acts, as long as the cause of action arises from that act." (quoting § 48.193(1)(a)). Accordingly, a court may exercise jurisdiction over a nonresident defendant that "[o]perat[es], conduct[s], engag[es] in, or carr[ies] on a business or business venture" or commits a tortious act in Florida. *See Resp.* at 9–10 (citing § 48.193(1)(a), (b), Fla. Stat.).

On the other hand, a foreign parent corporation is not subject to jurisdiction in Florida merely because its subsidiary does business there. *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1272 (11th Cir. 2002); *Reynolds Am., Inc. v. Gero*, 56 So.3d 117, 120–121 (Fla. 3d DCA 2011) ("It is, of course, well settled that a parent corporation and its wholly-owned subsidiary are separate and distinct legal entities." (internal quotations and citations omitted)). "Where the subsidiary's presence in the state is primarily for the purpose of carrying on its own business and the subsidiary has preserved some semblance of independence from the parent, jurisdiction over the parent may not be acquired on the basis of the local activities of the subsidiary." *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1293 (11th Cir. 2000) (internal quotation marks omitted). In other words, a subsidiary's contacts only justify jurisdiction over the parent when the subsidiary is a mere "alter ego," *see Daimler*, 571 U.S. at 134–35, or when "a parent corporation exerts such extensive operational control over a subsidiary that the subsidiary

16

is no more than an agent existing to serve only the parent's needs," *Gadea v. Star Cruises, Ltd.*, 949 So.2d 1143, 1146 (Fla. 3d DCA 2007); *see also Enic, PLC v. F.F. South & Co.*, 870 So.2d 888, 891 (Fla. 5th DCA 2004) ("The amount of control exercised by the parent must be high and very significant.").

Here, although the plaintiffs' complaint alleges sufficient facts to make a prima facie case for specific jurisdiction, the plaintiffs' jurisdictional evidence fails to overcome Generac Holdings' sworn statements that it neither conducts operations in Florida nor controls Generac Power's activities in Florida. To start, the Amended Complaint alleges that Generac Power and Generac Holdings "*collectively* design, manufacture, and sell a wide range of portable, residential, commercial and industrial generators, including the Class Generators, and other power supply products." Am. Compl. ¶ 2 (emphasis added). As the "parent company," the plaintiffs allege that Generac Holdings "relies on its subsidiaries, including Generac Power, as a 'principal source of cash to repay indebtedness [and] fund operations.' " *Id.* ¶ 70 (quoting 2023 Form 10-K (Doc. 35-1) at 31). More, the plaintiffs allege that Generac Holdings' "financial disclosures filed with the SEC demonstrate a strong unity of financial interest between Generac Holdings and Generac Power," as the entities are referred to as " 'the Company' in consolidated balance sheets." *Id.* ¶¶ 70–72. So, in the plaintiffs' view, "[a] foreign parent corporation such as Generac Holdings can be subject to the jurisdiction of a forum state that its

17

subsidiary is doing business in," provided the parent company's "separate corporate status is formal only and without any semblance of individual identity." Resp. at 9 (quoting *Meier*, 288 F.3d at 1272).

In response, Generac Holdings offers a declaration from its Chief Financial Officer, York A. Ragen, claiming that "despite [Generac Holdings'] position as the indirect parent of [Generac Power], [it] does not exert operational control over the internal day-to-day affairs of [Generac Power]." Ragen Decl. (Doc. 34-1) ¶ 8. According to Ragen, Generac Holdings "maintains separate books, records, and accounts" from Generac Power, does not "design," "manufacture," "market or advertise," "sell," nor "warrant" "any products, including generators, anywhere in the United States, including Florida." *Id.* ¶¶ 12–17. Likewise, Generac Holdings does not own property, employ individuals, or "conduct any business activities in Florida." *Id.* ¶¶ 18–19, 22. Absent contrary evidence, the defendants' affidavit establishes that Generac Holdings is not "[o]perating, conducting, engaging in, or carrying on a business or business venture in [Florida]" either directly or "through an agent." § 48.193(1)(a)(1), Fla. Stat. The burden thus returns to the plaintiffs "to produce evidence supporting personal jurisdiction." *Stubbs*, 447 F.3d at 1360. The plaintiffs fail to carry that burden, even construing the evidence in their favor.

Instead of producing new evidence, the plaintiffs double down on statements in Generac Holdings' financial disclosures, including its recent

Forms 10-K, 8-K, 10-Q, and Schedule 13-D. *See* 2023 Forms (Docs. 35-1, 35-2). For example, the plaintiffs repeat that in its Forms 10-Q and 8-K, Generac Holdings refers to itself and its subsidiaries as "the Company," represents that "[t]he Company provides power generation equipment, energy storage systems . . . serving the residential, light commercial, and industrial markets," and "offers standard warranty coverage" on its products. (Doc. 35-1) at 54, 58. Likewise, Generac Holdings acknowledges that product liability claims and warranty costs may affect the Company's "actual financial results." *Id.* at 4. Despite the plaintiffs' contention that the statements suggest "a strong unity of financial interest" between parent and subsidiary, Resp. at 12, the defendants' representations made for reporting purposes are insufficient to confer personal jurisdiction over Generac Holdings.

Notably, neither federal nor Florida "courts . . . consider statements in websites, annual reports, and press releases, reliable evidence that the parent exercises 'operational control' necessary to confer personal jurisdiction." *Heidbrink v. ThinkDirect Mktg. Grp., Inc.*, No. 8:14-CV-1232-T-30AEP, 2014 WL 3585698, at *3 (M.D. Fla. July 21, 2014); *see also Dev. Corp. of Palm Beach v. WBC Const., L.L.C.*, 925 So. 2d 1156, 1162–63 (Fla. 4th DCA 2006). That's because such statements are not ordinarily made "to state the legal relationship between the parties but to state in terms investors might understand the complicated arrangements between the parent, subsidiaries,

and sub-subsidiaries." *Dev. Corp. of Palm Beach*, 925 So. 2d at 1163; *see also* Reply (Doc. 38) at 6 n.4 (citing Generac Holdings' 2025 Form 10-K, which states "[f]or ease of reference in explaining the general activities of its related entities in this report, [Generac Holdings] includes here the operating activities of its wholly owned subsidiaries[,] including Generac Power.]"). Additionally, that Generac Power's profits or warranty claims are distributed to, and affect, Generac Holdings' financial statements, "is part and parcel of the parent/subsidiary relationship and is inadequate to confer personal jurisdiction." *Unitedhealthcare of Fla., Inc. v. Am. Renal Assocs. Holdings, Inc.*, No. 16-81180-CIV, 2017 WL 1832436, at *5 (S.D. Fla. May 8, 2017); *see Est. of Miller ex rel Miller v. Toyota Motor Corp.*, No. 6:07-cv-1358-Orl-19DAB, 2008 WL 516725, at *5–6 (M.D. Fla. Feb. 22, 2008) (Florida revenue that passed through subsidiaries is insufficient to establish personal jurisdiction); *see also Extendicare, Inc. v. Est. of McGillien*, 957 So. 2d 58, 64–65 (Fla. 5th DCA 2007) (merely collecting revenue from a subsidiary is insufficient to establish personal jurisdiction over the parent).

Aside from these statements, the plaintiffs do not show the indicia of an agency relationship necessary for jurisdiction, i.e., that Generac Power was "provid[ing] the day-to-day accounting services for the parent, purchas[ing] goods for the parent, [or] engag[ing] in collection services for the parent." *Yellow Pages Photos, Inc. v. Ziplocal*, LP, No. 8:12-CV-755-T-26TBM, 2012 WL

5830590, at *4 (M.D. Fla. Nov. 16, 2012) (summarizing Florida caselaw). Nor do the plaintiffs provide evidence that Generac Holdings sufficiently controlled Generac Power or participated in the design, distribution, or warranting of the generators at issue here. In fact, only "Generac Power Systems, Inc." is a party to the Limited Warranty at the heart of the plaintiffs' complaint. Said another way, Generac Holdings "was not a party to the contract at issue, was not involved in the Plaintiffs' shipments, and has had no communication with the Plaintiffs." *SX Holdings, LLC v. iContainers USA, Inc.*, No. 1:22-CV-20824, 2025 WL 901245, at *5 (S.D. Fla. Mar. 25, 2025). Ultimately, then, because plaintiffs fail to meet their burden to rebut Generac Holdings' evidence that subsidiary Generac Power maintained a separate "semblance of identity," I dismiss all counts against Generac Holdings for lack of personal jurisdiction.

## 2. This Court lacks personal jurisdiction over nonresident plaintiffs' claims against a nonresident defendant

Generac[2] lodges another jurisdictional attack, claiming that "binding Supreme Court precedent establishes that non-resident plaintiffs (the non-Florida Plaintiffs here) cannot sue non-resident defendants ([Generac Holdings and Generac Power]) in a foreign forum without an 'adequate link between the [foreign forum] and the nonresidents' claims.' " MTD at 19

---

[2] Unless otherwise specified, subsequent references to "Generac" refer to the remaining defendant, Generac Power.

(quoting *Bristol-Myers*, 582 U.S. at 264). In response, the plaintiffs argue that *Bristol-Myers*'s holding "does not bar claims of non-resident class members in federal court," and in any event that it would be premature to dismiss those plaintiffs on personal jurisdiction grounds. Resp. at 7. Because I disagree with the plaintiffs' characterization of *Bristol-Myers* and the line of district court decisions purporting to limit its application in class actions, I dismiss all claims brought by nonresident plaintiffs for lack of jurisdiction.

Named plaintiffs in a putative class action must comply with personal jurisdiction requirements. *See Story v. Heartland Payment Sys., LLC*, 461 F. Supp. 3d 1216, 1231 (M.D. Fla. 2020); *see also Mussat v. IQVIA, Inc.*, 953 F.3d 441, 447 (7th Cir. 2020) ("We see no reason why personal jurisdiction should be treated any differently from subject-matter jurisdiction and venue: the named representatives must be able to demonstrate either general or specific personal jurisdiction."). *Bristol-Myers* does not counsel otherwise. In *Bristol-Myers*, a group of plaintiffs—consisting of 86 California residents and 592 residents from 33 other States—filed eight separate suits as a mass-tort action in California state court, alleging injuries caused by a pharmaceutical drug manufactured by Bristol-Myers Squibb, a non-California resident. 582 U.S. at 258–59. The Supreme Court held that for the California state court to exercise personal jurisdiction over the nonresident defendant, "there must be an 'affiliation between the forum and the underlying controversy, principally, [an]

22

activity or an occurrence that takes place in the forum State.' " *Id.* at 262
(quoting *Goodyear*, 564 U.S. at 919) (alteration in original). In so holding, the
Court "le[ft] open the question whether the Fifth Amendment imposes the
same restrictions on the exercise of personal jurisdiction by a federal court."
*Id.* at 269; *see also id.* at 278 n.4 (Sotomayor, J., dissenting) ("The Court today
does not confront the question whether its opinion here would also apply to a
class action in which a plaintiff injured in the forum State seeks to represent
a nationwide class of plaintiffs, not all of whom were injured there.").

    Contrary to the plaintiffs' view, *see* Resp. at 6–7, this language does not
suggest *Bristol-Myers*'s rule never applies in federal court—only that it might
not apply where the defendant's due process rights are governed by the Fifth
Amendment. *See SEC v. Carrillo*, 115 F.3d 1540, 1543 (11th Cir. 1997) ("When
a district court's subject matter jurisdiction is founded upon a federal question,
the constitutional limits of the court's personal jurisdiction are fixed, in the
first instance, not by the Fourteenth Amendment but by the Due Process
Clause of the Fifth Amendment." (quoting *United Elec., Radio & Mach.
Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1085 (1st Cir. 1992))).
The Fifth Amendment applies, for example, "[w]hen the jurisdictional issue
flows from a federal statutory grant that authorizes . . . nationwide service of
process." *Carter v. Ford Motor Co.*, No. 19-62646-CIV, 2021 WL 1165248, at
*13 (S.D. Fla. Mar. 26, 2021) (quoting *SEC v. Straub*, 921 F. Supp. 2d 244, 253

(S.D.N.Y. 2013)). But in federal diversity cases, including class actions like the one here, "there is no question that the pertinent referent is the Fourteenth Amendment" and its emphasis on state-specific contacts. *Id.*

The plaintiffs further contend that districts courts in this Circuit have extrapolated the above statements of non-decision into a "growing body of law . . . holding that *Bristol-Myers* does not bar claims of non-resident members of a putative class from asserting claims in federal court." *In re Takata Airbag Prods. Liab. Litig.*, 396 F. Supp. 3d 1101, 1134 (S.D. Fla. 2019) (citing *Lee v. Branch Banking & Tr. Co.*, 2018 WL 5633995, at *6 (S.D. Fla. Oct. 31, 2018)); *see also Tickling Keys, Inc. v. Transamerica Fin. Advisors*, Inc., 305 F. Supp. 3d 1342, 1351 (M.D. Fla. 2018) (declining "to extend *Bristol-Myers* to the class action context"). But the "Plaintiffs' reliance on these cases . . . is misplaced because those cases addressed personal jurisdiction over *unnamed* class members." *Garrett-Alfred*, 540 F. Supp. 3d at 1135. *Bristol-Myers*'s requirements apply fully to named class action plaintiffs. Accordingly, "since *Bristol-Myers*—and even in the context of class actions—*no court* in this Circuit has exercised personal jurisdiction over the out-of-state claims of out-of-state *named* plaintiffs." *Carter*, 2021 WL 1165248, at *12. "In the end, calling a case a class action doesn't magically absolve the *named* plaintiffs of their obligations to establish personal and subject-matter jurisdiction over the defendants." *Id.* at *13.

24

Here, the complaint names plaintiffs who reside in Georgia (Margaret and Mark Clemm), Kansas (Vernon McBee), Louisiana (Keven and Karen Lovetro), North Carolina (Kevin Kingsley), and Texas (Ernest and Nora Fuentes). Am. Compl. ¶¶ 198–229. Those plaintiffs purchased Generac generators from authorized retailers in their states of residence and claim that the generators malfunctioned during use within those states. *Id.* In other words, these named, nonresident plaintiffs "do not allege that they: reviewed advertising related to their generators in Florida; purchased their generators in Florida; installed their generators in Florida; used their generators in Florida; sought warranty coverage in Florida; or had any other relevant contact with [Generac] in Florida." MTD at 21. So, the plaintiffs cannot dispute that this Court lacks specific jurisdiction over Generac because their claims do not "arise out of or relate to at least one of the defendant's contacts with the forum." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) (citation modified).

Nor do the plaintiffs persuade that Generac is subject to general jurisdiction in Florida. Section 48.193(2) of Florida's long-arm statute authorizes courts to establish general jurisdiction over a defendant "who is engaged in substantial and not isolated activity within the state, whether such activity is wholly interstate, intrastate, or otherwise . . . whether or not the claim arises from that activity." Because "this provision extends to the limits

on personal jurisdiction imposed by the Due Process Clause of the Fourteenth Amendment," this Court "need only determine whether [its] exercise of jurisdiction over [Generac] would exceed constitutional bounds." *Fraser v. Smith*, 594 F.3d 842, 846 (11th Cir. 2010). Constitutionally, "[a] court may assert general jurisdiction over" a nonresident corporation only "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear*, 564 U.S. at 919 (citation omitted). But "a corporation's operations in a forum other than its formal place of incorporation or principal place of business will be so substantial and of such a nature as to render the corporation at home in that State only in exceptional cases." *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015) (citation modified).

Generac is "incorporated in Wisconsin, and also headquartered in Waukesha, Wisconsin." Am. Compl. ¶ 71. True, Generac also sells its generators through authorized retailers in Florida "to thousands of consumers in this district and throughout the State." *Id.* ¶ 78. "[B]ut ties serving to bolster the exercise of specific jurisdiction," such as distributing products into a state, "do not warrant a determination that, based on those ties, the forum has *general* jurisdiction over a defendant." *Goodyear*, 564 U.S. at 927 (emphasis added); *see Daimler*, 571 U.S. at 139 (rejecting the "exorbitant exercise[] of all-purpose jurisdiction" in every state in which a corporation's "sales are sizable").

26

Because Generac is neither incorporated in Florida nor maintains its principal place of business in Florida, Generac has not subjected itself to general jurisdiction here simply by selling its products in the State. Accordingly, nonresident named plaintiffs must either file suit in their states of residence or join any later-certified national class. Their claims in Counts VII, VIII, and IX are dismissed without prejudice for lack of personal jurisdiction.

### C. Failure to State a Claim for Relief

In addition to attacking standing and personal jurisdiction, Generac argues that the plaintiffs fail to state a claim on their contract, tort, and statutory counts. *See* MTD at 26–49. Because this Court lacks personal jurisdiction over the named nonresident plaintiffs, I do not address those plaintiffs' individual state-law claims under Kansas, Louisiana, or North Carolina law.

Before discussing each individual claim, Generac faults the plaintiffs for alleging a latent defect without "explain[ing] what [the defect] is." MTD at 27; *see also* Reply at 7 (arguing that plaintiffs are "unsure if there is one or multiple alleged 'defect(s)' "). While I agree that the plaintiffs do not identify a single defect common to all generators, Generac does not explain how doing so is required for any claim here. And I disagree that, insofar as the existence of defects is relevant, the plaintiffs insufficiently describe the alleged defect. Rather, the plaintiffs explain that the generators "contain a latent defect which

27

accelerates the wear and deterioration of critical parts associated with the alternator, including the slip rings and carbon brushes, and creates increased friction and resistance between components . . . result[ing] in . . . poor contact between the carbon brushes and slip rings, further damage, and premature wear or failure of the surrounding components." Am. Compl. ¶ 4; *see also id.* ¶¶ 5–6 (further describing the defects). Pre-discovery, that description is sufficient. As for Generac's arguments on the plaintiffs' remaining counts, I address each in turn.

### 1. The plaintiffs sufficiently allege a breach of express warranty claim (Count I)

The plaintiffs allege that Generac breached the Limited Warranty and other descriptive warranties by knowingly selling defective generators that failed to conform to Generac's representations. Am. Compl. ¶ 296. Generac argues that the plaintiffs fail to state a claim under either theory because they do not allege a breach of the terms of the Limited Warranty, nor do they allege "an actionable descriptive warranty." MTD at 19. I agree only on the latter point.

To state a claim for breach of an express warranty under the Florida Uniform Commercial Code,[3] a complaint must allege: (1) the sale of goods; (2)

---

[3] The plaintiffs "bring this claim for breach of express warranty against Generac . . . pursuant to Uniform Commercial Code [UCC] § 2-313, which has been adopted by and is materially the same under the laws of each state." Am. Compl. ¶ 287.

an express warranty; (3) breach of the warranty; (4) notice to seller of the breach;[4] and (5) the injuries sustained by the buyer as a result of the breach of the express warranty. *Dunham-Bush, Inc. v. Thermo-Air Serv., Inc.*, 351 So. 2d 351, 353 (Fla. 4th DCA 1977). Contractual privity is ordinarily required unless the warranty is intended to benefit subsequent owners. *See Mesa v. BMW of N. Am., LLC*, 904 So. 2d 450, 457–58 (Fla. 3d DCA 2005). A product seller creates an express warranty by making "[a]ny affirmation of fact or promise," "[a]ny description of the goods," or offering "[a]ny sample or model" which "is made part of the basis of the bargain." § 672.313(1), Fla. Stat. A seller need not "use formal words such as 'warrant' or 'guarantee' or . . . have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty." § 672.313(2), Fla. Stat. However, the seller can disclaim "any and all express . . . warranties." *Belle Plaza Condo. Ass'n,*

---

[4] Generac claims that the plaintiffs failed to provide the required pre-suit notice. MTD at 21 (citing § 672.607(3)(a), Fla. Stat.). For now, the plaintiffs persuade that they provided sufficient notice to Generac, s*ee* Resp. 22–23 (citing Am. Compl. ¶¶ 85, 102, 116, 120, 124, 128, 132, 138, 144, 169, 170, 180, 190, 194, 197, 201, 203, 212, 214, 246, 247, 308, 354). Accordingly, I do not decide whether "notice is required to be given to the *seller*, not the manufacturer, under Florida law." *PB Prop. Mgmt., Inc. v. Goodman Mfg. Co., L.P.*, No. 3:12-CV-1366-HES-JBT, 2014 WL 12640371, at *4 (M.D. Fla. Aug. 14, 2014); *but see Valiente v. Unilever United States, Inc.*, No. 22-21507, 2022 WL 18587887, at *16 (S.D. Fla. Dec. 8, 2022) ("[P]ermitting a plaintiff to sue the manufacturer of a product for breach of express warranty without providing notice of a breach would thwart the legislative intent of the notice requirement.").

*Inc. v. B.C.E. Dev., Inc.*, 543 So. 2d 239, 240 (Fla. 3d DCA 1989) (per curiam); *see* § 672.316(1), Fla. Stat. (permitting exclusion of express warranties).

### i.    Limited Warranty

In its Limited Warranty, Generac "warrants that its Generator and/or transfer switch system will be free from defects in material and workmanship" for up to five years or two-thousand hours. (Doc. 27-1). "[A]t its discretion," Generac will "repair or replace any part(s) which, upon evaluation, inspection and testing by Generac or an Independent Authorized Service Dealer, is found to be defective." *Id; see also id.*, Guidelines ¶ 6 ("Generac may choose to repair, replace or refund a piece of equipment in its sole discretion."). Generac does not dispute that the warranty applies to the plaintiffs' generators but instead disputes whether the complaint fairly alleges a breach of those terms.

Generac first claims that the defect is not covered by the Limited Warranty's plain language. Here, I disagree. The plaintiffs allege that certain generators "had issues with premature deterioration and rapid wear of components such as the slip rings and the carbon brushes, which caused consumers' Class Generators to experience a reduction or interruption in power output and/or failure." Am. Compl. ¶ 247. That fairly alleges a "defect[] in material and workmanship." *See* Limited Warranty. Additionally, Generac's rejoinder that the Limited Warranty excludes "[r]epairs required as a result of [hurricanes]," MTD at 30, appears to misread the plaintiffs' allegations. The

plaintiffs do not allege that their generators malfunctioned *because of* a hurricane, rather that they malfunctioned *during* a hurricane. *See, e.g.*, Am. Compl. ¶ 86 (alleging that Plaintiff James Dawson's generator's "failure during the hurricane was caused by a malfunction associated with the carbon brushes").

Even so, Generac maintains it could not breach where "no Plaintiff alleges [Generac] denied a warranty repair." MTD at 18. But individual named plaintiffs allege as much. For example, after Plaintiff James Dawson's generator allegedly malfunctioned during Hurricane Ian, a "Generac authorized technician" "was unable to repair Mr. Dawson's [generator] that day." Am. Compl. ¶ 86. When the technician later returned, he "refused to address the Defect, or issues associated with the slip rings and related components," explaining that "he could not perform repairs on the slip rings at the time because Generac advised that there were no issues with those components." *Id.* Likewise, "even after Generac installed the new brushes" in Plaintiff Edmond Hill's generator, it was "still not operational." *Id.* ¶ 91; *see id.* ¶ 144 (Florida Plaintiffs Jeffrey and Alison Maiuzzo "have not received a definitive repair date," and "Generac provided no assistance and instead gave [them] the runaround through an unhelpful support thread."); *id.* ¶ 150 ("Despite updating firmware and running diagnostics, Trademark Electric was unable to repair Mr. Matheny's Class Generator."). Insofar as the Limited

31

Warranty provides for repair or replacement as exclusive remedies, I find the plaintiffs' allegations sufficient to state a breach claim and thus need not decide whether those remedies cause the warranty to "fail[] its essential purpose," as suggested by the plaintiffs. Resp. at 24 (citing *Pinellas Suncoast Transit Auth. v. Mincom, Inc.*, No. 8:06-CV-2042-T-17-EA, 2007 WL 1222595, at *3–4 (M.D. Fla. Apr. 24, 2007).

### ii.    Descriptive Warranties

The plaintiffs further allege that Generac, through its print and online advertising, warranted that its products were (among other things) "capable of handling the rigors of generator use, resulting in power that's more reliable and requires less routine maintenance than any competitive engine," would "provide the automatic backup power you need to protect your home and family during a power outage," and had "tough, durable, corrosion-resistant aluminum enclosures perfect for all weather conditions." Am. Compl. ¶¶ 230–34. Generac claims that those statements are non-actionable opinions, and in any event, were disclaimed by the Limited Warranty.

It is axiomatic that "certain affirmations of the seller amount only to 'puffing' and do not give rise to warranties, e.g., the 'nicest car in town.'" *Carter Hawley Hale Stores, Inc. v. Conley*, 372 So. 2d 965, 969 (Fla. 3d DCA 1979); *see Wasser v. Sasoni*, 652 So.2d 411, 412 (Fla. 3d DCA 1995) (finding a seller's representations that a building was "a very good building" and "an excellent

deal" were "clearly statements of opinion"); § 672.313(2), Fla. Stat. ("[A] statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty."). Generac's purported warranties that its generators "run[] for as long as necessary until utility power returns" and "deliver best-in-class power quality," Am. Compl. ¶ 234, are much closer to statements of opinion or "mere puffery or sales talk [that] is not sufficient to create an express warranty." *Aprigliano v. Am. Honda Motor Co.*, 979 F. Supp. 2d 1331, 1341 (S.D. Fla. 2013) (finding that Honda's statements that its motorcycle was "unbelievably smooth, quiet, and vibration-free" and "in a class of its own" were "textbook puffery and mere opinion" (citation modified)). And even assuming Generac's marketing statements were actionable, the Limited Warranty "supersedes all other warranties, express or implied" and disclaims any other "warranties as to the merchantability or fitness for a particular purpose." Florida law permits as much. *See Belle Plaza Condo.*, 543 So. 2d at 240. Accordingly, because the Limited Warranty disclaims any descriptive warranties, I dismiss the plaintiffs' breach claim (Count I) as to those warranties.

### 2. Generac's disclaimer in the express warranty forecloses the plaintiffs' breach of implied warranty claim (Count II)

The plaintiffs allege that Generac breached implied warranties that its generators "were free of defects, merchantable, of good quality, reliable, and fit

for the ordinary purpose of a standby generator designed to power a home in the event of a power outage." Am. Compl. ¶ 303. Generac responds that the plaintiffs do not state a claim because they do not allege pre-suit notice or privity with Generac and because the Limited Warranty disclaims any implied warranties. MTD at 34–35. The latter point again proves dispositive.

To state a claim for breach of an implied warranty of merchantability, a plaintiff must allege that a seller "is a merchant with respect to goods of that kind" and breached the implied warranty that its good were of adequate quality, and that a plaintiff provided notice of the breach and ultimately suffered damages. § 672.314, Fla. Stat; *Dunham-Bush,* 351 So. 2d at 353. Additionally, "[u]nder Florida law, privity of contract is required to maintain an action for breach of an implied warranty [of merchantability]." *Ocana v. Ford Motor Co.*, 992 So. 2d 319, 325 (Fla. 3d DCA 2008). But some courts have relaxed the privity requirement to allow claims for breach of implied warranty by third-party beneficiaries or where the retailer was the manufacturer's authorized agent. *See, e.g.*, *Weiss v. Gen. Motors LLC*, 418 F. Supp. 3d 1173, 1183 (S.D. Fla. 2019) (collecting cases). I need not decide the privity or notice questions, though, because Generac adequately disclaimed any implied warranty.

In Florida, a product seller may disclaim express or implied warranties. To disclaim an implied warranty of merchantability, "the language must

34

mention merchantability and in case of a writing must be conspicuous."
§ 672.316(2), Fla. Stat. A term or clause is conspicuous when it is written,
displayed, or presented so that a reasonable person to whom it will operate
against should have noticed it. *Id.* § 671.201(11). Ordinarily, disclaimers made
in capitalized, boldfaced, or larger typeface are sufficiently conspicuous. *See,
e.g.*, *Rudy's Glass Const. Co. v. E.F. Johnson Co.*, 404 So. 2d 1087, 1089 (Fla.
3d DCA 1981) (finding that a boldfaced disclaimer in all capital letters was
conspicuous); *Baker v. Brunswick Corp.*, No. 2:17-CV-572-FTM-99MRM, 2018
WL 1947433, at *4–5 (M.D. Fla. Apr. 25, 2018) (same).

The Limited Warranty here checks all the boxes necessary to disclaim
Generac's implied warranties. In capitalized and bold font, the warranty
clarifies that it "supersedes all other warranties, expressed or implied." More
specifically, the Limited Warranty explains that "Generac makes no other
warranties as to the merchantability or fitness for a particular purpose."
Courts have regularly found nearly identical language sufficient to disclaim
implied warranties. *See, e.g.*, *Kelly v. Lee Cnty. R.V. Sales Co.*, No. 8:18-CV-
424-T-27JSS, 2019 WL 5887482, at *5–6 (M.D. Fla. Nov. 12, 2019), *aff'd sub
nom. Kelly v. Lee Cnty. RV Sales Co.*, 819 F. App'x 713 (11th Cir. 2020). I do
the same here, and dismiss with prejudice the plaintiffs' claim for breach of the
implied warranty of merchantability.

35

### 3. The plaintiffs' claims for negligent misrepresentation (Count III) and fraudulent concealment or misrepresentation (Count IV) are barred by Florida's economic loss rule

The plaintiffs next bring two related tort claims for negligent misrepresentation and fraudulent concealment or misrepresentation related to "Generac's conduct and acts associated with the sale and marketing of the Class Generators." Am. Compl. ¶¶ 314, 325. Central to both claims, the plaintiffs say that Generac represented its generators would be "free from defects" despite knowing that its generators' "major alternator components would suffer from premature degradation and wear, causing the units to exhibit reduced power output and/or result in premature failure to power the consumers' homes, especially during inclement weather, like a hurricane." *Id.* ¶¶ 317, 335. According to the plaintiffs, Generac had a duty to disclose those defects but failed to do so to "induce reliance on the part of Plaintiffs" to purchase the generators. *Id.* ¶ 337. Generac responds that both claims should be dismissed because they are barred by Florida's economic loss rule and independent tort doctrine, lack particularity under Rule 9(b), and because Generac neither owed the plaintiffs a duty to disclose nor do the plaintiffs sufficiently allege their reliance on Generac's representations. *See* MTD at 35–40; Reply at 7–8. Although the latter three arguments have merit, I conclude that Florida's economic loss rule mandates dismissal of these claims.

In Florida, "the economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses."[5] *Tiara Condo. Ass'n v. Marsh & McLennan Cos. Inc.*, 110 So. 3d 399, 401 (Fla. 2013). Economic losses include "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profit—without any claim of personal injury or damage to other property." *Id.* Ultimately, the economic loss rule "prohibit[s] a party from suing in tort for purely economic losses to a product or object provided . . . for consideration, the rationale being that in those cases 'contract principles [are] more appropriate than tort principles for resolving economic loss without an accompanying physical injury or property damage.' " *Id.* at 405 (quoting *Moransais v. Heathman*, 744 So. 2d 973, 980 (Fla. 1999)); *id.* at 401 ("A historical review of the doctrine reveals that it was introduced to address attempts to apply tort remedies to traditional contract law damages.").

---

[5] Under the related but distinct independent tort doctrine, "a plaintiff may not recover in tort for a contract dispute unless the tort is independent of any breach of contract." *Island Travel & Tours, Co. v. MYR Indep., Inc.*, 300 So. 3d 1236, 1239 (Fla. 3d DCA 2020) (per curiam). A plaintiff bringing both a breach of contract and a tort claim must therefore allege, in addition to the breach of contract, "some other conduct amounting to an independent tort." *Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 947 (11th Cir. 2014) (quoting *U.S. Fire Ins. Co. v. ADT Sec. Servs., Inc.*, 134 So. 3d 477, 480 (Fla. 2d DCA 2013)). Outside of the products liability context, the doctrine operates as a "separate hurdle" for tort claims. *Lamm*, 749 F.3d at 947. Because I do not think the plaintiffs' claims avoid the economic loss rule, I need not determine whether they clear any related but "separate hurdle" posed by the independent tort doctrine.

Although the Florida Supreme Court at times "expand[ed] the application of the rule beyond its origins," *Moransais*, 744 So. 2d at 980, it has since squarely returned "the economic loss rule to its origin in products liability,"[6] *Tiara*, 110 So. 3d at 407.

In limiting the economic loss rule to products liability actions, the Florida Supreme Court detailed the rule's historical development and noted several then-continuing exceptions, including "fraudulent inducement, and negligent misrepresentation, or free-standing statutory causes of action." *Id.* at 406. But "the fraudulent inducement and negligent misrepresentation cases to which the court cited were outside of the products liability context," *In re Takata Airbag Prods. Liab. Litig.*, 193 F. Supp. 3d 1324, 1338 (S.D. Fla. 2016), and were highlighted merely to criticize the extension of the rule "beyond [the Court's] original limited intent," *Tiara*, 110 So. 3d at 406. The oft-confused dicta cannot counterbalance the *Tiara* court's retention of the economic loss rule's core, which "protect[s] manufacturers from liability for economic

---

[6] Following the Florida Supreme Court's narrowing of the economic loss rule, there was initial confusion about whether the independent tort doctrine remained good law. *See, e.g.*, *King v. Bencie*, 752 F. App'x 881, 883 (11th Cir. 2018) (per curiam) ("Florida law . . . is still 'somewhat unsettled in this area.' " (quoting *Lamm*, 749 F.3d at 947)). Although I need not apply the doctrine here, I observe that it continues to remain good law. *See Manor House, LLC v. Citizens Prop. Ins. Corp.*, 277 So. 3d 658, 662 (Fla. 5th DCA 2019) (continuing to use independent tort doctrine), *decision quashed on other grounds*, 313 So. 3d 579 (Fla. 2021); *Un2jc Air 1, LLC v. Whittington*, 324 So. 3d 1, 3 (Fla. 4th DCA 2021) (same); *Island Travel & Tours, Co.*, 300 So. 3d at 1239 (Fla. 3d DCA 2020) (same).

damages caused by a defective product beyond those damages provided by warranty law." *Tiara*, 110 So. 3d at 401. Unsurprisingly, then, the plaintiffs "do not cite a single [post-*Tiara*] case applying the negligent misrepresentation exception to the economic loss rule in the products liability context." *Aprigliano*, 979 F. Supp. 2d at 1338.

I therefore agree with other courts in this Circuit that have concluded that the Florida Supreme Court, "by its dicta, [did not] intend[] to abridge the economic loss rule in the products liability setting to allow fraudulent inducement and negligent misrepresentation claims (and by implication fraudulent concealment claims), . . . where the action for fraud depends upon precisely the same allegations as a warranty claim—i.e., a claim the product failed to work as promised." *Takata*, 193 F. Supp. at 1338–39; *Glob. Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1031 (11th Cir. 2017) (explaining that "a fraudulent inducement claim still must be independent of a breach of contract claim," i.e., "the fraud allegations are separate and distinct from defendants' performance under the contract"); *see also Aprigliano*, 979 F. Supp. 2d at 1337–39 (applying rule where the plaintiffs' "cause of action for negligent misrepresentation is dependent on the same fundamental allegations contained in the breach of warranty claim—specifically, that Honda breached the terms of its Warranties by providing Plaintiffs with defective motorcycles"); *Vazquez v. Gen. Motors, LLC*, 2018 WL 447644, at *6 (S.D. Fla. Jan. 16, 2018)

("Fraudulent concealment claims in the products liability sphere that seek to recover only economic damages are clearly barred by Florida's economic loss rule."). Concluding otherwise "would allow the economic loss rule to be manipulated such that any time a purchaser received a defective product that did not cause any injuries or damage to other property, [he] could assert claims for negligent and fraudulent concealment regarding the defect to avoid the economic loss rule." *Burns v. Winnebago Indus., Inc.*, No. 8:13–cv–1427–T–24, 2013 WL 4437246, at *4 (M.D. Fla. Aug. 16, 2013).

Applying the economic loss rule here, I find that the plaintiffs' negligent misrepresentation and fraudulent concealment claims are foreclosed. The plaintiffs allege that they relied on Generac's representations that its generators were "free from defects" and of sufficient "quality and reliability," and that "had Generac disclosed that its Generators did not conform to [those representations], then Plaintiffs . . . would not have purchased the Class Generators." Am. Compl. ¶¶ 322, 340. But the Limited Warranty makes effectively the same claim:[7] Generac "warrants that its Generator and/or transfer switch system will be free from defects in material and workmanship for the items and period [herein]." *See also* Am. Compl. ¶ 293 (Generac

---

[7] Likewise, as the defendants note, the plaintiffs base their descriptive warranty and tort claims on the same set of representations made by Generac. *Compare* Am. Compl. ¶ 292 (identifying alleged descriptive warranties "in paragraphs 230 through 234(a)–(m)"), *with id.* ¶ 332 (identifying the same representations underpinning tort claims).

"expressly warranted that the Class Generators were safe and reliable products designed to generate power and manage electricity for Plaintiffs' and the putative Class Members' homes."). And the Limited Warranty provides a remedy for a breach of that guarantee, i.e., that Generac will "at its discretion, repair or replace any part(s)" it finds to be defective. But the plaintiffs' negligent misrepresentation and "fraudulent concealment claims allege precisely what a breach of warranty claim would allege—namely that the [Generac generators] did not work as promised," and that Generac should be liable for failing to disclose contrary facts. *Takata*, 193 F. Supp. at 1339. In either scenario, the plaintiffs could, at most, recoup damages equal to the loss in their benefit of the bargain.

The plaintiffs' responses are unconvincing. They first suggest that Generac's "pre-sale and post-sale conduct" are independent. Resp. at 28. But even before *Tiara*, Florida courts recognized that even if a representation was precontractual, if "the alleged fraudulent misrepresentation is inseparable from the essence of the parties' agreement, the economic loss rule applies." *Hotels of Key Largo, Inc. v. RHI Hotels, Inc.*, 694 So. 2d 74, 78 (Fla. 3d DCA 1997). The allegedly fraudulent statements here are inextricably bound up with Generac's warranty claim and thus cannot support an independent tort.

Next, the plaintiffs state that their tort claims "do not only assert a depressed economic expectation" but also some unspecified "ongoing harm[s]"

related to "Generac's deceptive practices to induce the purchase of the generators, and the intentional and ongoing concealment of the defect." Resp. at 28. But no matter how the plaintiffs try to qualify or distinguish these harms, they amount to claims for "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property." *Tiara*, 110 So. 3d at 401 (citations omitted). Economic losses, in other words. The plaintiffs do not allege either personal injury or damage to other property. Accordingly, because we remain in the products liability sphere and because Generac's warranty already speaks to the plaintiffs' losses, "contract principles are more appropriate than tort principles for resolving economic loss without an accompanying physical injury or property damage." *Tiara*, 110 So.3d at 405 (citation modified). The plaintiffs' claims for negligent misrepresentation (Count III) and fraudulent concealment (Count IV) are therefore dismissed with prejudice.

### 4. The plaintiffs' negligence claim (Count V) is likewise precluded by the economic loss rule

The economic loss rule proves similarly fatal to the plaintiffs' negligence claim. On this front, the plaintiffs allege that by "producing and selling" defective generators, Generac breached its "duty . . . to exercise reasonable and ordinary care in the formulation, testing, design, manufacture, and marketing

of the Class Generators, either through its own testing or by verifying third-party test results," and to use "ordinary and reasonable care in the design and manufacture of the Class Generators." Am. Compl. ¶ 350–52. But that duty—assuming it exists—appears no different from the duty Generac owed under the Limited Warranty. And the purportedly breaching conduct is nearly identical: Generac "knowingly provid[ed] . . . Class Generators containing a Defect that was never disclosed to Plaintiffs," "fail[ed] to adequately repair the Defect," and "suppl[ied] products and materials that failed to conform to the representations made by Generac." Am. Compl. ¶ 296.

More, the damages flowing from the breaches are the same. Under the warranty, the plaintiffs seek "the revocation of acceptance of the goods and the return to Plaintiffs . . . of the purchase price of all Class Generators . . . and for such other incidental and consequential damages as allowed." Am. Compl. ¶ 299. From Generac's negligence, the plaintiffs claim to "have suffered damages . . . including repair and replacement costs and damages." *Id.* ¶ 356. In other words (again), economic losses. Accordingly, because the plaintiffs' negligence claim alleges precisely what its breach of warranty claim does—that the generators failed to work as promised—Florida's economic loss rule prohibits it. The plaintiffs' negligence claim (Count V) is dismissed with prejudice.

### 5. The plaintiffs insufficiently plead a violation of Florida's Unfair and Deceptive Trade Practices Act

Lastly, the plaintiffs allege that Generac Power's same behavior—misrepresenting "the quality and reliability of [its] standby generators" despite knowing that those generators "possessed defects that would result in reduced generator power output and/or premature failure"—violates FDUTPA. Am. Compl. ¶¶ 365–374. In turn, Generac argues that the plaintiffs fail to state a claim for three reasons. First, Generac says that the economic loss rule and independent tort doctrine bar the claim. MTD at 41. Second, Generac claims that the plaintiffs fail to specifically plead a deceptive or unfair act. *Id.* at 41–42. And third, the plaintiffs cannot seek injunctive relief where they do not intend to purchase generators in the future. *Id.* at 43. The plaintiffs do not respond to Generac's arguments and have therefore abandoned their FDUTPA claim. *See, e.g.*, *See Garrett-Alfred*, 540 F. Supp. 3d at 1137; *cf. Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it . . . ."). In the alternative, I agree that the plaintiffs' allegations lack the specificity to state a claim and that the plaintiffs lack standing for injunctive relief.

FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any

trade or commerce." § 501.204(1), Fla. Stat. To bring a FDUTPA claim, a plaintiff must allege three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *See Stewart Agency, Inc. v. Arrigo Enters., Inc.*, 266 So. 3d 207, 212 (Fla. 4th DCA 2019). An act or practice is "unfair" if it "offends established public policy, is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," *Suris v. Gilmore Liquidating, Inc.*, 651 So. 2d 1282, 1283 (Fla. 3d DCA 1995), and is "deceptive" if it is "likely to mislead consumers," *Davis v. Powertel, Inc.*, 776 So. 2d 971, 974 (Fla. 1st DCA 2000) (quotation omitted). Actual damages consist of "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." *Baptist Hosp., Inc. v. Baker*, 84 So.3d 1200, 1204 (Fla. 1st DCA 2012) (quotation omitted).

Few courts have addressed whether, post-*Tiara*, Florida's economic loss rule bars a FDUTPA claim in the products liability context. So far as I can tell, no Florida court has directly confronted the issue. *But see White v. Ferco Motors Corp.*, 260 So. 3d 388, 391 (Fla. 3d DCA 2018) (implying that the economic loss rule does not apply because "FDUTPA and fraud statutes, in general, exist to protect a purchaser against the seller, even in the instance of signed agreements"). And the federal courts to do so are split on the issue. *Compare Karpel v. Knauf Gips KG*, 635 F. Supp. 3d 1336, 1339 (S.D. Fla. 2022) ("It is in-

45

line with this Court's precedent, then, to now hold that *Tiara* also abrogated any exception to the economic loss rule for 'free-standing statutory causes of action[,]' including FDUTPA, in the products liability context." (quoting *Tiara*, 110 So. 3d at 406)), *with McCabe v. Ford Motor Co.*, 774 F. Supp. 3d 349, 385 (D. Mass. 2025) ("In sum, Florida courts have consistently held that statutory causes of action are not limited by the economic loss rule, and *Tiara*'s restriction and reaffirmation of the economic-loss rule's application to tort claims does not abrogate that principle." (citation modified)). While I agree with both *Karpel* and *McCabe* to the extent each acknowledges that Florida courts historically differentiated between torts and statutory causes of action, I need not weigh in on the debate for three reasons. First, the plaintiffs do not contest Generac's arguments. Second, the plaintiffs independently fail to plead a FDUTPA claim with the specificity required under Federal Rule 9(b), even after being alerted to these deficiencies in Generac's first motion to dismiss. *See* (Doc. 21) at 33–34; *see also, e.g.*, *Cardenas v. Bank of Am., N.A.*, No. 8:17-CV-2629-T-33AEP, 2018 WL 2215230, at *4 (M.D. Fla. May 15, 2018) (dismissing claim with prejudice after multiple unsuccessful attempts to comply with Rule 9(b)). Third, the plaintiffs do not allege that a consumer would reasonably rely on Generac's statements outside the Limited Warranty.

Although courts in this District are split on whether a FDUTPA claim must always meet Federal Rule of Civil Procedure 9(b)'s heightened pleading

standard, "FDUTPA claims that sound in fraud must comply with Rule 9(b)." *Pop v. LuliFama.com LLC*, 145 F.4th 1285, 1293 (11th Cir. 2025). The plaintiffs' FDUTPA claim directly alleges fraudulent concealment and misrepresentation of known defects, triggering Rule 9(b) and its aim to place the defendants on notice of the alleged conduct or statements. *See id.* at 1293–94. To that end, Rule 9(b) requires a complaint to state (1) precisely what statements or omissions were made in which documents; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud. *See Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1216 (11th Cir. 2020).

The plaintiffs fail to satisfy these four categories.[8] To be sure, the plaintiffs identify several statements that they attribute collectively to Generac Holdings and Generac Power.[9] For example, the plaintiffs allege that the defendants described themselves on their website as "the largest and most

---

[8] To the extent that the plaintiffs maintain that affirmative fraudulent misrepresentation survives as an exception to the economic loss rule, the pleading deficiencies here are equally fatal to the plaintiffs' claim in Count IV. *See Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008) (applying Rule 9(b) standard to fraud claim).

[9] At least one purportedly deceptive statement was made by GenerX, an authorized Generac retailer and nonparty in this matter. *See* Am. Compl. ¶ 230 n.7. But the plaintiffs do not plausibly allege that Generac directed those statements.

reliable source for home, business, and recreational backup generators," indicated in a marketing brochure that their products were "capable of handling the rigors of generator use, resulting in power that's more reliable and requires less routine maintenance than any competitive engine," and represented in its promotional materials that their generators used "tough, durable, corrosion-resistant aluminum enclosures perfect for all weather conditions." Am. Compl. ¶¶ 230–236. Although the plaintiffs allege that "Generac made these representations . . . before purchase and at the time of purchase," Am. Compl. ¶ 236, the plaintiffs do not specifically allege when either Generac defendant uttered any specific statement, when or where any specific plaintiff read the statements, or how each specific statement was demonstrably false or misleading. These deficiencies are fatal. Without allegations as to which plaintiffs viewed which statements, or when, the complaint fails to sufficiently allege the causation necessary for a FDUTPA claim. *See, e.g., Thomas v. Generac Power Sys. Inc.*, No. 4:18-CV-495-RH/MJF, 2020 WL 9602345, at *5 (N.D. Fla. Dec. 28, 2020) (explaining that FDUTPA's causation element requires a plaintiff to allege that the "deceptive act or unfair practice was likely to cause injury to a reasonably relying consumer" and "that

the type of harm he suffered was reasonably foreseeable to result from the defendant's deceptive act or unfair practice" (citation omitted)).[10]

Alternatively, assuming that the plaintiffs preserved their claim and satisfied Rule 9(b)'s standard, the plaintiffs' claim still fails for two additional reasons. First, the bulk of the allegedly false and misleading statements constitute nonactionable puffery under FDUTPA. *See supra*, at Section III.C(1)(ii); *see also Fineman v. Ferragamo USA Inc.*, 672 F. Supp. 3d 1302, 1312 (S.D. Fla. 2023) ("[T]he alleged misrepresentations at issue are nothing more than mere puffery and therefore cannot form the basis of a FDUTPA claim."), *appeal dismissed*, No. 23-11987-A, 2023 WL 5939033 (11th Cir. July 19, 2023). Second, the plaintiffs fail to allege that a reasonable consumer would have relied on Generac's allegedly deceptive statements because "a consumer does not act reasonably in relying on express misrepresentations that are disclaimed by a contract." *Medmoun v. Home Depot U.S.A., Inc.*, No. 8:21-CV-1585-KKM-CPT, 2022 WL 1443919, at *5 (M.D. Fla. May 7, 2022) (citing *TRG*

---

[10] Although the Eleventh Circuit has advised that a plaintiff need not allege reliance on an allegedly false statement to state a claim under FDUTPA, a plaintiff must still allege that an objective, reasonable person would have been deceived and relied on the statement. *See Fitzpatrick v. General Mills, Inc.*, 635 F.3d 1279, 1283 (11th Cir. 2011). The plaintiffs are therefore not absolved from pleading causation and must still allege when the defendants made the allegedly misleading statements such that the Court can assess whether similar consumers were in fact deceived. *Cf. Nelson v. Mead Johnson Nutrition Co.*, 270 F.R.D. 689, 692 n.2 (S.D. Fla. 2010) (recognizing that "a deceptive practice can cause a consumer damages even if the consumer does not rely on the deceptive practice when purchasing a particular product," such as where the seller is able to charge a higher price).

*Night Hawk Ltd. v. Registry Dev. Corp.*, 17 So. 3d 782, 784 (Fla. 2d DCA 2009)). The same goes for Generac's alleged omissions. *See id.* ("It follows then that a consumer could not act reasonably by relying on omissions where the omitted representation is expressly disclaimed by the contract."). The Limited Warranty here expressly disclaims all other express or implied warranties, including the marketing representations (and omissions) that the plaintiffs contend violate FDUTPA.

All that remains, then, is Generac's representations in the Limited Warranty itself. But insofar as the plaintiffs attack that language as deceptive, they run headlong into the economic loss rule and independent tort doctrine. At bottom, "a claim under FDUTPA does not arise merely from an alleged breach of warranty or a breach of contract claim." *Sweeney v. Kimberly-Clark Corp.*, No. 8:14-CV-3201-T-17EAJ, 2015 WL 5446797, at *7 (M.D. Fla. Sept. 15, 2015) (citation modified); *see also Hache v. Damon Corp.*, No. 8:07-cv-1248-T-30EAJ, 2008 WL 912434, at *2 (M.D. Fla. Apr. 1, 2008) ("[T]he Florida Supreme Court [has] cautioned that a breach of contract claim without significant allegations of unfair or deceptive conduct is insufficient to state a cause of action under FDUTPA."). The plaintiffs' claim for a violation of FDUTPA is therefore dismissed with prejudice, and I need not fully address

Generac's outstanding argument that plaintiffs' FDUTPA claim improperly seeks injunctive relief.[11]

## IV.   CONCLUSION

In this putative class action, the plaintiffs bring multi-state claims against Generac Holdings and Generac Power, alleging that the defendants misrepresented the quality and reliability of their generators despite being aware of fatal defects in certain models. After review, I conclude that this Court lacks personal jurisdiction over nonresident Defendant Generac Holdings and over all state-law claims brought by non-Florida named plaintiffs. Additionally, I find that the plaintiffs' tort claims are barred by Florida's economic loss rule and that their FDUTPA claim is insufficiently pleaded and otherwise fails to state a claim. Accordingly, the following is **ORDERED**:

1.  The defendants' request for oral argument is **DENIED**.

2.  The defendants' Motion to Dismiss (Doc. 34) is **GRANTED in part and DENIED in part.**

3.  The plaintiffs' claims for Breach of Implied Warranty (Count II), Negligent Misrepresentation (Count III), Fraudulent Concealment

---

[11] Were the plaintiffs' FDUTPA claim otherwise well-pleaded, I would conclude that the plaintiffs do not have standing for injunctive relief absent allegations that they intend to purchase Generac's generators in the future. *See, e.g.*, *Ohio State Troopers Ass'n, Inc. v. Point Blank Enters., Inc.*, 347 F. Supp. 3d 1207, 1228 (S.D. Fla. 2018) (collecting cases holding that plaintiffs lacked standing for FDUTPA injunctive relief where they did not allege an intent to purchase the product again).

and/or Misrepresentation (Count IV), Negligence (Count V), and Violation of the Florida Deceptive and Unfair Trade Practices Act (Count VI) are **DISMISSED with prejudice.** The plaintiffs' claims for Violation of the Kansas Consumer Protection Act (Count VII), Violation of the Louisiana Consumer Protection Act (Count VIII), and Violation of the North Carolina Unfair and Deceptive Practices Act (Count IX) are **DISMISSED without prejudice.**

4. This matter will proceed only on Count I (Breach of Express Warranty), only for the named Florida plaintiffs listed in paragraphs 18–56 of the Amended Complaint, only as to the 22kW and 24kW standby generator models, and only against Defendant Generac Power Systems, Inc. The Clerk is directed to **TERMINATE** Defendant Generac Holdings, Inc. from this action.

5. The plaintiffs' Motion for Reconsideration of the Order Staying Discovery (Doc. 60) is **DENIED as moot.** The parties are directed to file an amended Case Management Report no later than January 9, 2025.

**ORDERED** in Tampa, Florida, on December 29, 2025.

Kathryn Kimball Mizelle
United States District Judge