**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**


JAMES W. DAWSON JR., and
EDMOND C. HILL, JR., individually and
on behalf of all others similarly situated,

     Plaintiffs,

v.                                                                Case No. 8:24-cv-2412-KKM-LSG

GENERAC POWER SYSTEMS, INC.,

     Defendant.

_____

## <u>ORDER</u>

Plaintiffs filed this putative class action against Generac Power Systems, Inc., alleging that Generac marketed and sold defective generators. Am. Compl. (Doc. 27). Among other things, the plaintiffs asserted claims for breach of express warranty, negligent misrepresentation, fraudulent concealment, and violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA). *Id.* ¶¶ 287–390. I dismissed all claims except the plaintiffs' claim for breach of Generac's express warranty. *See* Order (Doc. 62). Plaintiffs move for reconsideration of that order. Mot. (Doc. 73). Generac responds that the plaintiffs should be sanctioned for filing a "groundless" motion. Resp. (Doc. 76). For the following reasons, I deny the plaintiffs' motion for reconsideration but find that sanctions are unwarranted.

## I.    BACKGROUND

As detailed in my previous order, Generac manufactures and sells residential generators throughout the United States. *See* Am. Compl. ¶¶ 2, 11, 68. Generac warrants that each "Generator and/or transfer switch system will be free from defects in material and workmanship" for up to five years, and that "Generac will, at its discretion, repair or replace any part(s) which . . . is found to be defective." Limited Warranty (Doc. 27-1). The Limited Warranty "supersedes all other warranties, express or implied" and explains that "Generac makes no other warranties as to the merchantability or fitness for a particular purpose." *Id.* (citation modified).

Plaintiffs purchased 22kW and 24kW Generac generators between 2021 and 2024. *See, e.g.*, Am. Compl. ¶¶ 82–197. They allegedly "relied on . . . information regarding the quality, reliability, and functionality of the Class Generators conveyed in Generac's [and its authorized retailer's] marketing materials and advertisements in deciding to purchase their standby generators." *Id.* ¶ 227. The plaintiffs allege that Generac's generators "contain a latent defect which accelerates the wear and deterioration of critical parts associated with the alternator, including the slip rings and carbon brushes, and creates increased friction and resistance between components." *Id.* ¶ 4. That defect "causes the Class Generators to malfunction and/or stop powering consumers' homes during an outage." *Id.* ¶ 5. The plaintiffs brought claims

2

against Generac[1] for breach of express warranty, breach of implied warranty, negligent misrepresentation, fraudulent concealment, negligence, and violation of FDUTPA. *Id.* ¶¶ 287–390.

Generac moved to dismiss the plaintiffs' complaint, MTD (Doc. 34), and I granted the motion in part on December 29, 2025, *see* Order. I concluded that the claims for negligent misrepresentation, fraudulent concealment, and negligence were barred by Florida's economic loss doctrine, which "prohibit[s] a party from suing in tort for purely economic losses to a product." *Id.* at 37 (quoting *Tiara Condo. Ass'n v. Marsh & McLennan Cos. Inc.*, 110 So. 3d 399, 401 (Fla. 2013)). I also determined that the plaintiffs abandoned their FDUTPA claim, which also failed to state a claim or satisfy Rule 9(b)'s pleading requirements. *See id.* at 44–51. Since the partial dismissal, the plaintiffs have conducted discovery on the remaining breach of warranty claim. *See* (Doc. 76-1). In fact, in January 2026, the plaintiffs acknowledged that "discovery is now both narrow and targeted, focusing exclusively on: (1) Generac's express warranty obligations, (2) Generac's knowledge of defects affecting its 22kW and 24kW generators, and (3) Generac's warranty performance, repair practices, and failure to cure as to Florida purchasers." *Id.* at 3.

---

[1] I dismissed codefendant Generac Holdings, Inc., for lack of personal jurisdiction. *See* Order at 14–21.

Nearly two months later, on March 11, 2026, the plaintiffs filed a motion to reconsider the partial dismissal order under Rule 54(b). *See* Mot. Generac opposes reconsideration as "belated and baseless," requesting that sanctions be imposed. The plaintiffs respond that their motion "was not objectively unreasonable or tantamount to bad faith." Reply (Doc. 78) at 8.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 54(b) provides that "any order or other decision . . . that adjudicates fewer than all the claims . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." District courts should evaluate motions to reconsider non-final orders "under the standards inherent in Rule 54(b)—plenary authority 'to reconsider, revise, alter or amend' a non-final order before the entry of final judgment." *Hornady v. Outokumpu Stainless USA, LLC*, 118 F.4th 1367, 1379–80 (11th Cir. 2024) (quoting *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1315 (11th Cir. 2000)).

"Though district courts enjoy plenary *power* to reconsider non-final rulings, they need not employ plenary *review* when doing so. Indeed, in most instances district courts should hesitate before revisiting their earlier interlocutory orders; important interests of finality, stability, and predictability underly that justifiable caution." *Id.* at 1380. Applying the law-of-the-case doctrine, "district courts should gently keep in mind the general

4

point that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.' " *Id.* (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)). Thus, "a district court typically would not abuse its discretion when rejecting a motion to reconsider an interlocutory order if the movant simply rehashed arguments already considered and rejected." *Id.* at 1381. Accordingly, "the more time that has passed between a district court's ruling and a party's motion to reconsider that ruling, the less willing the court ought to be to entertain the party's request." *Id.*

That said, "[i]f the movant is able to meet a significantly higher showing for reconsideration—for example, the standards applicable to Rules 59(e) or 60(b) . . . the district court should not hesitate to revisit its prior ruling." *Id.* Under those standards, reconsideration is proper only where: (1) there is an intervening change in controlling law, (2) new evidence has become available, or (3) relief from the judgment is necessary to correct clear error or prevent manifest injustice. *See Sussman v. Salem, Saxon & Nielsen, P.A.*, 153 F.R.D. 689, 694 (M.D. Fla. 1994).

## III.  ANALYSIS

The plaintiffs move for reconsideration of dismissal of their claims for negligent misrepresentation, fraudulent concealment, and violation of FDUTPA. *See* Mot. In addition to responding to each point on its own terms,

Generac also claims that the motion—filed nearly three months after the dismissal order—is untimely and warrants sanctions. *See* Resp. at 11.

At the outset, I agree with Generac that the interests of "finality, stability, and predictability" are not on the plaintiffs' side here. *See Hornady*, 118 F.4th at 1380. Ordinarily, "the more time that has passed between a district court's ruling and a party's motion to reconsider that ruling, the less willing the court ought to be to entertain the party's request." *Id.* at 1381. I dismissed the counts at issue in December 2025. Despite representing to Generac in January 2026 that "discovery is now both narrow and targeted" on the breach of warranty claim, (Doc. 76-1) at 3, the plaintiffs waited nearly ten weeks from dismissal to file the present motion, *see* Mot. And the motion raises purely legal issues based on then-existing caselaw. The plaintiffs present no new facts or law in support of their position. The progress of this case, specifically the "narrow and targeted discovery," weighs against reconsideration. Regardless, the plaintiffs fail to persuade that the dismissal of any count was erroneous.

### A. Dismissal of the Negligent Misrepresentation and Fraudulent Concealment Claims

The plaintiffs contend that I improperly concluded that Florida's economic loss rule barred their negligent misrepresentation and fraudulent concealment claims, arguing that "[e]ven where economic loss principles are

implicated, courts must still determine whether the complaint alleges tortious conduct that is independent of any contractual breach." Mot. at 7. According to the plaintiffs, their complaint alleges "pre-purchase inducement conduct directed at influencing the consumer's purchase decision before any warranty relationship arose," and thus requires "analysis under the independent tort doctrine." *Id.* at 8. As before, I disagree with the plaintiffs' assessment of the two Florida doctrines and the relevant factual allegations.

To begin, it remains uncontested that the plaintiffs seek to recover only economic losses related to the allegedly defective generators. *See, e.g.*, Am. Compl. ¶ 15 ("[T]he Defect substantially decreases the value of the Class Generators and renders them virtually useless."). Within this "products liability context," Florida's economic loss rule "protect[s] manufacturers from liability for economic damages caused by a defective product *beyond* those damages provided by warranty law." *Tiara*, 110 So. 3d at 401, 403 (emphasis added). That includes claims for damages from "pre-purchase inducement," Mot. at 8, where the alleged misrepresentation or concealment is premised on the same allegations as a warranty claim, *see, e.g.*, *In re Takata Airbag Prods. Liab. Litig.*, 193 F. Supp. 3d 1324, 1338–39 (S.D. Fla. 2016) (concluding "that Florida's Supreme Court did not intend to allow such products liability claims to survive"); *Stanley v. Nissan N. Am., Inc.*, 719 F. Supp. 3d 786, 805 (M.D. Tenn. 2024) ("In the face of products liability actions seeking economic losses

only, federal district courts have consistently and repeatedly construed the holding in *Tiara* as barring fraudulent concealment/fraudulent omission claims under Florida common law.") (collecting cases).

To the extent that Florida courts historically recognized exceptions to the economic loss rule for negligent misrepresentation and fraudulent concealment, such exceptions "developed against the backdrop of the contractual privity economic loss rule," not the products liability context. *See Aprigliano v. Am. Honda Motor Co.*, 979 F. Supp. 2d 1331, 1338 (S.D. Fla. 2013). Those contractual privity cases implicate the independent tort doctrine. As I explained before, the doctrine is "related but distinct" and represents a "separate hurdle" for tort claims in contractual privity cases *outside* of the pure products liability context. *See* Order at 37 n.5 (quoting *Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 947 (11th Cir. 2014)). In that subset of cases, the tort must be independent from the contractual breach. *See Prewitt Enters., LLC v. Tommy Constantine Racing, LLC*, 185 So. 3d 566, 569 (Fla. 4th DCA 2016) (citing *Tiara*, 110 So. 3d at 409 (Pariente, J., concurring)).

Nonetheless, many of the post-*Tiara* cases applying the economic loss rule to bar "pre-purchase inducement" claims made alongside warranty claims continue to import a threshold independence requirement. *See, e.g.*, *Takata*, 193 F. Supp. at 1338–39 (finding fraudulent inducement and negligent misrepresentation claims barred "where the action for fraud depends upon

precisely the same allegations as a warranty claim—i.e., a claim the product failed to work as promised"); *In re Atlas Roofing Corp. Chalet Shingle Prods. Liab. Litig.*, No. 1:13-MD-2495-TWT, 2015 WL 3796456, at *3 (N.D. Ga. June 18, 2015) (dismissing fraudulent concealment and negligent misrepresentation claims where "the relevant representations . . . are certainly related to the Defendant's obligation under the contract: to provide Shingles that meet the stated standard of quality"); *but see* V*azquez v. Gen. Motors, LLC*, No. 17-22209-CIV, 2018 WL 447644, at *6 (S.D. Fla. Jan. 16, 2018) (finding, without limitation, that "[f]raudulent concealment claims in the products liability sphere that seek to recover only economic damages are clearly barred by Florida's economic loss rule"). And in discussing economic loss in the context of the negotiated purchase of a yacht, the Eleventh Circuit opined that "a fraudulent inducement claim still must be independent of a breach of contract claim." *Glob. Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1031 (11th Cir. 2017).

Despite the plaintiffs' insinuation otherwise, the dismissal order recognized this purported limitation and considered whether the plaintiffs' tort claims were independent of the warranty claim. In applying this qualified version of the economic loss rule, I concluded that Generac's Limited Warranty "ma[de] effectively the same claim" as the statements or omissions underpinning the plaintiffs' negligent misrepresentation and fraudulent

9

concealment claims: "that [Generac's] Generator . . . will be free from defects in material and workmanship." Order at 40 (quoting (Doc 27-1)). And I addressed the plaintiffs' argument—which is identical to that raised here— that Generac's "pre-sale and post-sale conduct" were independent. *Compare* Order at 41, with Mot. at 12. As the plaintiffs' principal authority remarks, "simply because one pleads a fraudulent inducement claim alleging pre-contract misrepresentations does not absolve the pleader from satisfying the independent tort doctrine." *Inspirations Nevada LLC v. Med Pro Billing, Inc.*, No. 20-CV-60268, 2021 WL 2156677, at *6 (S.D. Fla. May 26, 2021) (rejecting such claims where they are "inseparably embodied in the parties' subsequent agreement"). Ultimately, the order conducted the "separate analysis" that the plaintiffs claim was missing, concluding that "[t]he allegedly fraudulent statements here are inextricably bound up with [the] warranty claim and thus cannot support an independent tort." Order at 41. The plaintiffs' belated attempt to "rehash[] arguments already considered and rejected" is denied. *Hornady*, 118 F.4th at 1381.

### B. Dismissal of the FDUTPA Claim

Next, the plaintiffs request reconsideration of the dismissal of their FDUTPA claim. The plaintiffs object to all three bases for dismissal: that they abandoned the claim, failed to satisfy Rule 9(b), and failed to plead that a reasonable consumer would have been deceived by Generac's statements. *See*

10

Order at 44–51. Each objection rehashes points already considered and rejected.

To start, although I agree that the plaintiffs were not required to "mirror[]" Generac's headings in responding to the motion to dismiss, the plaintiffs are mistaken that they "addressed the substance of the dispute" as to Generac's FDUTPA-specific arguments. Mot. at 13–14. Generac moved to dismiss the plaintiffs' FDUTPA count for failure to allege an unfair or deceptive trade practice and for seeking unrecoverable relief. *See* MTD (Doc. 34) at 41–43. Generac also argued the economic loss rule and independent tort doctrine barred the FDUTPA claim. *See id.*

The plaintiffs now contend that they preserved their FDUTPA claim by asserting that "Generac's alleged conduct involved . . . unfair or deceptive conduct independent of post-sale warranty performance." Mot. at 13. But that misconstrues Generac's primary contention. Generac invoked Rule 9(b) and argued that the plaintiffs did not "identify a single actionable misrepresentation or omission with particularity," and further "fail[ed] to allege how they reasonably relied on it." MTD at 42. The plaintiffs' motion to reconsider identifies no portions of their response brief addressing these claims by Generac. Instead, the plaintiffs (strangely) cite to portions of their response brief focused on the implied and express warranty claims. *See* Mot. at 13 (citing (Doc. 35) at 17–24)). And the plaintiffs' response mentioned FDUTPA only once

11

in an unrelated section of their brief. By failing to respond to Generac's arguments, the plaintiffs abandoned their FDUTPA claim. *See, e.g.*, *Figas v. Princess Cruise Lines, Ltd.*, No. 25-23279-CIV, 2025 WL 2694802, at *3 (S.D. Fla. Sept. 22, 2025) ("The Eleventh Circuit has made clear that failure by a plaintiff to respond to a motion to dismiss argument constitutes an abandonment of that claim.") (citation modified).

In any event, even had the plaintiffs preserved their arguments, I rejected them. As an alternative basis for dismissal, I concluded that the plaintiffs failed to plead with particularity under Rule 9(b), that Generac's allegedly misleading statements were nonactionable puffery, and lastly that the plaintiffs' "fail[ed] to allege that a reasonable consumer would have relied on Generac's allegedly deceptive statements because 'a consumer does not act reasonably in relying on express misrepresentations that are disclaimed by a contract.' "[2] Order at 46–50 (quoting *Medmoun v. Home Depot U.S.A., Inc.*, No. 8:21-CV-1585-KKM-CPT, 2022 WL 1443919, at *5 (M.D. Fla. May 7, 2022)); *see* Limited Warranty ("This warranty supersedes all other warranties, express or implied. Specifically, Generac makes no other warranties as to the

---

[2] Contrary to the plaintiffs' newly asserted position, the order did not conclude that the Limited Warranty barred their FDUTPA claim as a matter of law. Rather, the warranty's disclaimer language prevented earlier statements of puffery from misleading a "consumer acting reasonably in the circumstances," as required to state a FDUTPA claim. *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007) (quoting *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So.2d 773, 777 (Fla. 2003)).

merchantability or fitness for a particular purpose."). The plaintiffs fail to persuade that the above conclusions warrant reconsideration, especially months after their FDUTPA claim was dismissed. Accordingly, I decline to reconsider the plaintiffs' belated attempt to revive their FDUTPA claim.

### C. Sanctions

Finally, Generac argues that the plaintiffs should be sanctioned for filing a "baseless" reconsideration motion for a second time in this litigation. *See* Resp. at 19. I disagree.

To obtain sanctions under 28 U.S.C. § 1927, a party must demonstrate that (1) the opposing attorney engaged in unreasonable and vexatious conduct; (2) the conduct multiplied the proceedings; and (3) the dollar amount of the sanction bears a nexus to the excess proceedings. *See Peterson v. BMI Refractories*, 124 F.3d 1386, 1395–96 (11th Cir. 1997). An attorney multiplies the proceedings "unreasonably and vexatiously" when he engages in conduct "so egregious that it is tantamount to bad faith." *Spolter v. SunTrust Bank*, 403 F. App'x 387, 390 (11th Cir. 2010) (per curiam) (citation modified); *see Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998) ("The key to unlocking a court's inherent power [to sanction] is a finding of bad faith."). Although the plaintiffs failed to diligently move for reconsideration, their approximately ten-week delay is insufficient to find bad faith. Likewise, the arguments raised in the motion reflect reasonable disagreements with this Court's order.

## IV.    CONCLUSION

Accordingly, the following is **ORDERED**:

1.  Plaintiffs' Motion for Reconsideration (Doc. 73) is **DENIED.**

2.  Defendant's Motion for Sanctions (Doc. 76) is **DENIED.**

**ORDERED** in Tampa, Florida, on May 11, 2026.


Kathryn Kimball Mizelle
United States District Judge