**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

JAMES W. DAWSON, JR., and
EDMOND C. HILL, JR., individually and
on behalf of all others similarly situated,

Plaintiffs,

v. Case No. 8:24-cv-2412-KKM-LSG

GENERAC POWER SYSTEMS, INC.,

Defendant.

___________________________________

# ORDER

Class actions depart from ordinary individualized litigation and demand "greater procedural protections." *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011). The plaintiffs move to certify under Federal Rule of Civil Procedure 23(b)(3) a class of Floridian generator owners and aggregate express warranty claims for faulty generators against Generac Power Systems, Inc. Mot. (Doc. 109) at 1. In support of the motion, the plaintiffs produce a report by a putative expert, Elliot Stern. Report (Doc. 109-1). Generac opposes certification, Resp. (Doc. 111), and moves to exclude Stern's report, Mot. to Exclude (Doc. 112). The plaintiffs counter only as to certification. Reply (Doc. 115). After careful consideration, I deny the motion for class certification

because the class fails to establish predominance and superiority, and I deny as moot the motion to exclude Stern's report.

## I. BACKGROUND

Generac[1] sells home generators throughout the United States. Am. Compl. (Doc. 27) ¶¶ 2, 11, 68, 71. Generac's product line includes 22kW and 24kW standby generators. Answer (Doc. 64) ¶ 1. Along with each new 22kW and 24kW generator, Generac provides a written warranty. Resp. at 3; Five-Year Warranty (Doc. 109-15); Five-Year Wi-Fi Warranty (Doc. 111-40); Ten-Year Warranty (Doc. 111-41). Every Generac warranty guarantees that the generator "will be free from defects in material and workmanship" within the warranty period. *See, e.g.*, Five-Year Warranty. If a covered defect arises, Generac promises that, "at its discretion, [Generac will] repair or replace any part(s) which, upon evaluation, inspection and testing by Generac or an Independent Authorized Service Dealer, [are] found to be defective." *See, e.g.*, *id.* For the warranty to cover a defect, the generator must be activated, registered with proof of purchase, and kept with required maintenance. *See, e.g.*, *id.* If an owner violates the warranty's terms, coverage disappears. *See, e.g.*, *id.*

[1] In resolving the motion to dismiss, I resolved all the claims against the codefendant, Generac Holdings. *See* Order (Doc. 62) at 14. All references to Generac in this order concern Generac Power Systems, Inc.

During hurricanes in 2022, 2023, and 2024, Generac 22kW and 24kW standby generators allegedly failed. *See* Mot. at 2. The plaintiffs claim that the generators that they purchased "contain an underlying defect which causes the units to suddenly stop working during a power outage caused by a hurricane or inclement weather." *Id.* at 4; Am. Compl. ¶ 14. At bottom, the plaintiffs claim that the generators fail to produce sufficient electricity during heavy rain because storms produce "wet air" that each generator pulls into the alternator and, once inside, the moisture causes the alternator's components to rapidly deteriorate and short out the generator. *See* Mot. at 5–7; Report at 7–9.

Aside from anecdotes, *see* Mot. at 8; *see, e.g.*, Dawson Decl. (Doc. 109-7) at ¶¶ 9, 15, the plaintiffs allege that a "Log of Mechanical Parts and Engine Maintenance Records" shows that over 1,200 different generator owners experienced this exact mechanical issue: a 1902 error code failure, Mot. at 9 (citing Ex. E (Doc. 109-5)). Generac responds that a 1902 error code means that a generator "shut down due to undervoltage," and not that any specific event caused the failure. Resp. at 18. Rather than file the Excel log with the motion for class certification, the plaintiffs offer that it "cannot be filed" at this time. *See* Ex. E.

In the plaintiffs' view, these facts and allegations are sufficient to certify the class. *See* Mot. at 11. To the plaintiffs, Rule 23 is satisfied because I must accept their "substantive allegations" as true and may not consider "the merits"

when evaluating a certification motion. *Id.* at 14. And based on their allegations, the plaintiffs seek to certify a class of "[a]ll Florida residents who purchased a Generac home standby generator, models 22KW and 24KW, between 2020–2024, designed with a rear airflow vent that failed to provide power during a hurricane or rain event." *Id.* at 1. For its part, Generac claims that certification must be denied because individualized issues remain as to breach, notice, and damages as demonstrated by the varied answers the plaintiffs gave during their respective depositions concerning these three elements. *See* Resp. at 16–20; Warranty Preconditions Chart (Doc 111-2); Post-Repair Generator Condition Chart (Doc. 111-3); Damages Chart (Doc 111-4); Warranty Disclaimer Chart (Doc. 111-5).

## II. LEGAL STANDARDS

"[C]lass actions are an exception to our constitutional tradition of individual litigation"; therefore, "the presumption is against class certification." *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1233 (11th Cir. 2016) (citing *Comcast Corp. v. Behrend,* 569 U.S. 27, 33 (2013) and *Hansberry v. Lee,* 311 U.S. 32, 40–41 (1940)). To overcome that presumption, the party seeking certification "must affirmatively demonstrate [ ] compliance with Rule 23 by proving"—and not just alleging—"that [Rule 23's] requirements are *in fact* satisfied." *Id.* at 1243 (quoting *Comcast Corp.,* 569 U.S. at 33) (internal quotation marks omitted). Only after "rigorous[ly]

analy[zing]" if the movant meets the burden as to each Rule 23 requirement, which often "overlap[s] with the merits of the [] underlying claim," may I certify a class. *Id.* (citation omitted).

To certify, the movant must first prove that the class is "adequately defined and clearly ascertainable." *See Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302 (11th Cir. 2021) (citation omitted). The movant must then satisfy the explicit hurdles in Rule 23. *See Heaven v. Tr. Co. Bank*, 118 F.3d 735, 737 (11th Cir. 1997). Specifically, the movant must show "Rule 23(a)'s four familiar prerequisites—numerosity, commonality, typicality, and adequacy." *See Tershakovec v. Ford Motor Co., Inc.*, 79 F.4th 1299, 1306 (11th Cir. 2023) (citation modified). Finally, the movant must prove that the proposed class fits within a Rule 23(b) category. *Id.* And for a class that seeks "individualized monetary" relief, both "predominance" and "superiority" under Rule 23(b)(3) must exist. *See Wal-Mart*, 564 U.S. at 362.

## III. ANALYSIS

To start, I conclude that the class is properly defined, as explained below. But I decline to certify this proposed class because individualized questions about warranty breach, notice, and damages overwhelm the common ones, and these individualized issues require miniature trials to resolve each putative class member's claim. *See* FED. R. CIV. P. 23(b)(3).

**A. The Class is Adequately Defined and Ascertainable**

I first address an antecedent question: whether this proposed class definition bears objective and clear criteria. *See Cherry*, 986 F.3d at 1302 ("A class is inadequately defined if it is defined through vague or subjective criteria."). That step arises first because, without fixing the class's metes, I cannot "evaluate whether [the] proposed class satisfies" Rule 23. *Id.*; *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012) (citations omitted). When a class definition permits a "certain" "determin[ation]" of class "membership," the class is ascertainable. *See Cherry*, 986 F.3d at 1303 (citation omitted).

This class definition—"[a]ll Florida residents who purchased a Generac home standby generator, models 22KW and 24KW, between 2020–2024, designed with a rear airflow vent that failed to provide power during a hurricane or rain event"—readily passes the definitional requirements. *See* Mot. at 1. The definition provides clear checkpoints, like residence, generator purchase, timeframe, generator design, and generator failure following a weather event. *Id.* All are "capable of determination." *Cherry*, 986 F.3d at 1303.

Generac, though, contends that the "countless" investigations needed to verify each requirement "preclude[] certification." Resp. at 9. But mere inconvenience in assessing if a class member fits within a class definition imposes no roadblock to certification. *Cherry*, 986 F.3d at 1303 ("Proof of

administrative feasibility cannot be a precondition for certification."). As the Eleventh Circuit has explained, "administrative difficulties . . . do not alone doom" ascertainability. *See id.* at 1304. Even when the class, as defined, is "[in]capable of *convenient* determination," if it is "capable of determination," that suffices. *Id.* at 1303. And here, all the class criteria are knowable, even if assessment as to each member would take work; Generac's concerns are best channeled to Rule 23(b)(3)'s superiority analysis. *See id.* at 1303–04. With this class definition, I turn to Rule 23.

**B. Predominance and Superiority are Lacking**

The plaintiffs seek certification under Rule 23(b)(3). Mot. at 1. Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). The plaintiffs argue that questions about the defect in 22kW and 24kW generators rest at the heart of the plaintiffs' claims, are common, and that class resolution provides the best path forward. Mot. at 20–21. Generac responds that individualized questions overshadow the few common issues and that plaintiff-by-plaintiff factfinding will sap any benefit to class resolution. *See* Resp. at 16–20. For the reasons

explained below, I agree with Generac that the plaintiffs establish neither predominance nor superiority under Rule 23(b)(3).[2]

### 1. Predominance

Predominance necessitates a "demanding" inquiry. *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1270 (11th Cir. 2009) (citation omitted); *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) ("[The predominance inquiry] calls upon courts to give careful scrutiny to the relation between common and individual questions in a case."). It requires more than just allegations of a common question or two, *see* FED. R. CIV. P. 23(a)(2); *Brown*, 817 F.3d 1233–34; instead, the plaintiffs must demonstrate that all the "evidence necessary to prove the class claims [does not] vary significantly from one plaintiff to another," *see Tershakovec*, 79 F.4th at 1306; *Brown*, 817 F.3d at 1235 (quoting *Vega,* 564 F.3d at 1270). In other words, I must assess whether the plaintiffs proved—and not merely pleaded—that a proposed class is qualitatively cohesive. *See Brown*, 817 F.3d at 1239.

"The first step in assessing predominance is to 'identify the parties' claims . . . and their elements' and to categorize 'these issues as common

[2] Because I conclude that the plaintiffs failed to satisfy Rule 23(b)(3), I need not decide whether Rule 23(a)'s prerequisites are met here. *See Luna v. Del Monte Fresh Produce (Se.), Inc.*, 354 F. App'x 422, 425 (11th Cir. 2009) ("Because the district court acted within its discretion in finding that the requirements of Rule 23(b)(3) were not met, the court did not err in denying class certification under that rule."); *Heaven*, 118 F.3d at 737 (similar).

questions or individual questions by predicting how the parties will prove them at trial.' " *Tershakovec*, 79 F.4th at 1306 (quoting *Brown*, 817 F.3d at 1234). Common questions rely on "the same evidence for all class members" whereas individualized questions require evidence that "var[ies] from member to member." *Id.* (citation omitted); *Tyson Foods, Inc.*, 577 U.S. at 453. If "a great deal of individualized proof or . . . a number of individualized legal points" still need to be sorted out after the common questions are resolved, "then common issues do not predominate." *Evans v. Intertape Polymer Corp.*, No. 8:23-CV-01042-KKM-AAS, 2024 WL 6882661, at *4 (M.D. Fla. Nov. 20, 2024) (citations omitted).

To succeed at trial on a breach of an express warranty claim under Florida law, each plaintiff must prove: (1) the sale of goods; (2) an express warranty; (3) breach of the warranty; (4) notice to seller of the breach; and (5) the injuries sustained by the buyer as a result of the breach of the express warranty. *See Dunham-Bush, Inc. v. Thermo-Air Serv., Inc.*, 351 So. 2d 351, 353 (Fla. 4th DCA 1977). Although the proposed class presents some common issues, individualized issues remain as to breach, notice, and damages.

I start with the common issues: the sale of the generators, an express warranties' existence, and the warranties' relevant material terms. Although Generac sold these generators with express warranties that varied in time of coverage, the relevant terms remained "materially similar" across all

warranties. *See Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs., Inc.*, 601 F.3d 1159, 1171 (11th Cir. 2010) (citation omitted). The warranties' interpretations therefore present a common legal question, contrary to Generac's arguments that the varying warranties' periods of coverage prohibit uniform interpretation. *See* Resp. at 16–17. To be sure, the application of each warranty to each generator might vary, but each warranty's relevant provisions are generally uniform.

Beyond that, the central common issue the plaintiffs offer is the propensity of 22kW and 24kW generators to fail during storms and the actual failure of each class member's generator due to this defect. Mot. at 24. Although I agree that Stern's findings could provide class-wide evidence that these generators are susceptible to failure during storms, *see* Report at 7–9, I disagree that class-wide evidence is available to prove that each generator failed due to this defect. In the motion for class certification, the plaintiffs provide only anecdotal reports of generator failure during storms. *See* Mot. at 15. Yet one-off reports are insufficient to resolve the cause of generator failure "in one stroke." *Wal-Mart*, 564 U.S. at 350 (explaining that common questions must be "capable of classwide resolution"). Of course, the plaintiffs allege that a Generac Excel log states that 22kW and 24kW generators all failed during storms from a 1902 error. Mot. at 9 (citing Doc. 109-5). But the plaintiffs decline to attach that Excel log to the motion for certification. *See* (Doc. 109-5)

(containing no referenced Excel log). And Generac responds that this unproduced Excel log merely supports that a generator failed to produce electricity, not that that the generator failure occurred due to a particular cause. *See* Resp. at 23. Without more than these competing allegations, I do not find that the plaintiffs have shown that the manner of generator failure that would trigger the express warranty's coverage is susceptible to class resolution. *See Brown*, 817 F.3d at 1234 (explaining that district courts have a "duty" to not merely "accept [ ] as true" factual allegations that are "relevant" to the predominance analysis).

But even if the plaintiffs could establish a uniform "defect[] in material and workmanship," *see, e.g.*, Five-Year Warranty, that would not end the predominance inquiry, as the plaintiffs' motion suggests. *See* Mot. at 21 (providing no argument that warranty breach, notice, or disparate damages theories do not defeat predominance). Proving a breach of express warranty claim requires more than a just product defect; under Florida law, each plaintiff must also demonstrate a breach of the warranty terms, notice of the breach, and injury. *See Dunham-Bush, Inc.*, 351 So. 2d at 353. And examining the availability of class-wide proof for breach, notice, and damages, reveals numerous individualized issues.

As for breach, individualized issues coincide with warranty coverage. *See, e.g.*, Five-Year Warranty. Each warranty requires that the generator

purchaser "registered" the unit, kept the generator in regular maintenance, and that the period of coverage had not yet lapsed. *See, e.g.*, *id.* Beyond that, warranty coverage would cease if the plaintiff used unapproved parts to repair a generator, implemented unapproved generator modifications, or improperly mounted the generator. *See, e.g.*, *id.* None of those issues are susceptible to "common *answers*" across the class. *See Brown*, 817 F.3d at 1238 (quoting *Wal-Mart*, 564 U.S. at 350). When deposed, the plaintiffs gave varied answers about their compliance with the warranty conditions, with many admitting self-created violations of the warranty's terms. *See* Warranty Preconditions Chart (compiling the deposed plaintiffs' compliance with warranty coverage conditions and showing at least ten of the twenty-nine plaintiffs had violated the warranty). That alone turns breach into an individualized issue because the only way to know if the warranty covered each generator is to inquire about each generator owner's actions.

Individualized questions also remain over whether Generac "repair[ed] or replace[d]" each generator's defective component, avoiding breach, apart from each generator owner's potential violation of the warranty terms. *See, e.g.*, Five-Year Warranty. Once again, deposed plaintiffs gave conflicting answers, with all but six admitting that Generac repaired his or her generator and that the generator now works. *See* Post-Repair Generator Condition Chart (compiling deposed plaintiffs' statements regarding their generators condition

following repair). In short then, because "there can be no . . . breach of an express limited warranty unless . . . [Generac] did not comply with the limited express warranty's terms," *See Ocana v. Ford Motor Co.*, 992 So. 2d 319, 324 (Fla. 3d DCA 2008), plaintiff-by-plaintiff questions on whether Generac repaired each generator will need to be resolved at trial. And breach presents an individualized issue.

Notice is not susceptible to class-wide proof either. Under Florida law, the plaintiff must "notify the seller of breach or be barred from any remedy." *See* § 672.607(3)(a), Fla. Stat. Whether notice is needed to sue a manufacturer, *see* Order at 29, n.4 (reserving this question), is beside the point because the plaintiffs concede that Generac qualifies as a seller, *see* Mot. at 2, 8. Each plaintiff will thus need to individually prove that he or she provided Generac with notice. *See Hummel v. Tamko Bldg. Prods., Inc.*, 303 F. Supp. 3d 1288, 1298 (M.D. Fla. 2017) ("The determination of whether or not a seller of goods has received adequate notice of an alleged defect is a highly individualized inquiry."); *see also Brown*, 817 F.3d at 1238 (suggesting that pre-suit notice usually presents individualized questions). And some of the deposed plaintiffs already concede that they failed to provide Generac notice. *See* Resp. at 20. The absence of an argument by the plaintiffs that notice is susceptible to class resolution removes any doubt of its individualized nature. *See generally* Mot.; Reply.

Finally, damages are not monolithic. *See* Alleged Damages Chart (Doc. 111-4) at 1–2 (recounting the various damages theories that each deposed plaintiff stated that he or she would pursue). Although every plaintiff seeks the full value of the generator, *see id.*, and "individual damages do not always defeat predominance," *see Brown*, 817 F.3d at 1239, many plaintiffs assert plaintiff-specific damages theories, like emotional distress, that are inextricably tied up in "individualized questions," *id.* at 1240; *cf. Murray v. Auslander*, 244 F.3d 807, 812 (11th Cir. 2001) (explaining that damages for mental anguish are "inherently individual" and typically "compel[] an inquiry into each class member's individual circumstances"). Contrary to the plaintiff assertions in reply, *see* Reply at 6, many plaintiffs seek more than just reimbursement. *See* Alleged Damages Chart at 1–2 (listing twelve plaintiffs out of twenty-eight plaintiffs as seeking emotional distress damages). So, although the replacement value of each generator is common, various tag-along damages theories are not.

Taken together, the plaintiffs fail to prove predominance under Rule 23(b)(3). If certified, after resolving the common issues, the trial would devolve into "lengthy and particularized inquir[ies]—in essence, a series of mini-trials," *see Villarino v. Pacesetter Pers. Serv., Inc.*, 161 F.4th 1270, 1281 (11th Cir. 2025), to resolve numerous essential questions: did the plaintiff activate the warranty; did the generator fail while covered by the warranty; did the

plaintiff cause the warranty to cease coverage; did Generac repair the covered generator; did the plaintiff provide notice to Generac; and, if the plaintiff seeks damages other than generator reimbursement, what downstream damages did he or she suffer, *see Vega*, 564 F.3d at 1270. Because resolving the class claims will "break[] down into an unmanageable variety of individual legal and factual issues" concerning breach, notice, and damages—all requisite elements of each plaintiff's claim—common issues, "practically" do not predominate. *See Marrow v. E.R. Carpenter Co., Inc.*, No. 8:23-cv-2959-KKM-LSG, 2025 WL 2390734, at *4 (M.D. Fla. Aug. 18, 2025).

**2. Superiority**

Aside from predominance, the class fails to establish superiority, independently barring certification. "[T]he superiority requirement of Rule 23(b)(3) turns on whether a class action is better [suited] than other available methods of adjudication" to resolve the plaintiffs' claims. *Cherry*, 986 F.3d at 1304. In assessing superiority, I consider the "factors bearing on the efficiency of a class action listed in Rule 23(b)(3)," including manageability. *See Vega*, 564 F.3d at 1278. Generally, the fewer common issues that exist, the less desirable class certification becomes. *See Klay v. Humana, Inc.*, 382 F.3d 1241, 1269 (11th Cir. 2004), *abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008). And when class resolution "require[s] a multitude of mini-trials (a procedure which will be tremendously time

consuming and costly), then the justification for" superiority is "absent." *See State of Ala. v. Blue Bird Body Co.*, 573 F.2d 309, 328 (5th Cir. 1978).[3]

Aggregating the plaintiffs' claims presents significant "difficulties in managing [this putative] class action." *See* FED. R. CIV. P. 23(b)(3)(D). At trial, individualized proof as to breach and notice will be required to establish each plaintiff's claim. Beyond that, for the plaintiffs who seek more than just the cost to replace the generator, individualized inquiry will be needed to establish the downstream costs. Lumping these claims together without a clear path to efficient class-wide resolution at trial thus risks "introducing needless and avoidable complexity." *See Vega*, 564 F.3d at 1279. In other words, the need to individually assess multiple elements of each plaintiff's claim defeats the comparative efficiencies that might justify the departure from ordinary litigation. *See* FED. R. CIV. P. 23(b)(3)(D). Therefore, I find that superiority is lacking.

## IV. CONCLUSION

Because the plaintiffs fail to meet their burden in establishing either predominance or superiority under Rule 23(b)(3), I deny the motion for class

[3] The Eleventh Circuit adopted as binding precedent all decisions rendered by the United States Court of Appeals for the Fifth Circuit before September 30, 1981. *See Bonner v. City of Pritchard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

certification. I thus also deny as moot the motion to strike Stern's report from consideration of class certification.

Accordingly, the following is **ORDERED**:

1. The plaintiffs' Motion for Class certification (Doc. 109) is **DENIED**.
2. The motion to exclude the Report (Doc. 112) is **DENIED** as moot.

ORDERED in Tampa, Florida, October 21, 2026.

Kathryn Kimball Mizelle
United States District Judge